**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| BOUSTEAD SECURITIES, LLC, SUTTER SECURITIES, INC., and KEITH C. MOORE, <br><br> Plaintiffs, <br><br> v. <br><br> FINANCIAL INDUSTRY REGULATORY AUTHORITY, INC. <br><br> Defendant. | ) ) ) ) ) ) ) ) ) ) ) ) ) <br> C.A. No. |

**COMPLAINT**

**PRELIMINARY STATEMENT**

1.      This case challenges constitutional defects in securities market regulation. On January 15, 2026, Defendant Financial Industry Regulatory Authority, Inc.'s ("**Defendant**" or "**FINRA**") Department of Enforcement ("**Enforcement**") publicly filed a disciplinary complaint ("the **Enforcement Proceeding**") against Plaintiffs with FINRA's Office of Hearing Officers ("**OHO**") asking FINRA's in-house adjudicators to impose monetary sanctions and other coercive penalties for violations of FINRA rules and federal securities laws and regulations, including asking for specific findings that certain federal securities laws were willfully violated.

2.      FINRA is the only registered national securities association for broker-dealers. This means that FINRA is not a voluntary trade group or industry association. Firms and/or individuals are required by federal law to register with FINRA if they want to participate in the broker-dealer industry. When FINRA files a public enforcement complaint against a broker-dealer seeking monetary and other sanctions, including asking for a finding of willful violations of federal securities laws, the market reacts immediately. Clearing firms, banks, issuers, counterparties, and

other market participants (many of whom are also regulated by FINRA) treat the filing as a significant or even a disqualifying risk event. That is what occurred to Plaintiffs Boustead Securities, LLC ("**Boustead**") and Sutter Securities Inc. ("**Sutter,**" and collectively with Boustead, the "**Companies**") and Keith C. Moore ("**Moore**") on and after January 15, 2026.

3.      Within days of FINRA's public filing, Plaintiffs' market access was harmed. Plaintiffs were prohibited from engaging in transactions and commercial relationships essential to their business and operations as broker-dealers. Those market access denials occurred before *any* governmental supervision or judicial review of FINRA's conduct. Consequently, Plaintiffs suffered more than just reputational harm; they are catapulting towards losing their ability to do business entirely.

4.      The constitutional problem is that FINRA, a private corporation, unconstitutionally wields federal power in a way that produces market-excluding consequences at the moment of accusation, without contemporaneous supervision by an accountable governmental agency that can approve, disapprove, or modify FINRA's conduct.  This is even more true when FINRA flaunts the existence of its public filing as a means of interfering with Plaintiffs' contracts and business relations.

5.      This case therefore presents a threshold constitutional defect: FINRA, a private corporation, is allowed to wield executive branch power in a mandatory membership regime. FINRA investigates, prosecutes, and adjudicates alleged violations through its own rules, personnel, and internal adjudicatory processes. But, the Constitution does not permit private entities to serve as principal decisionmakers in the exercise of federal power. Accordingly, FINRA violates the private nondelegation doctrine.

6.      Alternatively, it is also likely that FINRA is a state actor. If so, then its enforcement

proceedings violate the Constitution in numerous ways.

7.     *First*, FINRA's Hearing Officers preside over adversarial hearings initiated by Enforcement, manage limited discovery and motion practice, rule on procedural and evidentiary issues, and prepare written decisions that can impose significant sanctions. But adjudicators who wield trial-like authority in enforcement proceedings are not mere employees; they are "lesser executive officers" who must be appointed and removable in conformity with Article II of the U.S. Constitution. But here, FINRA (and not the Executive Branch) appoints and removes its Hearing Officers through its private corporate process in violation of the Appointments and Vesting Clauses set forth in Article II.

8.     *Second*, FINRA's enforcement proceedings also violate the Seventh Amendment. In *SEC v. Jarkesy*, the Supreme Court explained that the SEC's claims were legal in nature and the requested civil penalties were "a type of remedy at common law that could only be enforced in courts of law." *SEC v. Jarkesy*, 603 U.S. 109, 125 (2024). Likewise, FINRA's complaint asserts legal claims and asks for monetary sanctions.  Under *Jarkesy*, Plaintiffs are entitled to a jury trial.

