**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| BOUSTEAD SECURITIES, LLC, | ) | |
| SUTTER SECURITIES, INC., and | ) | |
| KEITH C. MOORE, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | C.A. No. |
| v. | ) | |
| | ) | |
| FINANCIAL INDUSTRY | ) | |
| REGULATORY AUTHORITY, INC. | ) | |
| | ) | |
| Defendant. | ) | |

## <u>PLAINTIFFS' OPENING BRIEF IN SUPPORT OF ITS MOTION<br>FOR PRELIMINARY INJUNCTION</u>

*Of Counsel:*

**MICHAEL BEST & FREDRICH LLP**

Richard F. Ensor*
650 S. Main St., Suite 500
Salt Lake City, UT 84101
(385) 695-6450
rfensor@michaelbest.com

Daniel Jozwiak*
675 15th Street, Suite 2000
Denver, CO 80202
(720) 398-0052
daniel.jozwiak@michaelbest.com

* *Pro hac vice application forthcoming*

Dated: April 1, 2026

**ASHBY & GEDDES**
Randall J. Teti (#6334)
500 Delaware Avenue, 8th Floor
P.O. Box 1150
Wilmington, DE 19899
(302) 654-1888
rteti@ashbygeddes.com

*Counsel for Plaintiffs*

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ...................................................................................................... ii

NATURE AND STAGE OF THE PROCEEDINGS ..................................................... 1

SUMMARY OF ARGUMENT AND LEGAL PROPOSITIONS .................................. 3

STATEMENT OF FACTS ............................................................................................. 5

    A.    Plaintiffs ............................................................................................... 5
    B.    FINRA ................................................................................................... 5
    C.    The Enforcement Proceeding and the Damage Flowing Therefrom ........................... 6

ARUGMENT ................................................................................................................. 7

    I.    Legal Standard .................................................................................... 7

    II.    Plaintiffs' Constitutional Claims are Likely to Prevail ................................... 8
        A.  FINRA is Exercising Federal Power ......................................................... 8
        B.  Plaintiffs are Likely to Succeed on their Private Nondelegation Doctrine Claims if FINRA is a Private Actor ......................................................... 9
        C.  Plaintiffs are Likely to Succeed on their Appointments and Vesting Clause Claims if FINRA is a State Actor ......................................................... 10
        D.  Plaintiffs are Entitled to a Jury Trial under the Seventh Amendment ......................................................... 13
        E.  The Enforcement Proceeding Violates Plaintiffs' Due Process Rights ......................................................... 14
    III.    Plaintiffs Will Suffer Irreparable Harm Absent a TRO ............................... 15
        A.  FINRA's Conduct & the Enforcement Proceeding are Limiting Plaintiffs' Market Access ......................................................... 15
        B.  Plaintiffs Suffer a Present, Here-and-Now Irreparable Injury from FINRA's Unconstitutional Enforcement Proceeding and Adjudicatory Structure ............... 17
    IV.    The Balance of Equities Favors Plaintiffs; Enjoining Unconstitutional Proceedings Protects the Public ......................................................... 18
    V.    The Court Should not Require any Bond ................................................ 18

CONCLUSION ............................................................................................................ 19

**TABLE OF AUTHORITIES**

Page(s)

Cases

*Alpine Sec. Corp. v. Fin. Indus. Reg. Auth.*,
  121 F.4th 1314 (D.C. Cir. 2024) ........................................................................... passim

*Alpine Sec. Corp. v. Fin. Indus. Reg. Auth.*,
  2023 WL 4703307 (D.C. Cir. July 5, 2023) ........................................................... passim

*Axon Enter., Inc. v. Fed. Trade Comm'n*,
  598 U.S. 175 (2023) ............................................................................................... 3

*Birkelbach v. SEC*,
  751 F.3d 472 (7th Cir. 2014) .................................................................................. 8

*Concrete Pipe & Prods. of Cal., Inc. v. Constr. Laborers Pension Tr. For S. Cal.*,
  508 U.S. 602 (1993) ............................................................................................... 4

*Coupa Software Inc v. Optilogic, Inc.*,
  2025 WL 3552384 (D. Del. Dec. 11, 2025) ............................................................ 7

*Dep't of Transp. v. Ass'n of Am. R.R.*,
  575 U.S. 43 (2015) ................................................................................................. 9

*Jarkesy v. SEC*
603 U.S. 109 (2024) .................................................................................................. 4

*Lebron v. Nat'l R.R. Passenger Corp.*,
  513 U.S. 374 (1995) ............................................................................................... 1

*Merrill Lynch v. Nat'l Ass'n of Sec. Dealers, Inc.*,
  616 F.2d 1363 (5th Cir. 1980) ................................................................................ 8

*Nat'l Ass'n of Sec. Dealers, Inc. v. SEC*,
  431 F.3d 803 (D.C. Cir. 2005) ................................................................................ 8

*Reilly v. City of Harrisburg*,
  858 F.3d 173 (3d Cir. 2017) ................................................................................... 7

