# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| Boustead Securities, LLC, Sutter Securities, Inc., and Keith C. Moore, | ) ) ) | |
| Plaintiffs, | ) ) | C.A. No. 26-0360-CFC |
| v. | ) ) | |
| Financial Industry Regulatory Authority, Inc., | ) ) ) | |
| Defendant. | ) ) | |

## DEFENDANT'S ANSWERING BRIEF IN OPPOSITION TO
## PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION

OF COUNSEL:

Amir C. Tayrani
Alex Gesch
GIBSON, DUNN & CRUTCHER LLP
1700 M Street, N.W.
Washington, D.C.  20036
T: (202) 887-3692
atayrani@gibsondunn.com
agesch@gibsondunn.com

James R. Figliulo
Michael K. Desmond
SMITH, GAMBRELL & RUSSELL, LLP
155 N. Wacker Drive, Suite 3000
Chicago, Illinois  60606
T: (312) 360-6000
jfigliulo@sgrlaw.com
mdesmond@sgrlaw.com


Dated:  April 30, 2026

Raymond J. DiCamillo (#3188)
Chad M. Shandler (#3796)
Christine D. Haynes (#4697)
RICHARDS, LAYTON & FINGER, P.A.
920 North King Street
Wilmington, Delaware  19801
T: (302) 651-7700
dicamillo@rlf.com
shandler@rlf.com
haynes@rlf.com


*Attorneys for Defendant Financial
Industry Regulatory Authority, Inc.*

**TABLE OF CONTENTS**

Page

I.   NATURE AND STAGE OF THE PROCEEDINGS ...................................1

II.  SUMMARY OF THE ARGUMENT ................................................3

III. STATEMENT OF FACTS ........................................................4

    A.   FINRA's Private Self-Regulation Of Broker-Dealer Members ............4

    B.   FINRA's Disciplinary Proceeding Against Plaintiffs .........................7

IV.  LEGAL STANDARD ..............................................................8

V.   ARGUMENT .........................................................................9

    A.   Plaintiffs Have No Likelihood Of Success On The Merits ...................9

        1.   FINRA's Self-Regulatory Activities Do Not Violate The Private Nondelegation Doctrine .........................................9

        2.   Plaintiffs' Other Constitutional Claims Fail Because FINRA Is Not A State Actor Or Engaged In State Action .......12

        3.   The Court Lacks Subject Matter Jurisdiction Over Plaintiffs' Seventh Amendment And Due Process Claims .......16

        4.   Plaintiffs' Other Constitutional Claims Fail On The Merits ....18

    B.   The Remaining Factors Weigh Heavily Against An Injunction .........21

        1.   Plaintiffs Have Not Shown Irreparable Harm .........................21

        2.   The Equities And Public Interest Favor FINRA .......................23

VI.  CONCLUSION......................................................................23

i

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Alpine Sec. Corp. v. FINRA*,
121 F.4th 1314 (D.C. Cir. 2024)......................................................4, 5, 11, 14, 22

*Alpine Sec. Corp. v. FINRA*,
2021 WL 4060943 (D. Utah Sept. 7, 2021)......................................................18

*Alpine Sec. Corp. v. Nat'l Sec. Clearing Corp.*,
2025 WL 901847 (D. Utah Mar. 25, 2025)......................................................18

*Am. Exp. Travel Related Servs., Inc. v. Sidamon-Eristoff*,
669 F.3d 359 (3d Cir. 2012) ................................................................21

*Am. Mfrs. Mut. Ins. Co. v. Sullivan*,
526 U.S. 40 (1999)................................................................13

*Aslin v. FINRA*,
704 F.3d 475 (7th Cir. 2013) ................................................................15

*Atlas Roofing Co. v. OSHRC*,
430 U.S. 442 (1977)................................................................19

*Axon Enter., Inc. v. FTC*,
598 U.S. 175 (2023)................................................................2, 4, 16, 17, 22

*Blankenship v. FINRA*,
2024 WL 4043442 (E.D. Pa. Sept. 4, 2024)................................................17, 18

*Blum v. Yaretsky*,
457 U.S. 991 (1982)................................................................13, 14, 15

*Boustead Sec., LLC v. FINRA*,
No. 1:26-cv-00490 (N.D. Ill. Jan. 15, 2026) ................................................................8

*Brentwood Acad. v. Tenn. Secondary Sch. Athletic Ass'n*,
531 U.S. 288 (2001)................................................................14

*Cody v. SEC*,
693 F.3d 251 (1st Cir. 2012)................................................................20

*Def. Distrib. v. Att'y Gen. of N.J.*,
   972 F.3d 193 (3d Cir. 2020) ...............................................................21

*Edmonson v. Leesville Concrete Co.*,
   500 U.S. 614 (1991)..........................................................................3, 12

*Elgin v. Dep't of Treasury*,
   567 U.S. 1 (2012)..................................................................................16

*Epstein v. SEC*,
   416 F. App'x 142 (3d Cir. 2010) ......................................................3, 12

*FCC v. Consumers' Rsch.*,
   606 U.S. 656 (2025)................................................................................9

*Ferring Pharms., Inc. v. Watson Pharms., Inc.*,
   765 F.3d 205 (3d Cir. 2014) ..................................................................8

*First Jersey Sec., Inc. v. Bergen*,
   605 F.2d 690 (3d Cir. 1979) ...............................................2, 3, 11, 12

*Free Enter. Fund v. PCAOB*,
   561 U.S. 477 (2010)..............................................................................19

*Fres-co Sys. USA, Inc. v. Hawkins*,
   690 F. App'x 72 (3d Cir. 2017) ...........................................................23

*Gold v. SEC*,
   48 F.3d 987 (7th Cir. 1995) .................................................................15

*In re John Thomas Cap. Mgmt. Grp.*,
   2020 WL 5291417 (SEC Sept. 4, 2020)..............................................18

*Kim v. FINRA*,
   698 F. Supp. 3d 147 (D.D.C. 2023).............................9, 10, 14, 21, 23