9.     *Third*, to the extent FINRA is exercising federal authority, constitutional due process applies and requires neutral adjudication and meaningful procedural safeguards before sanctions and effective expulsion from the market occurs. FINRA's forum fails these basic requirements. Plaintiffs, therefore, have been and are being denied a neutral, detached decision-maker and the fair process the Fifth Amendment requires.

10.     Plaintiffs plead these constitutional theories in the alternative. If FINRA is treated as a private actor, FINRA has been unlawfully delegated executive governmental power. If FINRA is treated as a state actor, then FINRA's enforcement process violates Article II, Article III, and the Fifth and Seventh Amendments. Under either characterization, the enforcement proceedings

are unconstitutional and Plaintiffs have suffered, and continue to suffer, immediate, irreparable harm.

11.     Plaintiffs therefore ask this Court to issue a declaratory judgment stating that FINRA's Enforcement Proceeding and in-house hearing officers are unconstitutional, and request the Court enjoin FINRA from pursuing its unconstitutional conduct against Plaintiffs.

## PARTIES, JURISDICTION, AND VENUE

12.     Plaintiff Boustead Securities, LLC is a broker-dealer and FINRA member firm with its principal place of business in the State of California.

13.     Plaintiff Sutter Securities Inc. is a broker-dealer and FINRA member firm with its principal place of business in the State of California.

14.     Plaintiff Keith C. Moore was the CEO of Boustead and Sutter and remains on the board of directors for both firms. Mr. Moore is a named respondent in FINRA's Enforcement Proceeding.

15.     This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 because this action presents federal constitutional questions arising under Articles II and III of the U.S. Constitution and the Fifth and Seventh Amendments, as well as separation of powers doctrines.

16.     This Court has personal jurisdiction over Defendant because FINRA is incorporated in the State of Delaware.

17.     This Court has the authority to grant declaratory relief pursuant to 28 U.S.C. §§ 2201 and 2202 and injunctive relief under its equitable powers.

18.     Venue is appropriate pursuant to 28 U.S.C. § 1391 because FINRA resides in this judicial district.

19.     Plaintiffs' claims are premised upon violations of the Constitution and the

separation of powers doctrines. Plaintiffs' injuries are "here-and-now" that cannot be channeled through FINRA's corporate, in-house tribunal and later to the Securities & Exchange Commission ("**SEC**") for review. Plaintiffs' irreparable injury—being subject to an unconstitutional proceeding, effective exclusion from the marketplace, and unable to operate as broker-dealers in the securities industry—is occurring and exacerbated the longer FINRA's conduct goes unchallenged and unreviewed.

## GENERAL ALLEGATIONS

### I.    FINRA Operates as a Mandatory Gatekeeper for the Broker-Dealer Industry.

20.    Congress regulates broker-dealers through the Securities Exchange Act of 1934 (the "**Exchange Act**") and requires broker-dealers to register with the SEC as a condition of using the mails or interstate commerce to effect transactions in securities. 15 U.S.C. § 78o(a).

21.    Congress also conditioned the operation of broker-dealers on oversight by a registered national securities association and as prescribed by the Exchange Act and SEC rules. 15 U.S.C. §§ 78o, 78o-3.

22.    FINRA is the only registered national securities association. FINRA, therefore, functions as the sole nationwide association through which broker-dealers and their associated persons obtain national securities association membership, and with that membership comes FINRA's private oversight.

23.    To become a member of FINRA, broker-dealers must apply for membership through a New Member Application process and explicitly agree to abide by FINRA's rules and regulations.[1]

24.    This market structure means that FINRA is not a voluntary trade group or industry

---

[1] *See* https://www.finra.org/investors/insights/regulated-by-FINRA (last accessed Apr. 1, 2026).

association. Instead, FINRA is a compulsory market gatekeeper that broker-dealers must become a member of prior to participating in the marketplace at all. FINRA accordingly determines who participates in the industry and who does not.