*State Sportsmen's Ass'n v. Del. Dep't of Safety & Homeland Sec.*,
  108 F.4th 194 (3d Cir. 2024) .................................................................................. 7

*Winter v. Nat. Res. Def. Council, Inc.*,
  555 U.S. 7 (2008) ........................................................................................................ 7

Statutes

15 U.S.C. §§78o-3(b)(2), (7)-(8) ....................................................................................... 5

15 U.S.C. §§ 78s(g)(1)(B), (h)(1)(b)................................................................................. 8

## NATURE AND STAGE OF THE PROCEEDINGS

James Madison observed that "the essence of government is power; and power, lodged as it must be, in human hands, will ever be liable to abuse."[1] Guided by this and similar wisdom, the United States was founded on a system of checks and balances with three separate branches of government established by Articles I, II, and III of the Constitution. The Framers recognized that, in the long term, the structural protections against abuse of power were critical to preserving liberty. Nor do the Constitution's protections evaporate when governmental power is asserted through novel structures or self-described private surrogates. *Lebron v. Nat'l R.R. Passenger Corp.*, 513 U.S. 374, 375 (1995) ("The Constitution constrains governmental action by whatever instruments or in whatever modes that action may be taken."). Where liberty and property interests are threatened by coercive proceedings functioning as government or public regulation, the Constitution's limitations on power must remain enforceable, or the promised accountability to the people becomes illusory.

Article II establishes the Executive Office. And while no one man or woman can faithfully fulfill all obligations accompanying that office, the Constitution ensures that Executive Power is exercised by individuals accountable to the President, and ultimately, the people. Otherwise, if people outside government could wield government's power, then the government's promised accountability to the people would be an illusion. *See* The Federalist No. 51.

Since its inception, FINRA has largely succeeded in convincing our judiciary to cloak the corporation with immunity on par with State sovereignty, while at the same time shirking any attempt at constitutional restraint by proclaiming itself a private entity free from the Constitution's bound. More pointedly, on the one hand, FINRA argues that it is so entwined with the government

---

[1] Speech to Virginia Convention, Dec. 2, 1829.

1

that its decisions deserve protection from judicial scrutiny through the application of immunity defenses; on the other, FINRA contends it is not a state actor and remains unbound by the Constitution. Arbitrary decisions, unaccountable processes, and unrestrained power fester in this environment.

Accordingly, Plaintiffs file this motion contemporaneous with their Complaint because the Enforcement Proceeding violates the Constitution in at least four ways. *First*, if FINRA is a private actor, then FINRA exercises substantial executive power in violation of the nondelegation doctrine. FINRA does so by exercising law enforcement activities over its members (who are mandated by federal law to be FINRA members), including the power to investigate, prosecute, adjudicate, and punish. *Second*, if FINRA is a state actor, then FINRA's hearing officers are "lesser executive officers" subject to Article II's Appointment Clause and Vesting Clause. These Clauses ensure that "lesser executive officers" remain accountable to the President, and ultimately the people, through the requirement that the Executive Branch appoint and be able to remove "lesser executive officers." FINRA's hearing officers are not appointed by, nor can they be removed by, the President. They are therefore unconstitutional. *Third*, under the Supreme Court's ruling in *Jarkesy*, FINRA's in-house adjudication process deprives Plaintiffs of their constitutional right to a jury and violates the Seventh Amendment. *Fourth*, the Enforcement Proceedings violate basic concepts of due process that the Fifth Amendment requires.

Ultimately, Plaintiffs' motion should be granted because FINRA is not properly constrained by constitutional guardrails nor properly accountable to a governmental agency. The result is a consolidation of unconstitutional power – through investigations, prosecutions, and adjudications – that can and will end a career, ruin livelihoods, destroy companies, and freeze market access. Plaintiffs' injuries here are not theoretical or abstract. The Enforcement Proceeding

has produced, and continues to produce, immediate consequences in the marketplace that will not be capable of unwinding if injunctive relief is not granted. With clearing firm relationships destroyed, clients terminating contractual relationships, and listing exchanges refusing to do business, Plaintiffs' market access and goodwill is being irreparably impaired, and later relief will not restore the status quo. As the Supreme Court recognized in *Axon Enter., Inc. v. Fed. Trade Comm'n*, 598 U.S. 175, 190-92 (2023), being subject "to an illegitimate proceeding, led by an illegitimate decision maker" is "here-and-now injury." Absent injunctive relief, Plaintiffs will continue to suffer irreparable harm from FINRA's unconstitutional proceedings and as a result, Plaintiffs ask the Court to enjoin the accompanying collateral damage.

### SUMMARY OF ARGUMENT AND LEGAL PROPOSITIONS

*First*, FINRA exercises significant Executive Branch authority "when it investigates, prosecutes, and adjudicates allegations against a company required by law to put itself at FINRA's mercy. That type of executive power can be exercised only by the President (accountable to the nation) and his executive officers (accountable to him)." *Alpine Sec. Corp. v. Fin. Indus. Reg. Auth.*, 121 F.4th 1314, 1339 (D.C. Cir. 2024) (Walker, J., concurring in part and dissenting in part).[2] Accordingly, if FINRA is a private actor, the delegation of significant executive branch authority to FINRA violates the private nondelegation doctrine and the Constitution.