*Lebron v. Nat'l R.R. Passenger Corp.*,
   513 U.S. 374 (1995)........................................................................13, 18

*Manhattan Cmty. Access Corp. v. Halleck*,
   587 U.S. 802 (2019)....................................................................12, 14, 15

iii

*Mathews v. Eldridge*,
   424 U.S. 319 (1976).......................................................................................20

*McGinn, Smith & Co. v. FINRA*,
   786 F. Supp. 2d 139 (D.D.C. 2011).................................................................14

*Mohlman v. FINRA*,
   2020 WL 905269 (S.D. Ohio Feb. 25, 2020) ..................................................12

*In re NYSE Specialists Sec. Litig.*,
   503 F.3d 89 (2d Cir. 2007) .............................................................................10

*Oklahoma v. United States*,
   163 F.4th 294 (6th Cir. 2025) .......................................................................9, 10

*Perpetual Sec., Inc. v. Tang*,
   290 F.3d 132 (2d Cir. 2002) ...........................................................................13

*R.H. Johnson & Co. v. SEC*,
   198 F.2d 690 (2d Cir. 1952) ...........................................................................11

*Reilly v. City of Harrisburg*,
   858 F.3d 173 (3d Cir. 2017) ..............................................................................9

*S.F. Arts & Athletics, Inc. v. U.S. Olympic Comm.*,
   483 U.S. 522 (1987).........................................................................................14

*Saad v. SEC*,
   873 F.3d 297 (D.C. Cir. 2017)...........................................................................5

*Schweiker v. McClure*,
   456 U.S. 188 (1982).........................................................................................20

*Scottsdale Cap. Advisors Corp. v. FINRA*,
   844 F.3d 414 (4th Cir. 2016) ........................................................................6, 16

*Scottsdale Cap. Advisors Corp. v. FINRA*,
   No. 1:23-cv-01506 (D.D.C. Apr. 23, 2026) ...........................................11, 13, 19

*SEC v. Jarkesy*,
   603 U.S. 109 (2024)...................................................................................17, 19

iv

*In re Series 7 Broker Qualification Exam Scoring Litig.*,
    548 F.3d 110 (D.C. Cir. 2008)................................................................15

*Smith v. FINRA, Inc.*,
    2025 WL 985447 (D.D.C. Apr. 2, 2025)................................................22

*Sorrell v. SEC*,
    679 F.2d 1323 (9th Cir. 1982) ...............................................................11

*Space Exploration Techs. Corp. v. NLRB*,
    151 F.4th 761 (5th Cir. 2025) ................................................................22

*Sunshine Anthracite Coal Co. v. Adkins*,
    310 U.S. 381 (1940)................................................................................9

*Thunder Basin Coal Co. v. Reich*,
    510 U.S. 200 (1994)..............................................................................17

*Todd & Co. v. SEC*,
    557 F.2d 1008 (3d Cir. 1977) ...............................................................11

*Tourmaline Mgmt. LLC v. Tourmaline Cap. Partners, LLC*,
    2025 WL 2338069 (D. Del. Aug. 13, 2025).....................................21, 22

*Trump v. United States*,
    603 U.S. 593 (2024)..............................................................................19

*United States v. NASD, Inc.*,
    422 U.S. 694 (1975)..............................................................................10

*Vape Cent. Grp. v. FDA*,
    2025 WL 637416 (D.D.C. Feb. 27, 2025).......................................17, 18

*Withrow v. Larkin*,
    421 U.S. 35 (1975)................................................................................20

**Constitutional Provisions**

U.S. Const. art. II, § 2, cl. 2 ..................................................................19

**Statutes**

15 U.S.C. § 78o(a)(1) .............................................................................5

v

15 U.S.C. § 78o(b)(1)................................................................................................5

15 U.S.C. § 78o(b)(8) ...............................................................................................5

15 U.S.C. § 78o(b)(9)................................................................................................5

15 U.S.C. § 78o-3(b)(2) ............................................................................................6

15 U.S.C. § 78o-3(b)(4) ............................................................................................5

15 U.S.C. § 78o-3(b)(6) ............................................................................................1

15 U.S.C. § 78o-3(b)(7) ............................................................................................6

15 U.S.C. § 78o-3(b)(8) .......................................................................................6, 20

15 U.S.C. § 78s(b)(1)...........................................................................................6, 10

15 U.S.C. § 78s(c) ....................................................................................................6

15 U.S.C. § 78s(d)(1)..............................................................................................10

15 U.S.C. § 78s(d)(2) ...............................................................................6, 7, 10, 16

15 U.S.C. § 78s(e) ..................................................................................................10

15 U.S.C. § 78s(e)(1) ..............................................................................................16

15 U.S.C. § 78s(h)....................................................................................................6

15 U.S.C. § 78y(a)(1)..................................................................................3, 6, 7, 16

28 U.S.C. § 1331 ....................................................................................................16

**Rules**

FINRA Rule 9231 ......................................................................................................6

FINRA Rule 9232 ......................................................................................................6

FINRA Rule 9233 ......................................................................................................6

FINRA Rule 9234 ......................................................................................................6

FINRA Rule 9261 ......................................................................................................6

FINRA Rule 9311 ...................................................................................6, 22

FINRA Rule 9370 ........................................................................................22

**Other Authorities**

GAO, SEC Inspections of FINRA's Governance Were Consistent
    with Internal Guidance (2018)..............................................................6

OLC, The Test for Determining "Officer" Status Under the
    Appointments Clause (Jan. 16, 2025)................................................19

Marianne K. Smythe, *Government Supervised Self-Regulation in the
    Securities Industry and the Antitrust Laws*, 62 N.C. L. Rev. 475
    (1984) ....................................................................................................4

## I.     NATURE AND STAGE OF THE PROCEEDINGS

Defendant Financial Industry Regulatory Authority, Inc. ("FINRA") is a private self-regulatory organization authorized by the Securities Exchange Act of 1934 ("Exchange Act") to regulate its broker-dealer members subject to comprehensive oversight by the Securities and Exchange Commission ("SEC").