**II.  FINRA is a Private Corporation Exercising Federal Power.**

25.  FINRA is a private corporation, organized under Delaware law, that performs federally mandated regulatory functions as a registered national securities association under Section 15A of the Exchange Act. *See* 15 U.S.C. § 78o-3.

26.  In 2007, FINRA was created as the product of an SEC-approved consolidation of the National Association of Securities Dealers and the New York Stock Exchange's regulatory functions into a single, consolidated self-regulatory organization ("**SRO**"). 72 Fed. Reg. 42,169 (Aug. 1, 2007).

27.  In approving that consolidation, the SEC expressly described the objective as streamlining broker-dealer regulation, combining technologies, and establishing a single set of rules governing membership determinations for broker-dealer firms, while keeping the consolidated SRO under the SEC's purported oversight. *See* SEC Press Release No. 2007-151 (July 26, 2007).

28.  FINRA's governance is vested in its Board of Governors that consists of the Chief Executive Officer and defined categories of Industry and Public Governors, including small firm, mid-sized firm, and large firm governors, along with other specified affiliates governors. FINRA By-Laws, Art. VII, § 4(a).

29.  FINRA's regulatory structure includes By-Laws and governance provisions that are subject to SEC approval through the rule filing processes for SROs.

30.  Federal law requires that FINRA file proposed rule changes with the SEC and states

that no proposed rule change shall take effect unless and until approved by the SEC or otherwise permitted under Section 19(b) of the Exchange Act. *See* 15 U.S.C. § 78s(b)(1). Once a FINRA rule is approved, it has the force of law.

31.     FINRA is tasked by the Exchange Act to enforce compliance with federal securities laws and regulations and FINRA rules, and to discipline its members and associated individuals for violations of those laws, regulations, and rules.

32.     FINRA unilaterally has the power to, among other things: (i) open an investigation (or not); (ii) require a registered representative, or an employee of a broker-dealer, to testify under oath (or not); (iii) exercise prosecutorial discretion to engage the disciplinary process (or not); (iv) release, at its sole discretion, information related to a disciplinary proceeding (or not); (v) issue fines or settle a case (or not); and (vi) effectively expel a firm from the securities industry for its subjective, perceived violations of federal securities laws. FINRA does all this without any initial approval from its supposed supervisor, the SEC.

33.     FINRA's investigative and enforcement system is built around compulsory discovery protocols, prosecution by Enforcement, adjudication in FINRA's internal forum, and internal appellate review within FINRA's corporate structure, all before a government actor might have *any* formal say on the wisdom of FINRA's decisions.

34.     FINRA describes its Office of Hearing Officers as its adjudicatory forum for disciplinary and expedited proceedings commenced by Enforcement.[2] FINRA also states that the OHO reports directly to FINRA's Chief Executive Officer and that only the CEO may terminate a Hearing Officer, with the right to appeal to the Audit Committee of FINRA's Board of Governors.[3]

---

[2]     *See*     https://www.finra.org/rules-guidance/adjudication-decisions/office-hearing-officers-oho/about (last accessed Apr. 1, 2026).

[3] *See id.*

35.    Pursuant to FINRA's Code of Procedure, FINRA's Hearing Officers exercise broad authority over the course of disciplinary proceedings. FINRA Rule 9235 provides, for example, that the Hearing Officer has authority to do all necessary and appropriate tasks to discharge his or her duties and enumerates specific powers in managing a hearing, resolving procedural and evidentiary matters, resolving non-dispositive motions, and drafting the decision representing the majority views of the Hearing Panel. *See* FINRA Rule 9235(a). FINRA's Code of Procedure does not require adherence to the Federal Rules of Civil Procedure or Federal Rules of Evidence.

36.    Discovery in an OHO hearing is limited. FINRA Rule 9252 governs information requests and invokes FINRA Rule 8210 to "compel" production of documents or testimony, subject to specific requirements and the Hearing Officer's discretion.