*Second*, an individual who exercises significant authority pursuant to the laws of the United States is an Officer of the United States, sometimes referred to as a "lesser executive officer." Article II requires a "lesser executive officer" to be properly appointed by the President (as

---

[2] Two cases involving another broker-dealer, Alpine Securities Corporation, are cited herein. The first Alpine case is *Alpine Sec. Corp. v. Fin. Indus. Reg. Auth.*, 2023 WL 4703307 (D.C. Cir. July 5, 2023), hereinafter called *Alpine I*. The second Alpine case is *Alpine Sec. Corp. v. Fin. Indus. Reg. Auth.*, 121 F.4th 1314 (D.C. Cir. 2024), and hereinafter called *Alpine II*.

required in the Appointment Clause) and properly removeable by the President (as implied by the Vesting Clause). These constitutional mandates increase the "officer's accountability to the President, who is accountable to the people, whose liberty is at stake." *Id*. at 1342. Accordingly, if FINRA is a state actor, FINRA's Hearing Officers are lesser executive officers subject to the Appointment Clause and the Vesting Clause and are therefore unconstitutional because such officers are not properly appointed or subject to removal by the President.

*Third*, in *Jarkesy v. SEC*, the Supreme Court held that Jarkesy, who was facing securities fraud claims in an SEC proceeding, had "the right to be tried by a jury of his peers" and Congress' effort "to concentrate the roles of prosecutor, judge, and jury in the hands of the executive branch" through an administrative law judge ("**ALJ**") was "the very opposite of the separation of powers that the Constitution demands." 603 U.S. 109, 140-41 (2024). FINRA's hearing officers are equivalent to the ALJs in *Jarkesy*, and the Seventh Amendment affords Plaintiffs the right to a jury trial.

*Fourth*, due process mandates a hearing by a "neutral and detached judge." *Concrete Pipe & Prods. of Cal., Inc. v. Constr. Laborers Pension Tr. For S. Cal.*, 508 U.S. 602, 617-18 (1993) ("the command is no different when a legislature delegates functions to a private party."). FINRA's Hearing Officers, however, are employed by the corporation itself and act as a judge and jury. Moreover, FINRA's rules deprive respondents like Plaintiffs of basic evidentiary, procedural, and discovery-related protections. The Enforcement Proceeding is not governed by the Federal Rules of Evidence or the Federal Rules of Civil Procedure, but instead, is led by a Hearing Officer who may receive *any evidence* that he or she subjectively believes is relevant. This structure renders the entire Enforcement Proceeding biased and fundamentally unfair from the start.

4

**STATEMENT OF FACTS**

### A. Plaintiffs.

Plaintiffs Boustead Securities, LLC ("**Boustead**") and Sutter Securities, Inc. ("**Sutter**," and collectively with Boustead, the "**Companies**") are registered members of FINRA. The Companies are investment banking broker-dealers that provided financial advisory services to clients on mergers and acquisitions, capital raises, restructuring, and underwritings of initial public offerings on U.S.-based listing exchanges, including Nasdaq and the NYSE. The Companies' businesses depend on access to other market participants and the markets. Plaintiff Keith Moore ("**Moore**") was the CEO of (and remains on the board of directors for) Boustead and Sutter and is a named defendant in the Enforcement Proceeding.

### B. FINRA.

FINRA is a private Delaware corporation with numerous offices throughout the country.[3] FINRA is the only registered "national securities association" under Section 15A of the Exchange Act of 1934 (the "**Exchange Act**"). As a result, federal law requires that all firms, including Boustead and Sutter, and individuals engaging in the securities trading industry, including Mr. Moore, register with FINRA as a condition to participation in such business.

The Exchange Act states that FINRA must enforce its own rules against its members. FINRA must also ensure that its members comply with the Exchange Act and the SEC's rules and regulations. 15 U.S.C. §§78o-3(b)(2), (7)-(8). FINRA does so through a broad range of actions, such as investigations, inspecting books and records, ordering testimony under oath, and requiring members to participate in adjudicatory proceedings before FINRA's in-house tribunal. Whether through settlement or a hearing, FINRA disciplines its members, including through large fines and

---

[3] *See* https://www.finra.org/about (last accessed Apr. 1, 2026).

expulsions, for alleged violations of federal securities laws, federal regulations, and/or FINRA rules.

### C. The Enforcement Proceeding and the Damage Flowing Therefrom.

On January 15, 2026, FINRA initiated an Enforcement Proceeding against Plaintiffs. FINRA asserts seven causes of action for alleged violations of FINRA Rules and federal securities law over a three-year period, including claims for failing to develop reasonable anti-money laundering procedures and failing to reasonably supervise, among other claims.[4] FINRA Enforcement requests that FINRA's Hearing Officer impose significant monetary fines, any other appropriate sanctions, and make a finding that "Boustead Securities LLC willfully violated Section 17(a) of the Exchange Act and Exchange Act Rule 17a-4." *See* Ex. A at 64.