After a multi-year investigation, on January 15, 2026, FINRA brought an enforcement proceeding in its Office of Hearing Officers alleging that Plaintiffs "violated anti-money laundering (AML), supervisory, recordkeeping, and other SEC or FINRA rules in connection with their jointly conducted investment banking businesses." Ex. A to Motion, D.I. 6-1 ¶¶ 1, 6-11 ("Disciplinary Complaint"). That same day, the two corporate Plaintiffs filed a complaint in the Northern District of Illinois asserting state common-law damages claims challenging FINRA's investigation of the same underlying misconduct. Nearly three months later, Plaintiffs filed this second suit and moved for a preliminary injunction enjoining FINRA from carrying out its vital mission to "protect investors and the public interest." 15 U.S.C. § 78o-3(b)(6). Plaintiffs' motion should be denied for several reasons.

First, Plaintiffs have no likelihood of success on the merits. Plaintiffs argue in the alternative: Either FINRA is a private actor and its self-regulatory activities violate the private nondelegation doctrine (Count 1), or FINRA is a state actor and

1

thus subject to the limitations of the U.S. Constitution (Counts 2-5). Courts have repeatedly rejected both types of constitutional challenges. Plaintiffs' private nondelegation claim fails because, as the Third Circuit has already held with respect to FINRA's predecessor, FINRA permissibly exercises delegated authority given the SEC's "supervisory role" over FINRA's rules and their enforcement. *First Jersey Sec., Inc. v. Bergen*, 605 F.2d 690, 697, 699 (3d Cir. 1979). Plaintiffs' remaining claims in Counts 2-5 fail because FINRA is a private corporation, not a state actor subject to constitutional requirements. Additionally, the Court lacks jurisdiction over Plaintiffs' Seventh Amendment and due process claims, which must be brought in a court of appeals under the Exchange Act's exclusive review scheme. *See Axon Enter., Inc. v. FTC*, 598 U.S. 175, 185, 189 (2023). All of Plaintiffs' remaining claims also fail on the merits.

Second, Plaintiffs cannot demonstrate irreparable harm. Their claims of urgency are overstated. Plaintiffs waited nearly three months to bring this case after FINRA filed the Disciplinary Complaint, despite filing a different federal suit against FINRA arising out of the *same* underlying facts. Moreover, the imposition of *any* sanction in FINRA's disciplinary proceeding remains a number of months away.

Finally, the balance of equities and public-interest considerations cut strongly against injunctive relief. An injunction would delay resolution of the serious allegations against Plaintiffs and encourage copy-cat suits.

The Court should deny Plaintiffs' motion.

## II.    SUMMARY OF THE ARGUMENT

1.      Plaintiffs have no likelihood of success on the merits.

a.      FINRA's self-regulatory activities do not violate the private nondelegation doctrine because FINRA is subject to the SEC's comprehensive oversight. The Third Circuit and other courts have repeatedly upheld this arrangement as constitutional, which defeats Count 1 of the Complaint. *See*, *e.g.*, *First Jersey Sec.*, 605 F.2d at 697.

b.      Courts have also held that FINRA "is a private actor, not a state actor." *Epstein v. SEC*, 416 F. App'x 142, 148 (3d Cir. 2010). This conclusion dooms Plaintiffs' alternative claims under the Seventh Amendment, Appointments Clause, Due Process Clause, and separation of powers because the conduct of private entities "lies beyond the Constitution's scope." *Edmonson v. Leesville Concrete Co.*, 500 U.S. 614, 620 (1991).

c.      The Exchange Act provides U.S. Courts of Appeals with exclusive jurisdiction to review SEC orders upholding FINRA disciplinary sanctions. 15 U.S.C. § 78y(a)(1). This Court therefore lacks subject matter jurisdiction over

3

Plaintiffs' Seventh Amendment and due process claims.  While *Axon Enterprise v. FTC* recognizes a narrow exception for challenges to a body's structure or existence, that exception does not apply to these two claims.  598 U.S. at 189.

      d.      Regardless, Plaintiffs' Seventh Amendment, Appointments Clause, due process, and separation-of-powers claims fail on the merits.

      2.      The remaining factors also weigh against preliminary-injunctive relief.

      a.      Plaintiffs have not shown irreparable harm because Plaintiffs' delay in seeking injunctive relief undermines their claimed urgency and any FINRA sanctions are months away.

      b.      The equities and public interest favor FINRA because an injunction would disrupt its regulatory mission and harm investors.

## III.    STATEMENT OF FACTS

### A.    FINRA's Self-Regulatory Activities

"Self-regulation in the securities industry is nearly as old as the federal government."  Marianne K. Smythe, *Government Supervised Self-Regulation in the Securities Industry and the Antitrust Laws*, 62 N.C. L. Rev. 475, 480 (1984); *see Alpine Sec. Corp. v. FINRA*, 121 F.4th 1314, 1319 (D.C. Cir. 2024) (describing "extensive self-regulation" of U.S. securities markets "for more than two centuries").  When Congress adopted the modern securities laws in the 1930s, it preserved and built upon the self-regulatory framework.  Under the Exchange Act,

4

private self-regulatory organizations continue to exercise a primary supervisory role over their members, subject to comprehensive SEC oversight. *See Saad v. SEC*, 873 F.3d 297, 299-300 (D.C. Cir. 2017).

With certain exceptions, the Exchange Act requires anyone seeking to sell securities to join an association of broker-dealers registered as a national securities association—one type of self-regulatory organization—or to associate themselves with a member. *See* 15 U.S.C. § 78o(a)(1), (b)(1), (b)(8)-(9). FINRA is currently the only registered national securities association and exercises self-regulatory authority over its member broker-dealer firms and their associated persons. *Id.* § 78o-3(b)(4).

FINRA is not part of the government. It is a private, not-for-profit Delaware corporation. *Alpine*, 121 F.4th at 1321. FINRA was formed in 2007, when the National Association of Securities Dealers ("NASD") consolidated its regulation and enforcement functions with the similar functions of the New York Stock Exchange. *Id.* The government did not create FINRA or the NASD, *id.*, and the government does not appoint any FINRA board members, officers, or employees, *see* FINRA Board of Governors, bit.ly/3FmyxTr. FINRA also does not receive any government funding. *Alpine*, 121 F.4th at 1321.