### III.    FINRA's Power is Governmental in Character Yet Exercised by a Private Corporation.

37.    The private nondelegation doctrine prohibits delegations of governmental power to private parties without adequate governmental supervision and accountability. Private entities to whom the government delegates its power must act merely "as an aid" to the agency and are "subject to [the agency's] *pervasive surveillance* and authority." *Consumers' Rsch., Cause Based Commerce, Inc. v. Fed. Comm'ns Comm.*, 88 F.4th 917, 925 (11th Cir. 2023) (quoting *Nat'l Horsemen's Benevolent & Protective Ass'n v. Black*, 53 F.4th 869, 880-81 (5th Cir. 2022)) (emphasis added).

38.    FINRA's disciplinary regime fails that supervision principle because FINRA's power is exercised first by FINRA, through its private employees and internal corporate adjudicators, in proceedings controlled by FINRA's rules, long before any "pervasive surveillance"—or really any surveillance—occurs. But no private entity "may jointly exercise regulatory power on equal footing with an administrative agency." *Ass'n of Am. R.Rs. v. U.S. Dep't*

*of Transp.*, 721 F.3d 666, 671 (D.C. Cir. 2013), *vacated and remanded on other grounds sub nom. Dep't of Transp. v. Ass'n of Am. R.R.s*, 575 U.S. 43 (2015) (instead, private entities may "help" a government agency make regulatory decisions).

39.     The filing of FINRA's Complaint against Plaintiffs in the Enforcement Proceeding, for example, operated as an effective bar to the securities industry, even where no "official" action on FINRA's part occurred stating the same. Accordingly, the constitutional problem is not merely the existence of *eventual* SEC review in a subset of cases. The problem is that FINRA, a private corporation, is permitted to act as the first-in-line decisionmaker and exercise federal power.

40.     Accordingly, FINRA's structure and enabling rules produce the precise constitutional mismatch the private nondelegation doctrine forbids: a private corporation wielding federal authority without pervasive and timely governmental supervision to ensure such power is exercised in a manner accountable to the U.S. Constitution. But where Congress delegates to a private actor the practical power to make binding decisions over others, including by allowing that private actor to regulate without meaningful public supervision, the Constitution is violated because it permits that party to "regulate the affairs of an unwilling minority." *Carter v. Carter Coal Co.*, 298 U.S. 238, 311 (1936); *Pittson Co. v. United States*, 368 F.3d 385, 394-95 (4th Cir. 2004) ("[T]he Third Circuit articulated the standard that Congress may employ private entities for *ministerial* or *advisory* roles, but it may not give these entities governmental power over others.") (emphasis in original).

## IV.     FINRA Hearing Officers are Not Properly Appointed or Removeable.

41.     Enforcement at FINRA acts as the principal decisionmaker in connection with its adjudication of the federal securities laws and FINRA rules. This broad regulatory authority is not subject to SEC review until after the enforcement action is fully adjudicated. After Enforcement

files its disciplinary complaint, FINRA convenes a Hearing Panel, typically comprised of one Hearing Officer and two industry panelists selected by FINRA. The Hearing Officer manages the disciplinary proceeding, including pre-hearing conferences, procedural and evidentiary rulings, and the conduct of the hearing itself, while the Hearing Panel adjudicates Enforcement's allegations and determines whether to impose sanctions. The Hearing Panel issues a written decision containing findings of fact, legal conclusions, and any sanctions. That decision is rendered by a majority vote.  Any appeal is taken internally within FINRA to the National Adjudicatory Council, before any review by the SEC, underscoring that the initial adjudication of allegations of violations of federal law and the imposition of sanctions are carried out entirely within FINRA's in-house structure.

42.    FINRA's Hearing Officers exercise significant authority pursuant to the laws of the United States by enforc[ing] the nation's securities laws. Accordingly, FINRA's rules have the effect of the law. As such, FINRA Hearing Officers are "Officers of the United States" who must be appointed pursuant to the Appointments Clause.

43.    The Appointments Clause identifies the exclusive means of appointing "Officers of the United States," where only the President, a court of law, or a head of a federal agency may do so. *See* U.S. const. art. II, § 2, cl. 2.