As a practical matter, the Enforcement Proceeding carries immediate collateral consequences to Plaintiffs in the marketplace. Plaintiffs have lost, and continue to lose, business opportunities, and their relationships with other critical market participants have been, and continue to be, irreparably impaired. These consequences are compounded by FINRA's instructing other market participants, namely the Nasdaq and NYSE, to cease doing business with Boustead and Sutter because the Companies are named parties in the Enforcement Proceeding, even though FINRA does not seek suspension or expulsion of Boustead or Sutter's membership or any other relief that would justify their being banned from membership with the Nasdaq and NYSE. Plaintiffs' clients, vendors and counterparties in the market (who are also concerned with FINRA Enforcement's investigative power and prerogatives) did not wait for adjudication of the complaint prior to protecting themselves from FINRA. Some of those parties, instead, ceased doing business

---

[4] *See* Ex. A, styled *Dep't of Enforcement v. Boustead Securities, LLC, Sutter Securities, Inc., and Keith Charles Moore,* FINRA Proceeding No. 2022075185901. This matter is referred to throughout this Motion as the "**Enforcement Proceeding**."

with Plaintiffs altogether.[5] Accordingly, the Enforcement Proceeding imposes a present, intensifying, and irreparable injury while Plaintiffs are forced to litigate inside an unconstitutional structure and, even if Plaintiffs prevail, the damage will be done.

## ARGUMENT

### I.    Legal Standard.

A movant seeking a preliminary injunction must establish "that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Coupa Software Inc v. Optilogic, Inc.*, 2025 WL 3552384, at *1 (D. Del. Dec. 11, 2025) (citing *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008)). The Third Circuit has held, "[t]he first two factors are the 'most critical.'" *Del State Sportsmen's Ass'n v. Del. Dep't of Safety & Homeland Sec.*, 108 F.4th 194, 202 (3d Cir. 2024) (citation omitted) **"If both are present, a court then balances all four factors."** *Id.*

The Third Circuit has explained that the first factor, likelihood of success on the merits, "requires a showing significantly better than negligible, but not necessarily more likely than not." *Reilly v. City of Harrisburg*, 858 F.3d 173, 179 (3d Cir. 2017). The second factor, irreparable harm in the absence of preliminary relief, requires a showing that irreparable harm is "more likely than not." *Id.* If both the first and second factors are met, "a court then considers the remaining two factors and determines in its sound discretion if all four factors, taken together, balance in favor of granting the requested preliminary relief." *Id.*

---

[5] The extent of the immediate and irreparable harm is set forth in the declaration of Keith C. Moore (the "Moore Dec."), filed herewith.

7

## II.    Plaintiffs' Constitutional Claims are Likely to Prevail.

### a.    FINRA is Exercising Federal Power.

FINRA's powers derive from the federal government. FINRA is the only national securities association recognized by the SEC and, therefore, FINRA membership is mandatory for nearly all brokers and dealers. "That means, in effect, membership in FINRA is mandatory for anyone who wants to run a brokerage." *Alpine Sec. Corp.*, 121 F.4th at 1339 (Walker, J., concurring in part and dissenting in part). In addition, FINRA creates its own rules that the SEC approves. Once approved, those rules carry the force of federal law. *Birkelbach v. SEC*, 751 F.3d 472, 475 (7th Cir. 2014). Further, FINRA enforces "both their own rules and federal securities laws against their members." *Alpine Sec. Corp.*, 121 F.4th at 1321. The Exchange Act also requires FINRA to enforce federal law, or the SEC might revoke FINRA's status as the nation's only securities association. *See* 15 U.S.C. §§ 78s(g)(1)(B), (h)(1)(b).

As Judge Walker wrote in his concurrence in *Alpine I*, "though FINRA is private, its enforcement activities are controlled by the government. The Exchange Act *requires* FINRA to enforce government standards, including statutory provisions and SEC regulations." *Alpine I*, 2023 WL 4703307, at *3 (emphasis in original). "From start to finish, FINRA hearing officers execute government laws subject to a government plan, with little to no room for private control." *Id.* FINRA thus operates as:

> a quasi-governmental agency, with express statutory authority to adjudicate actions against members who are accused of illegal securities practices and to sanction members found to have violated the Exchange Act ….

*Nat'l Ass'n of Sec. Dealers, Inc. v. SEC*, 431 F.3d 803, 804 (D.C. Cir. 2005) (citing *Merrill Lynch v. Nat'l Ass'n of Sec. Dealers, Inc.*, 616 F.2d 1363, 1367 (5th Cir. 1980)) ("As a registered securities association, NASD has been delegated government power … to enforce … the legal

8

requirement laid down in the Exchange Act.").