FINRA exercises its self-regulatory authority subject to the Exchange Act and the SEC's supervision. The SEC regularly examines FINRA to ensure its

compliance with federal laws and FINRA rules, *see*, *e.g.*, GAO, SEC Inspections of FINRA's Governance Were Consistent with Internal Guidance (2018), https://www.gao.gov/products/gao-18-522, and can limit FINRA's activities or revoke FINRA's registration if FINRA mishandles its regulatory responsibilities, 15 U.S.C. § 78s(h). The SEC must approve FINRA rules and "may abrogate, add to, and delete from" FINRA rules as it deems necessary or appropriate. *Id.* § 78s(b)(1), (c). And the SEC ensures that FINRA "enforce[s] compliance" with the Exchange Act and FINRA's rules and that FINRA "appropriately discipline[s]" its members and associated persons for violations, pursuant to rules that "provide a fair procedure." *Id.* § 78o-3(b)(2), (7), (8).

FINRA's SEC-approved rules provide for multi-layered administrative and judicial review of FINRA disciplinary actions, as set forth in the Exchange Act. *Scottsdale Cap. Advisors Corp. v. FINRA*, 844 F.3d 414, 418 (4th Cir. 2016); *see* 15 U.S.C. §§ 78s(d)(2), 78y(a)(1). Those procedures generally include: (1) an evidentiary hearing before a three-person panel at which respondents can introduce evidence and call and cross-examine witnesses, FINRA Rules 9231-34, 9261; (2) an appeal to FINRA's National Adjudicatory Council, FINRA Rule 9311; (3) a

subsequent *de novo* appeal to the SEC, 15 U.S.C. § 78s(d)(2); and (4) a petition for review to a designated U.S. Court of Appeals, *id.* § 78y(a)(1).[1]

### B.    FINRA's Disciplinary Proceeding Against Plaintiffs

Plaintiffs Boustead Securities, LLC ("Boustead") and Sutter Securities, LLC ("Sutter") are broker-dealers and FINRA member firms. Compl. ¶¶ 12-13. Plaintiff Keith Moore is the former CEO and AML compliance officer of both firms. *Id.* ¶ 14. On January 15, 2026, after a thorough investigation, FINRA's Department of Enforcement brought a seven-count disciplinary complaint, alleging that Plaintiffs violated AML, supervisory, recordkeeping, and other SEC and FINRA rules. Disciplinary Complaint ¶¶ 1, 6-11; *id.* ¶¶ 212-73. The proceeding is in its beginning stages; Plaintiffs answered the Disciplinary Complaint on April 1, and FINRA's hearing officer has scheduled the final hearing for late February 2027. Fauci Decl. ¶¶ 6-8.[2]

The same day FINRA filed its disciplinary complaint, Boustead and Sutter sued FINRA in the Northern District of Illinois, alleging state-law tort claims and

---

[1] FINRA's rules are publicly available on FINRA's website. *See* https://www.finra.org/rules-guidance/rulebooks/finra-rules.

[2] On January 20, 2026, FINRA filed another disciplinary complaint against Sutter and Moore alleging violations of FINRA rules regarding excessive trading and supervisory requirements. Complaint, *Dep't of Enf't v. Sutter Sec. Inc.*, No. 2021071987902 (Jan. 20, 2026), available at https://tinyurl.com/bd4krxeb. That proceeding remains pending.

7

seeking damages arising out of FINRA's investigation of the same misconduct underlying the disciplinary complaint. Compl. ¶¶ 106-36, D.I. 1, *Boustead Sec., LLC v. FINRA*, No. 1:26-cv-00490 (N.D. Ill. Jan. 15, 2026). After FINRA moved to dismiss, Plaintiffs filed an amended complaint, challenging the same conduct and reasserting the same claims. Am. Compl. ¶¶ 97-128, D.I. 31, *Boustead Sec., LLC v. FINRA*, No. 1:26-cv-00490 (N.D. Ill. Apr. 22, 2026).

Nearly three months after the Northern District of Illinois lawsuit was filed, Plaintiffs filed their Complaint and a motion for a preliminary injunction in this Court. Plaintiffs' Complaint asserts that FINRA's structure and disciplinary proceeding violate the federal constitution, raising claims under the private nondelegation doctrine "[i]f FINRA is treated as a private actor," or, "in the alternative," under the Seventh Amendment, the Appointments Clause, the Due Process Clause, and Article II's separation-of-powers requirements, "[i]f FINRA is treated as a state actor." Compl. ¶¶ 10, 62-93.

## IV. LEGAL STANDARD

"Preliminary injunctive relief is an 'extraordinary remedy, which should be granted only in limited circumstances.'" *Ferring Pharms., Inc. v. Watson Pharms., Inc.*, 765 F.3d 205, 210 (3d Cir. 2014). The movant must establish that (1) "he is likely to succeed on the merits," (2) "he is likely to suffer irreparable harm in the absence of preliminary relief," (3) "the balance of the equities tips in his favor," and

8

(4) "an injunction is in the public interest." *Id.*  The first two factors are the "most critical," and only if these "gateway factors" are met should courts consider the others.  *Reilly v. City of Harrisburg*, 858 F.3d 173, 179 (3d Cir. 2017).

## V.    ARGUMENT

### A.    Plaintiffs Have No Likelihood Of Success On The Merits.

#### 1.    FINRA's Self-Regulatory Activities Do Not Violate The Private Nondelegation Doctrine.

Plaintiffs' private nondelegation claim is baseless.  The private nondelegation doctrine forbids "unchecked reassignments of power" from federal entities "to private entities."  *Oklahoma v. United States*, 163 F.4th 294, 305 (6th Cir. 2025).  But, as the Supreme Court recently reaffirmed, private entities can permissibly play a role in regulatory programs if they "'function[ ] subordinately to,'" and under the "'authority and surveillance'" of, a governmental body.  *FCC v. Consumers' Rsch.*, 606 U.S. 656, 692 (2025) (quoting *Sunshine Anthracite Coal Co. v. Adkins*, 310 U.S. 381, 399 (1940)).  *Consumers' Research* rejected a similar private nondelegation challenge to the Universal Service Administrative Company ("USAC")—a private company assisting the Federal Communications Commission ("FCC")—because USAC is "broadly subordinate" to the FCC, which, upon request, reviews USAC actions "de novo."  *Id.* at 692-93.