44.    But FINRA's Hearing Officers are appointed only by FINRA's CEO.

45.    Accordingly, their appointment by FINRA's CEO is a violation of the Appointments Clause.

46.    FINRA's Hearing Officers are also not subject to presidential removal through any Article II–accountable chain of command. FINRA itself represents that Hearing Officers report to FINRA's Chief Executive Officer and that only the CEO may terminate a Hearing Officer, which

means the officials who wield enforcement adjudicatory power in the first instance are controlled solely within FINRA's private corporate hierarchy.

47. That insulation from executive accountability violates Article II's supervision and removal principles and independently offends separation-of-powers requirements.

**V.       FINRA's Enforcement Proceedings Violate the Seventh Amendment.**

48. Trial by jury is a fundamental component of our legal system "and remains one of our most vital barriers to governmental arbitrariness." *Reid v. Covert*, 354 U.S. 1, 9-10 (1957).

49. The Seventh Amendment protects the right to a jury trial for "[s]uits at common law," which has been interpreted by the Supreme Court to include all actions akin to those brought at common law as those actions were understood at the time of the adoption of the Seventh Amendment. *See Tull v. United States*, 481 U.S. 412, 417-19 (1987).

50. The Supreme Court recently emphasized that "common law" suits are broad, and that the "Framers used the term 'common law' in the [Seventh] Amendment 'in contradistinction to equity … jurisprudence' … the Amendment therefore 'embraces all suits which are not of equity [or] admiralty jurisdiction, whatever may be the peculiar form which they may assume.'" *Jarkesy*, 603 U.S. at 122 (citation omitted). Accordingly, to assess whether a party is entitled to a jury trial, courts identify the nature of the claim and the nature of the remedy, where the latter is the "more important consideration" because "some causes of action sound in both law and equity." *Id.* at 122-23; *Tull*, 481 U.S. at 418-19 (holding that actions seeking civil penalties are distinctly legal claims that can only be enforced in courts of law).

51. Enforcement's claims are legal in nature and seek monetary sanction. Plaintiffs are therefore entitled to a jury trial.

## VI.    Enforcement's Complaint Effectively Bars Plaintiffs' Access to the Market.

52.    Enforcement's initiation of a disciplinary proceeding against Plaintiffs is considered an "open regulatory matter" and is treated by exchanges, issuers, and counterparties, many of whom are regulated by FINRA, as disqualifying in practice, regardless of formal status or legality.

53.    Upon information and belief, FINRA has communicated to exchanges, issuers, and others that Plaintiffs are the subject of a serious regulatory concern or an open regulatory matter. FINRA effectively weaponized the disciplinary process to signal to the market that Plaintiffs are disqualified from participating in the securities industry, even before any claim is adjudicated.

54.    For example, before FINRA even filed its Complaint in the Enforcement Proceeding, Nasdaq admitted that FINRA contacted it and instructed it to not approve any initial public offerings where Boustead was an underwriter as a result of the anticipated Enforcement Proceeding. Thereafter, FINRA admitted to Plaintiffs that it interfered with the Companies' limited membership applications submitted to Nasdaq and the New York Stock Exchange. Numerous issuers terminated their agreements with the Companies based on the Companies' inability to underwrite their initial public offerings, as a result of FINRA's instructions to the Nasdaq, and the Companies' subsequent inability obtain limited memberships with these exchanges.

55.    Accordingly, FINRA's enforcement posture operates as a de facto licensing and gatekeeping regime. By signaling to the market that Plaintiffs are under regulatory scrutiny and by leveraging its central role as the only supervisor of broker-dealers, FINRA has caused, and is causing, exchanges and issuers to deny Plaintiffs access to underwriting and listing opportunities.

56.    After FINRA's Complaint in the Enforcement Proceeding was filed, Sutter's clearing firm advised Plaintiffs that it would be terminating its clearing arrangement with Sutter

because of pressure from FINRA's Enforcement Proceeding against Plaintiffs.

57.    In addition, Mr. Moore and Daniel McClory, another principal of Boustead and Sutter, were informed by Dominari Securities, LLC ("**Dominari**") that their personal brokerage accounts were being closed, effective immediately. Dominari informed Mr. Moore that even though it disagreed with these decisions, the firm had "no choice" but to shut down the accounts due to the Enforcement Proceeding.