      **b. Plaintiffs are Likely to Succeed on their Private Nondelegation Doctrine Claims if FINRA is a Private Actor.**

The Constitution prohibits Congress from delegating regulatory authority to a private entity:

> Although no provision of the Constitution expressly forbids the exercise of governmental power by a private entity, our so-called private nondelegation doctrine flows logically from the Vesting Clauses. Because a private entity is neither Congress, nor the President or one of his agents, nor the Supreme Court or an inferior Congress, the court established by Vesting Clauses would categorically preclude it from exercising the legislative, executive, or judicial powers of the Federal Government. In short, the "private nondelegation doctrine" is merely one application of the provisions of the Constitution that forbid Congress to allocate power to an ineligible entity, whether governmental or private.

*Dep't of Transp. v. Ass'n of Am. R.R.*, 575 U.S. 43, 87-88 (2015). Judge Walker's dissent in *Alpine II* highlights FINRA's nondelegation doctrine problem:

> FINRA is a Delaware corporation, but it wields significant executive authority that the Constitution vests in the Executive Branch alone. Start by considering some of the actions that FINRA may take, all without government oversight:
>
> - Open an investigation;
>
> - Demand to inspect books, records, or accounts;
>
> - Require a brokerage employee to provide information orally, in writing, or electronically;
>
> - Require an employee to testify under oath;
>
> - Exercise prosecutorial discretion to choose formal disciplinary actions or to choose no action at all;
>
> - Authorize complaints against member broker-dealers;
>
> - Demand submission of trading data;

- Negotiate settlements;

- Require members to participate in live adjudicatory proceedings before an in-house tribunal;

- Release, at its discretion, information related to disciplinary proceedings;

- Impose the cost of the disciplinary proceeding on the disciplined member as FINRA "deems fair and appropriate;"

- Issue large fines; and

- Expel a firm from FINRA and (in effect) from the securities industry for violations of federal securities laws, federal regulations, or FINRA rules, or for failure to promptly pay a fine, sanction or cost.

Put simply, for brokers required (by statute) to join a securities association, FINRA operates as the principal decisionmaker in the use of federal power. That's because it enforces federal law and rules that carry the force of law. And it does so without any initial approval from its supposed supervisor, the SEC. This especially provocative exercise of governmental power by a private organization transgresses the private non-delegation doctrine.

*Alpine II*, 121 F.4th at 1343-46. Because FINRA's broad, unchecked, and unsupervised power violates the nondelegation doctrine, Plaintiffs have established a reasonable likelihood that the outsourcing of executive authority to FINRA is an unconstitutional delegation. And, as the Enforcement Proceeding commences, Plaintiffs are not asking for an advisory constitutional ruling; they are asking the Court to halt a present, coercive exercise of unconstitutionally delegated power that threatens irreparable constitutional and marketplace injury before their constitutional claims are adjudicated.

  **c. Plaintiffs are Likely to Succeed on their Appointments and Vesting Clause Claims if FINRA is a State Actor.**

Courts have developed numerous tests to determine if a private party is a state actor for

10

constitutional purposes. State action is found when a private entity "is entwined with governmental policies or when government is entwined in its management or control." *Brentwood Acad. v. Tenn. Secondary Sch. Athletic Ass'n*, 531 U.S. 288, 295-96 (2001). State action occurs where the government has "so far insinuated itself into a position of interdependence with" a private entity that the government becomes a "joint participant in the enterprise," *Jackson v. Metro Edison Co.*, 419 U.S. 345, 357 (1974), or where a nominally private entity is controlled by an "agency of the State." *Pennsylvania v. Bd. of Dirs. of City Trusts of Phila.*, 353 U.S. 230, 231 (1957) (per curiam).

FINRA's enforcement efforts qualify as state action. First, FINRA is a quasi-governmental agency with its enforcement authority entirely derivative of and ultimately belonging to the SEC. *Aslin v. Fin. Indus. Reg. Auth.*, 704 F.3d 475, 476 (7th Cir. 2013). Second, FINRA must enforce all violations of federal securities law and FINRA's rules, or else the SEC may revoke FINRA's designation as the only "national securities association" under the Exchange Act. Third, the SEC approves all FINRA rules, *see* 15 U.S.C. § 78s(b)(1), (c), and, once the SEC's blessing is bestowed, FINRA rules carry the force of law. *Birkelbach*, 751 F.3d at 475, n.2. Simply put, FINRA acts "under the aegis of the Exchange Act's delegated authority" when performing its "regulatory, adjudicatory or prosecutorial duties." *In re Series 7 Broker Qualifications Exam Scoring Litig.*, 548 F. 3d 110, 114 (D.C. Cir. 2008). But if FINRA acts as a state actor (and not a private entity in violation of the nondelegation doctrine), then FINRA "runs headlong into the rest of the Constitution" and "Article II problems immediately arise[,] because FINRA's hearing officers are indistinguishable from the [ALJ]" that was found unconstitutional in *Lucia. Alpine II*, 415 F.4th at 1346 (Walker, J., concurring in part and dissenting in part) (citing *Lucia v. SEC*, 138 S. Ct. 2044, 2052-54 (2018) (holding the SEC's ALJs are inferior officers subject to the Appointments Clause)).