Like USAC, FINRA "'function[s] subordinately to'" a federal agency—the SEC—that "has 'authority and surveillance over [FINRA's] activities.'"  *Kim v.*

9

*FINRA*, 698 F. Supp. 3d 147, 154 (D.D.C. 2023); *see also In re NYSE Specialists Sec. Litig.*, 503 F.3d 89, 101-02 (2d Cir. 2007) (similar); *supra* at 5-7.  Following any disciplinary proceeding, FINRA must notify the SEC of its decision, which is then subject to *de novo* review by the SEC either acting *sua sponte* or upon request from the aggrieved party.  15 U.S.C. § 78s(d)(1)-(2), (e).

The SEC can exercise its oversight powers even before it is asked to review a final FINRA disciplinary decision.  For example, the SEC could "abrogate, add to, and delete from" FINRA's rules to limit FINRA's discretion to begin investigations or initiate disciplinary proceedings.  15 U.S.C. § 78s(b)(1).  Such SEC-imposed restrictions could include pre-clearance requirements before launching an investigation or filing an enforcement proceeding, or even prohibitions on targeting particular classes of conduct.  *See Oklahoma*, 163 F.4th at 310 (explaining that similar agency authority over a private entity's enforcement activities defeated a private nondelegation challenge).  That the SEC has not utilized this power over FINRA is not a sign of absenteeism; it is a tacit approval of FINRA's self-regulatory decisions across the whole lifecycle of a disciplinary matter.

The SEC's "pervasive supervisory authority" cabins FINRA's regulatory authority to a constitutionally permissible subordinate role.  *United States v. NASD, Inc.*, 422 U.S. 694, 733 (1975).  Accordingly, "'in case after case,'" courts "'have upheld this arrangement' against private nondelegation challenges."  *Kim*, 698 F.

10

Supp. 3d at 166 (alteration adopted); *see*, *e.g.*, *Sorrell v. SEC*, 679 F.2d 1323, 1325-26 (9th Cir. 1982); *R.H. Johnson & Co. v. SEC*, 198 F.2d 690, 695 (2d Cir. 1952). In *Todd & Co. v. SEC*, 557 F.2d 1008 (3d Cir. 1977), the Third Circuit rejected a private nondelegation challenge to a disciplinary sanction imposed by FINRA's predecessor, the NASD, because the NASD's "rules and its disciplinary actions were subject to full review by the SEC." *Id.* at 1012-13; *see also First Jersey Sec.*, 605 F.2d at 698 (reaffirming *Todd*). Because the FINRA-SEC relationship follows the same structure, *Todd* and *First Jersey Securities* control.

The D.C. Circuit's decision in *Alpine Securities Corp. v. FINRA*, 121 F.4th 1314 (D.C. Cir. 2024), is not to the contrary. Plaintiffs rely exclusively on the dissenting portion of Judge Walker's separate opinion, *see* Mot. 9-10, which predates *Consumers' Research* and does not bind the D.C. Circuit, much less this Court. By contrast, the majority opinion was "narrow and limited." 121 F.4th at 1330. It preliminarily enjoined any "expedited" expulsion before the opportunity for SEC review but otherwise rejected objections to "any sanctions short of expulsion" and allowed FINRA's disciplinary proceeding to continue. *Id.* at 1330-31. The court also rejected Judge Walker's "'significant executive authority'" analysis because that inquiry—which Plaintiffs embrace, Mot. 9—improperly "melds the private nondelegation doctrine with [the] Appointments Clause." *Alpine*, 121 F.4th at 1328-29. On remand, the district court explained that FINRA modified

11

its rules "to delay implementation of expulsion orders until after SEC review," which "remedies any issue that previously existed." Slip Op. 43, *Scottsdale Cap. Advisors Corp. v. FINRA*, No. 1:23-cv-01506 (D.D.C. Apr. 23, 2026) ("*Scottsdale* Slip Op."). The district court thus dismissed the private nondelegation claim because, "[a]t every turn, FINRA is subordinate to the SEC." *Id.* at 45.

Here, where Plaintiffs do not face an "expedited" proceeding or potential immediate expulsion without SEC review, the SEC's comprehensive authority over FINRA satisfies the private nondelegation doctrine.

### 2.   Plaintiffs' Other Constitutional Claims Fail Because FINRA Is Not A State Actor Or Engaged In State Action.

Plaintiffs' other constitutional claims are viable only "[i]f FINRA is treated as a state actor." Compl. ¶ 10. But the conduct of private parties generally "lies beyond the Constitution's scope." *Edmonson*, 500 U.S. at 620. A private entity can "qualify as a state actor" for constitutional purposes only in "a few limited circumstances." *Manhattan Cmty. Access Corp. v. Halleck*, 587 U.S. 802, 809 (2019). Courts have "held without exception" that FINRA, like its predecessor the NASD, "is a private entity and not a state actor." *Mohlman v. FINRA*, 2020 WL 905269, at *6 (S.D. Ohio Feb. 25, 2020) (collecting cases), *aff'd*, 977 F.3d 556 (6th Cir. 2020); *see, e.g.*, *Epstein*, 416 F. App'x at 148 (rejecting due process claim because the "'NASD is a private actor, not a state actor'"); *First Jersey Sec.*, 605 F.2d at 698 (similar). Plaintiffs' alternatively pleaded constitutional claims thus fail

12

because FINRA is not a "state actor" nor is it engaged in "[s]tate action" when it exercises its self-regulatory responsibilities. *See* Mot. 10-12.