58.    These are all foreseeable market reactions attributable to Enforcement's complaint filed against Plaintiffs on January 15, 2026, all of which have occurred before the SEC "pervasively" surveilled FINRA's actions, if such surveillance can ever occur.

59.    Plaintiffs, therefore, have and continue to be irreparably harmed.  Plaintiffs will suffer further irreparable harm if Enforcement is permitted to continue its proceedings against Plaintiffs through its unconstitutional exercise of its enforcement authority and then flaunt those proceedings as grounds to continue interfering with Plaintiffs' contracts and relations while the proceedings continue.

60.    As the Supreme Court has made clear, "subjection to an unconstitutionally structured decisionmaking process" led by an illegitimate decision maker is a "here-and-now injury." *Axon Enter., Inc. v. Fed. Trade Comm'n*, 598 U.S. 175, 191-92 (2023). This is true "irrespective of [the process's] outcome, or of other decisions made within it." *Id.* at 192.

61.    Any judicial review of Enforcement's authority after the conclusion of its Enforcement Proceedings would come too late to adequately remedy Plaintiffs' injuries. Plaintiffs have "los[t] … rights not to undergo the complained-of agency proceedings if they cannot assert those rights until the proceedings are over." *Id.*

13

**CLAIMS FOR RELIEF**

**Count 1**
*Violation of the Non-Delegation Doctrine*

62.    Plaintiffs incorporate the preceding allegations as if fully set forth herein.

63.    FINRA, a private corporation, unconstitutionally exercises executive authority when it investigates, prosecutes, and adjudicates alleged violations of federal securities laws and FINRA rules, constituting an unconstitutional delegation of federal power to a private entity.

64.    The Constitution forbids delegation of governmental power to private parties without adequate pervasive supervision and constitutional accountability.

65.    FINRA's enforcement regime permits a private corporation to exercise unconstitutional regulatory authority that produces immediate and effectively final market-excluding consequences upon public accusation.

66.    FINRA's pursuit of monetary and punitive sanctions, a finding of a willful violation of the Exchange Act against Boustead, and the market consequences flowing from the public initiation of the proceeding underscore the coercive governmental character of FINRA's delegated authority.

67.    Accordingly, the delegation of enforcement and adjudicatory power to FINRA violates the Constitution.

68.    Plaintiffs are entitled to declaratory and injunctive relief preventing FINRA from continuing or giving effect to the challenged Enforcement Proceeding.

**Count 2**
*Violation of the Seventh Amendment Right to a Jury Trial*

69.    Plaintiffs incorporate the preceding allegations as if fully set forth herein.

70.    The Seventh Amendment preserves the right to a trial by jury in common law suits.

71.    FINRA's disciplinary proceeding asserts legal claims and seeks monetary

14

sanctions that fall within the definition of common law suits as used in the Seventh Amendment

72.    The adjudication of liability and imposition of monetary sanctions in such circumstances must be determined by a jury in an Article III tribunal.

73.    FINRA's in-house adjudicative process deprives Plaintiffs of the right to a jury trial.

74.    Plaintiffs are entitled to declaratory and injunctive relief preventing FINRA from continuing or giving effect to the challenged Enforcement Proceeding.

### Count 3
### *Violation of the Appointments Clause*

75.    Plaintiffs incorporate the preceding paragraphs as if fully set forth herein.

76.    FINRA Hearing Officers exercise significant authority pursuant to the laws of the United States in the adjudication of disciplinary proceedings.

77.    Because FINRA Hearing Officers exercise significant authority under federal law, they are Officers of the United States for purposes of the Constitution's Article II.

78.    The Appointments Clause requires that Officers of the United States be appointed only by the President, a court of law, or the head of a department.

79.    FINRA Hearing Officers are appointed by the corporation's Chief Executive Officer, not by a constitutionally authorized appointing authority.

80.    Accordingly, FINRA's appointment of FINRA Hearing Officers violates the Appointments Clause.

81.    Plaintiffs are entitled to declaratory and injunctive relief to prevent FINRA from continuing or giving effect to an Enforcement Proceeding adjudicated by the unconstitutionally appointed Hearing Officers.