11

Article II provides that only the Executive Branch may exercise executive authority. And while the President needs "lesser executive officers"[6] to assist in discharging the Executive's obligations, Article II mandates that lesser officers remain accountable to the Executive and ultimately the people. *Buckley*, 424 U.S. at 126. Accordingly, if FINRA's Hearing Officers are exercising the kind of power that the Constitution requires to be exercised by accountable Executive Branch officers, then Plaintiffs are entitled to relief now, before an unconstitutional structure inflicts further irreparable harm.

To satisfy Article II, FINRA Hearing Officers must be properly appointed and removable by the President. FINRA checks neither box. FINRA's hearing officers are appointed by FINRA's CEO, *see* FINRA Rule 9213,[7] and FINRA states that "[o]nly FINRA's Chief Executive Officer can terminate a Hearing Officer," where such termination can be appealed "to the Audit Committee of FINRA's Board of Governors."[8] For their part, SEC Commissioners can only be removed for "good cause" amounting to "inefficiency, neglect of duty or malfeasance in office." *Jarkesy v. SEC*, 34 F.4th 446, 464 (5th Cir. 2022) (SEC Commissioners may may only be removed by the President for good cause); *Free Enterprise Fund v. Pub. Co. Accounting Oversight Bd.*, 561 U.S. 477, 487 (2010) ("The parties agree that the Commissioners cannot themselves be removed by the President except under the *Humphrey's Estate* standard of 'inefficiency, neglect of duty, or malfeasance in office ….'"). As Judge Walker summarized, "[i]n short, Congress requires FINRA to 'enforce' both its own rules and federal securities law, without adequate control by the President.

---

[6] The Supreme Court has defined an "officer" as somebody who continuously and permanently exercises "significant authority pursuant to the laws of the United States[.]" *Buckley v. Valeo*, 424 U.S. 1, 126 (1978).

[7] *See also* https://www.finra.org/rules-guidance/adjudication-decisions/office-hearing-officers-oho/about (last accessed Apr. 1, 2026).

[8] *See id.*

That arrangement violates the Constitution." *Alpine II*, 415 F.4th at 1349 (concurring in part and dissenting in part). Thus, if FINRA is a state actor, Plaintiffs are likely to succeed on their Appointment Clause and Vesting Clause claims.

### d.  Plaintiffs are Entitled to a Jury Trial under the Seventh Amendment.

The Seventh Amendment provides that "[i]n suits at common law, where the value in controversy shall exceed twenty dollars, the right of trial by jury shall be preserved[.]" The Supreme Court, in *Jarkesy,* recently emphasized the broad nature of "common law" suits, explaining that "the Framers used the term common law in the [Seventh] Amendment in contradistinction to equity [or] admiralty … the Amendment therefore embrace[s] all suits which are not of equity [or] admiralty jurisdiction, whatever may be the peculiar form which they may assume." *Jarkesy*, 603 U.S. at 122.  Accordingly, the Seventh Amendment analysis explores (i) the nature of the claim; and (ii) the nature of the remedy, with the remedy being the "more important consideration since some causes of action sound in both law and equity." *Id.* at 122-23.

FINRA's Enforcement Proceeding asserts legal claims. FINRA seeks, among other things, a finding that Boustead "willfully" violated the Exchange Act, a quintessential legal finding. FINRA also alleges numerous violations of its own rules that are equivalent to a legal claim for negligence based on Plaintiffs' alleged "failure" to act reasonably. Restatement (Second) of Torts § 283 ("The standard of conduct to which one must conform to avoid being negligent is that of a reasonable man under like circumstances."). For example, in the first four pages of the Enforcement Complaint, FINRA alleges that Plaintiffs failed to establish "a *reasonably* designed AML program," failed to establish a "supervisory system *reasonably* designed" to detect "red flags," failed to "*reasonably* design" a system for compliance with Regulation M, failed to establish or maintain "a *reasonable* supervisory system" for review of business communications,

13

and failed to "establish or maintain a ***reasonable*** supervisory system to achieve compliance" with FINRA rules. *See* Ex. A, ¶¶ 3, 7, 8, 9, 11.

But if there were any doubt, the second *Jarkesy* factor establishes FINRA's claims are legal ones. Civil fines, which FINRA seeks here, are "a type of remedy at common law that could only be enforced in courts of law." *Compare*, *Jarkesy*, 603 U.S. at 122-23, *with* Ex. A at 64 ("the Department of Enforcement respectfully requests … [an] order that one or more of the sanctions provided under FINRA Rule 8310(a), ***including monetary sanctions***, be imposed."). And, as in *Jarkesy*, "the remedy is all but dispositive. For respondents' alleged fraud, the SEC seeks civil penalties, a form of monetary relief. While monetary relief can be legal or equitable, *money damages are the prototypical common law remedy*." *Jarkesy*, 603 U.S. at 123. For the same reason, the Seventh Amendment provides Plaintiffs with the right to a jury.