In *Lebron v. National Railroad Passenger Corp.*, 513 U.S. 374 (1995), the Supreme Court recognized a narrow, exceptional category of nominally private corporations—there, Amtrak—that are actually "part of the Government," and therefore subject to constitutional constraints, because the corporation was "create[d]" by the government "for the furtherance of governmental objectives" and the government "retains for itself permanent authority to appoint a majority of the directors of that corporation." *Id.* at 397, 400. Here, "the question is not close" because FINRA does not possess any of these unusual characteristics. *Scottsdale* Slip Op. 38; *see also supra* at 5. Thus, "*Lebron* is clearly distinguishable" because there "is no commonality between [FINRA] and Amtrak." *Perpetual Sec., Inc. v. Tang*, 290 F.3d 132, 138 (2d Cir. 2002) (NASD). Plaintiffs do not argue otherwise. *See* Mot. 11-12.

Separately, a private entity's conduct may be considered state action if it "exercis[es] powers that are 'traditionally the exclusive prerogative of the State.'" *Blum v. Yaretsky*, 457 U.S. 991, 1005 (1982). But "[h]istorical practice, as well as the statutory scheme, does not support" the notion that FINRA's self-regulatory responsibilities are a "traditionally exclusive governmental function." *Am. Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 56 (1999). Instead, private "[s]elf-regulation

13

in the securities industry has existed for centuries." *Alpine*, 121 F.4th at 1337; *supra* at 4-5. That FINRA now exercises self-regulatory responsibilities pursuant to the Exchange Act's statutory authorization does not nullify that history or convert FINRA's private conduct into state action. *See S.F. Arts & Athletics, Inc. v. U.S. Olympic Comm.*, 483 U.S. 522, 544 (1987) ("'that a private entity performs a function which serves the public does not make its acts governmental action'") (alterations omitted).

Nor has the government "exercised coercive power" such that the challenged actions may "be deemed to be that of the State." *Blum*, 457 U.S. at 1004. The Complaint does not allege that the SEC has "coerc[ed]," *id.*, "act[ed] jointly with," *Halleck*, 587 U.S. at 809, or "'entwined'" itself with FINRA, *Brentwood Acad. v. Tenn. Secondary Sch. Athletic Ass'n*, 531 U.S. 288, 296 (2001)—either in general or with respect to the specific enforcement proceeding against Plaintiffs. While the SEC *supervises* FINRA, "the government does *not* control FINRA's enforcement proceedings." *Kim*, 698 F. Supp. 3d at 165. The requisite "nexus between the State and the challenged action of the regulated entity" is therefore missing. *Blum*, 457 U.S. at 1004; *see McGinn, Smith & Co. v. FINRA*, 786 F. Supp. 2d 139, 147 (D.D.C. 2011) (no state action where "Plaintiffs have not alleged specific facts that demonstrate coercion or significant encouragement by the SEC").

14

Plaintiffs' counterarguments do not alter this conclusion. Plaintiffs assert that "FINRA is a quasi-governmental agency" with enforcement authority "derivative of and ultimately belonging to the SEC." Mot. 11. But Plaintiffs' cited authorities simply describe the SEC's supervisory role and do not hold that the SEC's oversight changes FINRA's private activities into state action. *See Aslin v. FINRA*, 704 F.3d 475, 476 (7th Cir. 2013) (FINRA "is subject to significant SEC oversight"); *In re Series 7 Broker Qualification Exam Scoring Litig.*, 548 F.3d 110, 114 (D.C. Cir. 2008) (similar). Similarly, Plaintiffs note that the SEC can "revoke FINRA's designation" as a national securities association and that the SEC must "approve[ ] all FINRA rules." Mot. 8, 11. But these are further examples of federal oversight, and "[m]ere approval" of "the initiatives of a private party is not sufficient to justify holding the State responsible for those initiatives." *Blum*, 457 U.S. at 1004-05. Governmental oversight alone cannot turn "a private organization into a government actor, for 'that would bring under the [Constitution] much of the private sector.'" *Gold v. SEC*, 48 F.3d 987, 991 (7th Cir. 1995); *see also Halleck*, 587 U.S. at 816 (rejecting "the 'being heavily regulated makes you a state actor' theory of state action").

No case holds that FINRA is a state actor or otherwise subject to constitutional requirements—and every case addressing the issue has held to the contrary—which forecloses Plaintiffs' remaining claims.

15

### 3.     The Court Lacks Subject Matter Jurisdiction Over Plaintiffs' Seventh Amendment And Due Process Claims.

Plaintiffs' Seventh Amendment and due process claims suffer from an additional flaw:  The Court lacks subject matter jurisdiction over them.

The Exchange Act grants courts of appeals "exclusive" "jurisdiction" to review SEC orders, including those arising from FINRA disciplinary proceedings. 15 U.S.C. § 78y(a)(1); *see Scottsdale*, 844 F.3d at 419.  This grant of jurisdiction "divests district courts of their ordinary jurisdiction" under 28 U.S.C. § 1331, *Axon*, 598 U.S. at 185, and applies equally to "constitutional claims," *Elgin v. Dep't of Treasury*, 567 U.S. 1, 8 (2012).  Challenges to the constitutionality of FINRA disciplinary proceedings must therefore ordinarily follow that route:  exhaustion of FINRA's internal remedies, followed by an appeal to the SEC and then a petition for review in a U.S. Court of Appeals.  15 U.S.C. §§ 78s(d)(2), (e)(1), 78y(a)(1).

The narrow exception to this rule recognized in *Axon Enterprise v. FTC* is inapplicable to Plaintiffs' Seventh Amendment and due process claims.  *Axon* explained that "statutory schemes for agency review," like the Exchange Act, preclude district-court jurisdiction over all but a limited set of "extraordinary claims":  those alleging "'a here-and-now injury'" of being "subject[ ] to an illegitimate proceeding, led by an illegitimate decisionmaker," such as the challenges to removal restrictions for administrative law judges in *Axon*.  598 U.S.