## Count 4
### *Violation of the Fifth Amendment Right to Due Process of Law*

82.    Plaintiffs incorporate the preceding paragraphs as if fully set forth herein.

83.    The Fifth Amendment prohibits deprivation of life, liberty, or property without due process of law. To the extent FINRA's enforcement proceedings constitute governmental action because it exercises federally delegated authority in a mandatory membership regime, FINRA must provide constitutionally adequate process.

84.    Due process requires, at a minimum, a fair process before a neutral and detached adjudicator, with meaningful procedural protections commensurate with the coercive sanctions and severe collateral consequences at issue.

85.    FINRA's in-house adjudicatory proceeding is structurally biased because the adjudicator is selected, employed, paid by, and controlled within the same private organization that investigates and prosecutes the case.

86.    FINRA's enforcement forum and procedures further deprive Plaintiffs of core procedural protections and create a fundamentally unfair adjudicatory process.

87.    Plaintiffs are entitled to declaratory and injunctive relief preventing Defendant from continuing or giving effect to enforcement proceedings conducted through this unconstitutional process.

## Count 5
### *Violation of the Separation of Powers*

88.    Plaintiffs incorporate the preceding paragraphs as if fully set forth herein.

89.    Article II of the Constitution requires that executive power be exercised under presidential supervision and accountability, including meaningful authority to supervise and, when necessary, remove those who execute federal law.

90.    FINRA's Hearing Officers are appointed and removable only within FINRA's

16

private corporate chain of command, not by the President or by any officer accountable to the President. The SEC does not appoint those adjudicators and lacks direct, at-will removal authority over them.

91.    This structure diffuses accountability for the exercise of executive power, prevents meaningful executive supervision at the moment that enforcement authority is exercised, and violates Article II and the separation of powers.

92.    This structure, under which the President cannot remove FINRA hearing officers, impermissibly impairs the President's ability to ensure faithful execution of the laws and violates the separation of powers.

93.    Plaintiffs are entitled to declaratory and injunctive relief preventing FINRA from continuing or giving effect to enforcement proceedings conducted through this unconstitutional structure.

## REQUEST FOR RELIEF

Plaintiffs request relief against Defendant as follows:

A.    An order and judgment pursuant to 29 U.S.C. §§ 2201 and 2202 declaring that:

a.  if FINRA is a private actor, then FINRA's enforcement proceedings violate the private non-delegation doctrine and are therefore unconstitutional;

b.  if FINRA is a state actor, then FINRA is obligated to preserve the rights guaranteed under the United States Constitution when it seeks to enforce the federal securities laws and associated FINRA rules through its in-house enforcement proceedings and, accordingly:

i.  FINRA's appointment of its Hearing Officers violates the Appointments Clause under Article II of the Constitution;

17

ii. the removal protection granted to FINRA's Hearing Officers and Board of Governors violates the separation of powers doctrine under Article II of the Constitution; and

iii. the Enforcement Proceeding against Plaintiffs violates their Constitutional rights, including their Seventh Amendment right to a trial by jury and the Fifth Amendment right to due process.

B. An order and judgment enjoining FINRA from continuing its unlawful and unconstitutional Enforcement Proceeding against Plaintiffs.

C. Such relief as this Court deems just and proper.

| | |
|---|---|
| *Of Counsel:* | **ASHBY & GEDDES** |
| **MICHAEL BEST & FREDRICH LLP** | */s/ Randall J. Teti* |
| | Randall J. Teti (#6334) |
| Richard F. Ensor* | 500 Delaware Ave., 8th Floor |
| 650 S. Main St., Suite 500 | P.O. Box 1150 |
| Salt Lake City, UT 84101 | Wilmington, DE 19899 |
| (385) 695-6450 | (302) 654-1888 |
| rfensor@michaelbest.com | rteti@ashbygeddes.com |
| | |
| Daniel Jozwiak* | *Counsel for Plaintiffs* |
| 675 15th St., Suite 2000 | |
| Denver, CO 80202 | |
| (720) 398-0052 | |
| daniel.jozwiak@michaelbest.com | Dated: April 1, 2026 |
| | |
| *Pro hac vice application forthcoming* | |

.