Because FINRA seeks to impose monetary penalties and career-ending sanctions through its in-house adjudication, Plaintiffs are entitled to litigate this dispute before a jury.

### e.  The Enforcement Proceeding Violates Plaintiffs' Due Process Rights.

The Enforcement Proceeding violates Plaintiffs' Due Process Rights guaranteed by the Fifth Amendment.

*First*, due process requires "a neutral and detached judge in the first instance …. and the command is no different when a legislature delegates adjudicative functions to a private party." *Concrete Pipe & Prods. of Cal.*, 508 U.S. at 617-18. FINRA Hearing Officers, who operate as both judges and juries, are employed by FINRA and are frequently recruited from FINRA Enforcement.

*Second*, Plaintiffs are deprived of their right to conduct meaningful discovery in preparation for trial. FINRA's Department of Enforcement investigated Plaintiffs for over four

years but Plaintiffs have no right to obtain pre-trial testimony of their accusers (as would be allowed by Fed. R. Civ. P. 30), to issue interrogatories (as allowed by Fed. R. Civ. P. 33), and to issue any documents requests or subpoenas (as allowed under Fed. R. Civ. P. 34 and 36), unless approved by FINRA's hearing officer.

*Third*, the Enforcement Proceeding is not governed by the Federal Rules of Evidence. FINRA's Hearing Officer can receive any evidence that he or she deems relevant, even if such evidence is plainly inadmissible under the Federal Rules of Evidence (as promulgated by the Supreme Court, to provide due process protection).

Altogether, because FINRA lacks a neutral adjudicator, conducts a one-sided and subjective discovery regime, and because its lax evidentiary standards deny Plaintiffs a meaningful opportunity to be heard before an impartial decisionmaker, the Enforcement Proceeding is fundamentally unfair and violates the Fifth Amendment.

## III.    Plaintiffs Will Suffer Irreparable Harm Absent a TRO.

Plaintiffs seek a narrow injunction to preserve the status quo while this Court adjudicates threshold constitutional challenges to the Enforcement Proceeding. The record shows that the proceeding has already triggered immediate and compounding market exclusionary consequences for Plaintiffs that will continue absent injunctive relief. These consequences continue to intensify as the Enforcement Proceeding continues.

### a.    FINRA's Conduct & the Enforcement Proceeding are Limiting Plaintiffs' Market Access.

Before FINRA filed its Complaint in the Enforcement Proceeding, FINRA admitted to Plaintiffs that it interfered with the Companies' limited membership underwriting applications ("**LUMA**") submitted to Nasdaq & the New York Stock Exchange. *See* Moore Dec., ¶¶ 8-10. FINRA informed Plaintiffs that it directed Nasdaq not to approve the companies' LUMA

applications submitted to the Nasdaq. *Id.* at ¶ 8. Plaintiffs later learned from the NYSE that, almost immediately after the companies' LUMAs were submitted to that exchange, that FINRA directed the NYSE to deny the LUMAs. *Id.* at ¶ 10. Both before and after FINRA filed the Complaint in the Enforcement Proceeding, the Companies lost the ability to serve as lead underwriters for their clients because of FINRA's conduct. *Id.* at ¶¶ 11-13.

The Enforcement Proceeding itself is operating to exclude Plaintiffs from participating in the marketplace. On March 10, 2026, Sutter was informed that, at the insistence of its clearing firm, Sutter's clearing agreement was being terminated. *Id.* at ¶ 15. In explaining its decision, the clearing firm informed Sutter that the clearing agreement was being terminated because of the Enforcement Proceeding. *Id.*

Absent access to a clearinghouse, underwriters cannot function in the marketplace, because trades and offering-related transactions must be cleared and settled through a clearing arrangement. The loss of a clearing arrangement similarly functions as a de facto operating bar that excludes Plaintiffs from accessing the market and participating in their industry of choice. As long as FINRA continues to prosecute the Enforcement Proceeding, clearing firms and other market participants will continue to face the same FINRA pressure that compelled the termination of Sutter's clearing arrangement, and will prevent the companies from gaining essential market access through ordinary commercial efforts.

Recently, on March 19, 2026, Boustead and Sutter's principals, Mr. Moore and Daniel McClory were informed by Dominari Securities, LLC ("**Dominari**") that their personal brokerage accounts were closed at the demand of Dominari's clearing firms, RBC and Wedbush, entities subject to FINRA's purview. *Id.* at ¶¶ 16-20. When Dominari informed Mr. Moore and the Companies of its decision to close the brokerage accounts, Dominari's representative stated that

16

they disagreed with the decisions but had "no choice" but to close the accounts. *Id.* at ¶ 17. Dominari's representative stated that the brokerage accounts were being closed because the Companies are parties to the Enforcement Proceeding, as stated in correspondence received by Dominari. *Id.* at ¶ 18. In addition to Mr. Moore and Mr. McClory's personal brokerage accounts, Dominari also closed an account associated with another client of Boustead's, with several unaffiliated investors and for which Mr. Moore is the managing member. *Id.* at ¶ 20.