16

at 180, 185, 191.  That inquiry requires considering the three factors identified in *Thunder Basin Coal Co. v. Reich*, 510 U.S. 200, 212, 215-16 (1994).

Although Plaintiffs invoke this narrow exception, they do not address the *Thunder Basin* factors, *see* Mot. 3, which demonstrate *Axon*'s inapplicability to Plaintiffs' Seventh Amendment and due process claims.  *First*, Plaintiffs can receive "meaningful judicial review" because, after appealing any final FINRA decision to the SEC, Plaintiffs can raise those claims in a court of appeals.  *Blankenship v. FINRA*, 2024 WL 4043442, at *2 (E.D. Pa. Sept. 4, 2024), *aff'd on other grounds*, 2026 WL 64096 (3d Cir. Jan. 8, 2026).  This is the approach the plaintiffs took in *Jarkesy*—the only Seventh Amendment precedent Plaintiffs cite.  *See SEC v. Jarkesy*, 603 U.S. 109, 118-19 (2024); Mot. 13-14.

*Second*, these claims are "not wholly collateral" to the statutory review scheme because they challenge case-specific "actions" that will be "taken" in Plaintiffs' proceeding, *Blankenship*, 2024 WL 4043442, at *3, including FINRA's application of its procedures and evidentiary rules.  Mot. 14-15.  Plaintiffs' claims are thus "inextricably intertwined" with the "administrative process," *Vape Cent. Grp. v. FDA*, 2025 WL 637416, at *8 (D.D.C. Feb. 27, 2025), unlike the "far-reaching constitutional claims" in *Axon* that challenged the agency's "structure or very existence," 598 U.S. at 185, 189.

17

*Third*, these claims are "not outside of the SEC's expertise." *Blankenship*, 2024 WL 4043442, at *3. The SEC is an expert in FINRA's procedures and "FINRA's authority to conduct hearings." *Alpine Sec. Corp. v. FINRA*, 2021 WL 4060943, at *5 (D. Utah Sept. 7, 2021). And the SEC regularly considers and resolves both Seventh Amendment and due process questions. *E.g.*, *In re John Thomas Cap. Mgmt. Grp.*, 2020 WL 5291417, at *27 (SEC Sept. 4, 2020), *vacated by Jarkesy v. SEC*, 34 F.4th 446 (5th Cir. 2022).

Accordingly, numerous decisions hold that Seventh Amendment and due process claims cannot be raised directly in district court where Congress has enacted an exclusive administrative review framework. *See*, *e.g.*, *Vape Cent. Grp.*, 2025 WL 637416, at *6 (collecting Seventh Amendment cases); *Alpine Sec. Corp. v. Nat'l Sec. Clearing Corp.*, 2025 WL 901847, at *5 (D. Utah Mar. 25, 2025) (due process). Plaintiffs identify no reason to conclude otherwise here.

### 4.    Plaintiffs' Other Constitutional Claims Fail On The Merits.

Plaintiffs' remaining constitutional claims—Counts 2 through 5—also fail on the merits.

***Appointments Clause and Separation of Powers.*** Plaintiffs' Appointments Clause and removal-based separation-of-powers claims fail because those constitutional requirements only apply to a private entity that is "part of the government" under the *Lebron* test, which Plaintiffs do not even attempt to satisfy.

18

*See supra* at 13; *Scottsdale* Slip Op. 32; OLC, The Test for Determining "Officer" Status Under the Appointments Clause 6-7 (Jan. 16, 2025), https://www.justice.gov/olc/media/1385406/dl; *Free Enter. Fund v. PCAOB*, 561 U.S. 477, 483 (2010) (removal power limited to "executive officers").  Moreover, these requirements apply only to "Officers of the United States" holding offices "established by Law."  U.S. Const. art. II, § 2, cl. 2.  Because the offices of FINRA hearing officers are established by FINRA rules—not by statute—they are not "established by law."  *Trump v. United States*, 603 U.S. 593, 645 (2024) (Thomas, J., concurring).

**Seventh Amendment.**  FINRA disciplinary proceedings do not implicate the Seventh Amendment right to a jury trial in federal court.  Congress may authorize non-Article III bodies to decide "actions that were 'not suits at common law or in the nature of such suits.'"  *Jarkesy*, 603 U.S. at 137-38 (alterations omitted); *see, e.g.*, *Atlas Roofing Co. v. OSHRC*, 430 U.S. 442, 449-61 (1977) (workplace-safety laws).  The securities industry's self-regulatory procedures—which have historically provided for private adjudication of broker conduct—are not "the stuff of the traditional actions at common law."  *Jarkesy*, 603 U.S. at 128.  Nor do the charges in FINRA's disciplinary complaint against Plaintiffs "borrow [their] cause of action from the common law."  *Id.* at 136.  The mere fact that the rules include the term

19

"reasonable" does not make those securities-industry standards of conduct analogous to common-law negligence claims.  Mot. 13-14.

**Due Process.**    Plaintiffs' claim (at 14) that their FINRA adjudicator is unconstitutionally biased contravenes Supreme Court precedent rejecting "[t]he contention that the combination of investigative and adjudicative functions necessarily creates an unconstitutional risk of bias in administrative adjudication." *Withrow v. Larkin*, 421 U.S. 35, 47 (1975).  When a body combines these functions, a court "must start . . . from the presumption" that the adjudicator is neutral, which a challenger must rebut "by a showing of conflict of interest."   *Schweiker v. McClure*, 456 U.S. 188, 195 (1982).  Plaintiffs have alleged no such conflict.

Plaintiffs also challenge the alleged lack of meaningful discovery and the inapplicability of the Federal Rules of Evidence.  Mot. 14-15.  But FINRA's procedures extend well beyond any applicable constitutional floor and include procedures that the SEC itself has deemed "fair."  15 U.S.C. § 78o-3(b)(8); *see supra* at 6.  Those procedures fully comply with the due process requirement of an "opportunity to be heard 'at a meaningful time and in a meaningful manner.'" *Mathews v. Eldridge*, 424 U.S. 319, 333 (1976); *see Cody v. SEC*, 693 F.3d 251, 257 (1st Cir. 2012) (rejecting due process challenge to FINRA procedures, without deciding "pointless" state-action question).