Courts have also held that "[monetary] loss, even irretrievable monetary loss, may constitute irreparable harm only if it is so severe as to cause extreme hardship to the business or threaten its very existence." *Lukezic v. Fin. Indus. Reg. Auth., Inc.*, 2025 WL 2305859, at *3 (D.D.C. Aug. 10, 2025). Likewise, the Court in *Alpine II* held that "a FINRA member subject to summary expulsion in an expedited proceeding would face irreparable harm because it faces a grave risk of being forced out of business before full SEC review." *Alpine II,* 121 F.4th at 1329. The above developments constitute irreparable harm as Plaintiffs' "very existence" is threatened, and a continuation of the Enforcement Proceeding will result in Plaintiffs being "forced out of business" years before *any* judicial review is feasible. *See* Moore Dec., ¶ 21. Accordingly, Plaintiffs will be irreparably harmed absent injunctive relief.

### b. Plaintiffs Suffer a Present, Here-and-Now Irreparable Injury from FINRA's Unconstitutional Enforcement Proceeding and Adjudicatory Structure.

"[A]n unconstitutional structured decision-making process" is a "here-and-now injury that cannot be remedied" – indeed, the harm is "impossible to remedy once the proceeding is over." *Axon*, 598 U.S. at 191-92. The Fifth Circuit recently affirmed the issuance of injunctive relief in similar circumstances. *See Space Exploration Techs. Corp. v. N.L.R.B.*, 151 F.4th 761, 779-80 (5th Cir. 2025). Addressing irreparable harm, the Court held that:

> [t]he NLRB tries to cabin *Axon* to jurisdiction. But its reasoning fits irreparable harm hand-in-glove: once an unconstitutional

17

proceeding begins, the damage is done. That is the essence of irreparability. No further showing – such as how the outcome might differ under a valid structure is required. Waiting until the end would be no remedy at all. Binding precedent, first principles, and common sense align, forcing [Plaintiffs] to appear before an unconstitutionally structured agency inflicts irreparable harm.

*Id.* Similarly, Judge Walker's rationale in *Alpine II* resonates:

To be sure, *Axon* was answering a question about whether a district court had jurisdiction, not whether a court should grant a preliminary injunction. But I struggle to see how an injury that is completely "impossible to remedy" (the standard there) meaningfully differs from an injury that is "beyond remediation" (the standard here). When likely to succeed in a challenge to enforcement proceedings based on the Appointments Clause or the President's removal power, a party has the "right[ ] not to undergo the complained-of agency proceedings," which according to *Axon* are "impossible to remedy once the proceeding is over." Nothing about *Axon*'s reasoning limits that fundamental legal principle to a defendant's motion to dismiss for lack of jurisdiction or excludes it from applying to a plaintiff's motion for a preliminary injunction.

121 F.4th at 1348-49.

Absent injunctive relief, Plaintiffs will continue suffering irreparable harm.

### IV. The Balance of Equities Favors Plaintiffs; Enjoining Unconstitutional Proceedings Protects the Public.

"There is generally no public interest in the perpetuation of unlawful agency action. To the contrary, there is a substantial public interest in having governmental agencies abide by federal laws that govern their existence and operations." *League of Women Voters of United States v. Newby*, 838 F.3d 1, 12 (D.C. Cir. 2016). Here, neither FINRA nor the public suffer when unlawful agency action is prevented and, to the contrary, public interest favors adherences to the Constitution given the liberty and property interests at stake.

### V. The Court Should not Require any Bond.

While Fed. R. Civ. P. 65(c) provides for the posting of security before an injunction will issue, courts are provided with broad discretion to determine the amount of such a bond and,

18

indeed, whether any bond is required at all. *Hoxworth v. Blinder, Robinson & Co.*, 903 F.2d 186, 210-11 (3d Cir. 1990). Here, because FINRA will suffer no harm and the requested relief is narrowly tailored, no bond should issue.

## CONCLUSION

For the reasons set forth above, the Court should grant the accompanying Motion for Preliminary Injunction and enter an order enjoining FINRA's enforcement proceedings against Plaintiffs from proceeding.

*Of Counsel:*

**MICHAEL BEST & FREDRICH LLP**

Richard F. Ensor*
650 S. Main St., Suite 500
Salt Lake City, UT 84101
(385) 695-6450
rfensor@michaelbest.com

Daniel Jozwiak*
675 15th St., Suite 2000
Denver, CO 80202
(720) 398-0052
daniel.jozwiak@michaelbest.com

*\*Pro hac vice application forthcoming*

**ASHBY & GEDDES**

*/s/ Randall J. Teti*
Randall J. Teti (#6334)
500 Delaware Ave., 8th Floor
P.O. Box 1150
Wilmington, DE 19899
(302) 654-1888
rteti@ashbygeddes.com

*Counsel for Plaintiffs*

Dated: April 1, 2026

19