20

**B.      The Remaining Factors Also Weigh Against An Injunction.**

Without a likelihood of success on the merits, Plaintiffs' motion "necessarily" must be denied. *Am. Exp. Travel Related Servs., Inc. v. Sidamon-Eristoff*, 669 F.3d 359, 366 (3d Cir. 2012). Examination of the other factors also requires denial.

**1.      Plaintiffs Have Not Shown Irreparable Harm.**

Plaintiffs' own conduct undercuts their claim of urgency and irreparability. Plaintiffs delayed bringing this suit until nearly three months after FINRA initiated the challenged disciplinary proceeding and after Boustead and Sutter brought a *different* lawsuit related to the same underlying FINRA investigation. The preliminary-injunction analysis considers "how urgently a party has pursued their claims," *Def. Distrib. v. Att'y Gen. of N.J.*, 972 F.3d 193, 200 (3d Cir. 2020), and "a delay of just weeks or months precludes a showing of irreparable harm," *Tourmaline Mgmt. LLC v. Tourmaline Cap. Partners, LLC*, 2025 WL 2338069, at *2 (D. Del. Aug. 13, 2025) (collecting cases); *Kim*, 698 F. Supp. 3d at 171 (38-day delay). Plaintiffs also admit that they incurred some of their claimed business and financial harms "*before* . . . FINRA filed the [Disciplinary] Complaint," Mot. at 16 (emphasis added), severing any connection to their request to enjoin that proceeding.

Boustead and Sutter also allege that their "'very existence' is threatened" and that they risk "being 'forced out of business'" by the outcome of the disciplinary proceeding. Mot. 17. But any FINRA "sanction" will not be imposed for "months."

21

*Smith v. FINRA, Inc.*, 2025 WL 985447, at *3 (D.D.C. Apr. 2, 2025) (declining to enjoin FINRA proceeding for lack of irreparable harm). Plaintiffs requested a late February 2027 hearing date, and FINRA Enforcement agreed. Fauci Decl. ¶ 8. Thereafter, it is likely several months will pass before a decision is issued. Fauci Decl. ¶ 12. If Plaintiffs appeal that decision within FINRA, any sanctions other than a permanent cease-and-desist order would be automatically stayed. FINRA Rule 9311. A timely appeal to the SEC would further stay the effectiveness of any sanction, other than a bar. FINRA Rule 9370. Plaintiffs thus have not shown any "presently existing actual threat" to their businesses. *Tourmaline Mgmt.*, 2025 WL 2338069, at *2.

Relying on Judge Walker's partial dissent in *Alpine* and a recent Fifth Circuit decision, Plaintiffs also argue that allegations of a "here-and-now injury" sufficient to create jurisdiction under *Axon* necessarily establish irreparable harm. Mot. 17-18 (citing *Space Exploration Techs. Corp. v. NLRB*, 151 F.4th 761, 779-80 (5th Cir. 2025)). But, as the *Alpine* majority and other courts have held, it "is incorrect" that *Axon*, which addressed a statutory jurisdictional question, "automatically mandates a finding of irreparable harm." 121 F.4th at 1335; *see also SpaceX*, 151 F.4th at 785-86 (Wiener, J., concurring and dissenting) (collecting cases and objecting to the majority's "impermissibly extend[ing] *Axon*" contrary to Second, Sixth, and Tenth Circuit precedent).

22

Plaintiffs' irreparable-harm arguments therefore fail.

### 2.     The Equities And Public Interest Favor FINRA.

The balance of equities and public-interest considerations further weigh against injunctive relief, and "would outweigh even a successful showing on the other two factors." *Kim*, 698 F. Supp. 3d at 172; *see also Fres-co Sys. USA, Inc. v. Hawkins*, 690 F. App'x 72, 75 (3d Cir. 2017) (similar). A preliminary injunction would prevent FINRA from enforcing the Exchange Act and its SEC-approved rules, which would disrupt "FINRA's regulatory mission," "harm investors," and "interfere with the 'efficiency, reliability, and safety' of U.S. capital markets." *Kim*, 698 F. Supp. 3d at 170-71. It would also encourage "copy-cat suit[s]"—against FINRA and dozens of similarly structured self-regulatory organizations. *Id*. at 170.

Plaintiffs' only contrary argument is that the public has an interest in "prevent[ing]" "unlawful agency action." Mot. 18. But this merely assumes the validity of Plaintiffs' claims, which are uniformly meritless.

## VI.   CONCLUSION

The Court should deny Plaintiffs' motion.

OF COUNSEL:

Amir C. Tayrani
Alex Gesch
GIBSON, DUNN & CRUTCHER LLP
1700 M Street, N.W.
Washington, D.C.  20036
T: (202) 887-3692
atayrani@gibsondunn.com
agesch@gibsondunn.com

James R. Figliulo
Michael K. Desmond
SMITH, GAMBRELL & RUSSELL, LLP
155 N. Wacker Drive, Suite 3000
Chicago, Illinois  60606
T: (312) 360-6000
jfigliulo@sgrlaw.com
mdesmond@sgrlaw.com

Dated:  April 30, 2026

/s/ *Raymond J. DiCamillo*
Raymond J. DiCamillo (#3188)
Chad M. Shandler (#3796)
Christine Dealy Haynes (#4697)
RICHARDS, LAYTON & FINGER, P.A.
920 North King Street
Wilmington, Delaware  19801
T: (302) 651-7700
dicamillo@rlf.com
shandler@rlf.com
haynes@rlf.com

*Attorneys for Defendant Financial Industry Regulatory Authority, Inc.*

24

## CERTIFICATE OF COMPLIANCE

This brief complies with this Court's Standing Order Regarding Briefing In All Cases because the brief contains 4,998 words, as determined by the word-count function of Microsoft Word, and it uses 14-point Times New Roman font.

Dated:        April 30, 2026                    */s/ Raymond J. DiCamillo*
                                                 Raymond J. DiCamillo (#3188)

25