**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| Boustead Securities, LLC, Sutter Securities, Inc., and Keith C. Moore, | ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | C.A. No. 26-0360-CFC |
| | ) | |
| Financial Industry Regulatory Authority, Inc., | ) ) | |
| Defendant. | ) ) | |

**OPENING BRIEF IN SUPPORT OF
<u>DEFENDANT'S MOTION TO TRANSFER</u>**

OF COUNSEL:

Amir C. Tayrani
Alex Gesch
GIBSON, DUNN & CRUTCHER LLP
1700 M Street, N.W.
Washington, D.C.  20036
T: (202) 887-3692
atayrani@gibsondunn.com
agesch@gibsondunn.com

James R. Figliulo
Michael K. Desmond
SMITH, GAMBRELL & RUSSELL, LLP
155 N. Wacker Drive, Suite 3000
Chicago, Illinois  60606
T: (312) 360-6000
jfigliulo@sgrlaw.com
mdesmond@sgrlaw.com

Dated:  April 30, 2026

Raymond J. DiCamillo (#3188)
Chad M. Shandler (#3796)
Christine D. Haynes (#4697)
RICHARDS, LAYTON & FINGER, P.A.
920 North King Street
Wilmington, Delaware  19801
T: (302) 651-7700
dicamillo@rlf.com
shandler@rlf.com
haynes@rlf.com

*Attorneys for Defendant Financial
Industry Regulatory Authority, Inc.*

**TABLE OF CONTENTS**

**Page**

I.    NATURE AND STAGE OF THE PROCEEDINGS .......................................1

II.   SUMMARY OF THE ARGUMENT................................................2

III.  STATEMENT OF FACTS ........................................................4

    A.    FINRA's Private Self-Regulation Of Broker-Dealer Members
       And Associated Persons ...........................................4

    B.    The Companies' Northern District Of Illinois Lawsuit
       Challenging FINRA's Regulatory Oversight ........................5

    C.    Plaintiffs' Suit In This Court Based On The Same Self-
       Regulatory Conduct................................................8

IV.   LEGAL STANDARD................................................................9

V.    ARGUMENT........................................................................10

    A.    This Case Could Have Been Brought In The Northern District
       Of Illinois ...........................................................10

    B.    The Convenience Of The Parties And The Interest Of Justice
       Strongly Support A Transfer To The Northern District Of Illinois .....13

       1.    The Factual Overlap Between This Litigation And The
          Northern District Of Illinois Action Overwhelmingly
          Counsels In Favor Of Transfer....................................13

       2.    The Remaining *Jumara* Factors Also Collectively Favor
          Transfer ...........................................................18

VI.   CONCLUSION......................................................................21

i

**TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Allen Med. Sys., Inc. v. Mizuho Orthopedic Sys., Inc.*,
2022 WL 1046258 (D. Del. Apr. 7, 2022)........................................................20

*Alpine Sec. Corp. v. FINRA*,
121 F.4th 1314 (D.C. Cir. 2024)........................................................................5

*In re Amendt*,
169 F. App'x 93 (3d Cir. 2006) ..............................................................10, 13, 15

*Blackbird Tech LLC v. E.L.F. Beauty, Inc.*,
2020 WL 2113528 (D. Del. May 4, 2020) ........................................................21

*Cont'l Grain Co. v. Barge FBL-585*,
364 U.S. 19 (1960)..............................................................................................17

*Costa v. Ramaiah*,
689 F. Supp. 3d 553 (N.D. Ill. 2023)..................................................................12

*Duhaney v. Att'y Gen.*,
621 F.3d 340 (3d Cir. 2010) ...............................................................................16

*EEOC v. Univ. of Penn.*,
850 F.2d 969 (3d Cir. 1988) ...............................................................................18

*Firmani v. Clarke*,
325 F. Supp. 689 (D. Del. 1971)..........................................................................14

*Ford Motor Co. v. Mont. Eighth Judicial Dist. Ct.*,
592 U.S. 351 (2021)......................................................................................11, 12

*In re: Howmedica Osteonics Corp.*,
867 F.3d 390 (3d Cir. 2017) ..........................................................................11, 16

*Inst. of Env't Health Inc. v. Nat'l Beef Packing Co.*,
2024 WL 2208948 (D. Del. May 16, 2024) ........................................................9

*Jackson v. BP Expl. & Prod. Inc.*,
2025 WL 2337995 (D. Del. Aug. 13, 2025)..................................................19, 21

*Joseph v. Buffalo News, Inc.*,
  2017 WL 3314006 (D. Del. Aug. 3, 2017)........................................................21

*Jumara v. State Farm Ins. Co.*,
  55 F.3d 873 (3d Cir. 1995) .............................................................3, 10, 13, 18

*Montana v. United States*,
  440 U.S. 147 (1979)..........................................................................................17

*Nottenkamper v. Modany*,
  2015 WL 1951571 (D. Del. Apr. 29, 2015) .................................................14, 16

*Pritchett v. BP Expl. & Prod. Inc.*,
  2024 WL 3742304 (D. Del. Aug. 9, 2024).........................................................9

*Ross v. Institutional Longevity Assets LLC*,
  2013 WL 5299171 (D. Del. Sept. 20, 2013).....................................................13

*Saad v. SEC*,
  873 F.3d 297 (D.C. Cir. 2017).............................................................................5

*Schoeps v. Sompo Holdings, Inc.*,
  160 F.4th 815 (7th Cir. 2025) ...........................................................................11

*Swirsky v. NASD*,
  124 F.3d 59 (1st Cir. 1997)..................................................................................4

*Tse v. Ventana Med. Sys., Inc.*,
  1997 WL 811566 (D. Del. Nov. 25, 1997).........................................................11

*Van Dusen v. Barrack*,
  376 U.S. 612 (1964)...........................................................................................14

*Weisler v. Barrows*,
  2006 WL 3201882 (D. Del. Nov. 6, 2006).........................................................14

**Statutes**

15 U.S.C. § 78o(a)(1)..................................................................................................5

15 U.S.C. § 78o(b)(1)..................................................................................................5

15 U.S.C. § 78o(b)(8)..................................................................................................5

iii

15 U.S.C. § 78o(b)(9)................................................................................5

15 U.S.C. § 78o-3(b)(2) ...........................................................................5

15 U.S.C. § 78o-3(b)(7) ...........................................................................5

15 U.S.C. § 78o-3(b)(8) ...........................................................................5

28 U.S.C. § 1391(c)(2)............................................................................11

28 U.S.C. § 1404(a) ................................................... 1, 2, 3, 9, 10, 11, 12, 14, 16, 17

**Rules**

Fed. R. Civ. Pro. 4(k)(1)(A)....................................................................11

**Other Authorities**

*Admin. Office of U.S. Courts, Table N/A—U.S. District Courts—*
*Combined Civil and Criminal Federal Court Management*
*Statistics* (Dec. 31, 2025)....................................................................20

## I.      NATURE AND STAGE OF THE PROCEEDINGS

Defendant Financial Industry Regulatory Authority, Inc. ("FINRA") respectfully moves under 28 U.S.C. § 1404(a) to transfer the venue of this action, brought by Plaintiffs Boustead Securities, LLC ("Boustead"), Sutter Securities, Inc. ("Sutter"), and Keith C. Moore ("Moore"), to the U.S. District Court for the Northern District of Illinois, where Boustead and Sutter have a pending suit against FINRA related to the same underlying FINRA investigation.

Boustead and Sutter (collectively, the "Companies") are California-based FINRA member firms that engage in investment banking, underwriting, and financial advisory services; Moore is the former CEO of both Companies.  D.I. 1 ¶¶ 12-14, 54 ("Del. Compl.").  On April 1, 2026, Plaintiffs filed this suit against FINRA, asserting constitutional claims arising from a January 15, 2026 disciplinary complaint filed by FINRA's Department of Enforcement ("Enforcement") against Plaintiffs as well as FINRA's investigation preceding that complaint.  *Id.* ¶¶ 1, 52-55.  Plaintiffs also filed a contemporaneous motion for a preliminary injunction. D.I. 5, 6.  Nearly three months earlier, on the same day FINRA Enforcement filed its disciplinary complaint, the Companies filed a separate, still-pending suit against FINRA in the U.S. District Court for the Northern District of Illinois, asserting state-law claims arising from the same FINRA investigation that culminated in the disciplinary complaint against Plaintiffs.  *See* Complaint, *Boustead Sec., LLC v.*

*FINRA*, No. 1:26-cv-00490 (N.D. Ill. Jan. 15, 2026), D.I. 1 ("Ill. Original Compl.").

On April 22, 2026, the Companies filed an amended complaint in that case, asserting

the same claims against FINRA. *See* Amended Complaint, *Boustead Sec.*, No. 1:26-

cv-00490 (N.D. Ill. Apr. 22, 2026), D.I. 31 ("Ill. Am. Compl.").

The existence of pending, related litigation—brought by the same two

Companies against the same Defendant and pertaining to the same underlying

FINRA investigation—warrants transfer of this case to the Northern District of

Illinois to avoid duplicative litigation, the unnecessary expenditure of judicial and

party resources on factually overlapping suits, the potential for inconsistent rulings,

and serious questions of claim and issue preclusion attributable to the Companies'

claim splitting.

## II.    SUMMARY OF THE ARGUMENT

1. The Court should transfer this case to the Northern District of Illinois. This

Court has the authority to transfer "any civil action to any other district or division

where it may have been brought" for "the convenience of parties" and "in the interest

of justice." 28 U.S.C. § 1404(a). This case could have been brought in the Northern

District of Illinois, and it would be convenient and just to transfer the case there.

2. The Companies are already challenging FINRA's conduct in connection

with the investigation of their regulatory compliance in a suit pending in the

Northern District of Illinois. That litigation asserts state-law tort claims based on

actions FINRA allegedly took in performing its self-regulatory investigatory duties, which culminated in FINRA Enforcement's filing of a disciplinary complaint. Before this Court, Plaintiffs allege that the same FINRA investigation and disciplinary proceeding violate the U.S. Constitution. Accordingly, both pending lawsuits challenge the same self-regulatory conduct.

3.    Because an Illinois-based FINRA official allegedly directed the investigation that culminated in the FINRA disciplinary proceeding against Plaintiffs, personal jurisdiction over FINRA and venue are proper in the Northern District of Illinois. Plaintiffs therefore could have brought this case against FINRA in that district.

4.    The factors governing this Court's exercise of its Section 1404(a) discretion strongly support transferring this case to the Northern District of Illinois based on the convenience of the parties and the interests of justice. *See Jumara v. State Farm Ins. Co.*, 55 F.3d 873 (3d Cir. 1995). In particular, "practical considerations" strongly support a transfer given the ongoing, factually overlapping litigation in the Northern District of Illinois. *Id.* at 879. The adjudication by two separate courts of disputes relating to the same underlying facts would inevitably produce inefficiencies for the courts and the parties, risk inconsistent rulings, and generate complicated questions of claim and issue preclusion.

5. The other *Jumara* factors, on balance, also strongly support transfer. FINRA prefers that this case be litigated in the Northern District of Illinois where the first-filed case is pending, this case arose outside of Delaware, and the facts have greater connection to Illinois than to Delaware. All of the other *Jumara* factors besides Plaintiffs' choice of forum and, arguably, the relative levels of court congestion are neutral. And Plaintiffs' choice of forum is outweighed by other considerations—particularly where the Companies have already chosen to litigate claims against FINRA in the Northern District of Illinois related to the same underlying events.

### III.   STATEMENT OF FACTS

#### A.   FINRA's Private Self-Regulation Of Broker-Dealer Members And Associated Persons

FINRA—a private, not-for-profit Delaware corporation headquartered in the District of Columbia—exercises frontline regulatory authority over its broker-dealer members and individuals associated with those member firms. It does so subject to the requirements of the Securities Exchange Act of 1934 (the "Exchange Act"), which established a "comprehensive system of federal regulation of the securities industry." *Swirsky v. NASD*, 124 F.3d 59, 61 (1st Cir. 1997). Under that congressional framework, private self-regulatory organizations such as FINRA exercise a primary supervisory role over their members and, in turn, are subject to

comprehensive oversight by the Securities and Exchange Commission ("SEC").  *See Saad v. SEC*, 873 F.3d 297, 299-300 (D.C. Cir. 2017).

The Exchange Act generally requires broker-dealers to join a registered national securities association or to associate themselves with a member.  *See* 15 U.S.C. § 78o(a)(1), (b)(1), (b)(8)-(9).  FINRA is currently the only registered national securities association.  *See Alpine Sec. Corp. v. FINRA*, 121 F.4th 1314, 1321 (D.C. Cir. 2024).  In that capacity, FINRA "enforce[s] compliance" with the Exchange Act and FINRA's rules, and it "appropriately discipline[s]" its members and associated persons for violations under SEC-approved rules that "provide a fair procedure."  15 U.S.C. § 78o-3(b)(2), (7), (8).

**B.    The Companies' Northern District Of Illinois Lawsuit Challenging FINRA's Regulatory Oversight**

In 2022, FINRA Enforcement began an investigation of the Companies' compliance with SEC and FINRA rules in connection with the Companies' jointly conducted investment banking businesses.  Ill. Am. Compl. ¶ 24.  The Companies allege that the investigation "was primarily handled" by Enforcement staff from FINRA's Chicago, Illinois and Rockville, Maryland offices.  *Id.* ¶ 25.  After a lengthy investigation and unsuccessful settlement negotiations, *id.* ¶¶ 26-28, Enforcement filed a disciplinary complaint in FINRA's Office of Hearing Officers against Plaintiffs on January 15, 2026.  *See* Ex. A to Mot. for Preliminary Injunction, D.I. 6-1.  The disciplinary complaint alleges violations of anti-money laundering,

supervision, and recordkeeping requirements imposed by FINRA and SEC rules and by Section 17(a) of the Exchange Act. *Id.*

On the same day that Enforcement filed the disciplinary complaint, the Companies sued FINRA in the Northern District of Illinois, alleging that FINRA violated state law by sharing information with two other self-regulatory organizations, The Nasdaq Stock Market ("Nasdaq") and the New York Stock Exchange ("NYSE"), about FINRA's investigation of the Companies. Ill. Original Compl. ¶ 10. According to the amended complaint, which challenges the same conduct and asserts the same claims, FINRA's communications with Nasdaq and NYSE regarding its investigation caused the securities exchanges to deny the Companies' listing and membership applications and cost the Companies various business opportunities. Ill. Am. Compl. ¶¶ 4, 7.

For example, the Companies allege that Nasdaq advised Boustead that Nasdaq would not approve an initial public offering with Boustead as underwriter because of a FINRA "regulatory matter" and speculate that a Chicago-based FINRA employee may have communicated with Nasdaq about FINRA's ongoing investigation of Plaintiffs. Ill. Am. Compl. ¶¶ 33, 35, 37, 39, 41-42. The Companies further allege that, when Sutter submitted a limited underwriting membership application to NYSE, NYSE recommended that Sutter withdraw its application based on NYSE's "review of the firm's open regulatory matters," including the

6

investigation that culminated in the disciplinary complaint, and communications with "the FINRA Enforcement team handling the specific FINRA matter." *Id.* ¶¶ 86, 88, 90-91; *see also id.* ¶¶ 53-54, 116 (alleging that FINRA—in a call initiated from its Chicago office—informed the Companies that it intended to object to their applications to become limited underwriting members of Nasdaq).

The Companies allege that FINRA is subject to personal jurisdiction in the Northern District of Illinois because it "maintains offices and conducts substantial, continuous business in th[e] District, and because the causes of action arise from FINRA's commission of tortious acts within the State of Illinois."  Ill. Am. Compl. ¶ 14.  And they allege that venue is proper in the Northern District of Illinois because "FINRA transacts business in th[at] judicial district, and a substantial part of the events giving rise to the claims occurred [there], including communications and decisions directed by FINRA personnel located in Chicago, Illinois."  *Id.* ¶ 18.

Based on these allegations, the Companies seek a declaration that FINRA "exceeded its delegated authority" and damages for various state-law torts.  Ill. Am. Compl. ¶¶ 97-128.  FINRA filed a motion to dismiss that did not contest personal jurisdiction or venue.  *Boustead Sec.*, No. 1:26-cv-00490 (N.D. Ill. Apr. 1, 2026), D.I. 28.  The motion was mooted by the Companies' subsequently filed amended complaint.  *See* Ill. Am. Compl.

7

**C.      Plaintiffs' Suit In This Court Based On The Same Self-Regulatory Conduct**

The same day that FINRA filed its motion to dismiss in the Northern District of Illinois, Plaintiffs filed this second suit against FINRA, asserting federal constitutional claims challenging the same FINRA investigation at issue in the Northern District of Illinois case as well as the FINRA disciplinary proceeding that arose from that investigation. *See* Del. Compl. ¶ 1. Plaintiffs allege that FINRA "unconstitutionally exercises executive authority when it investigates, prosecutes, and adjudicates alleged violations of federal securities laws and FINRA rules, constituting an unconstitutional delegation of federal power to a private entity." *Id.* ¶ 63. As in the Northern District of Illinois litigation, Plaintiffs allege here that their "market access was harmed" because they "were prohibited from engaging in transactions and commercial relationships essential to their business." *Id.* ¶¶ 3, 19. And, also as alleged in the Northern District of Illinois, Plaintiffs allege here that, "before FINRA even filed its Complaint in the Enforcement Proceeding, . . . FINRA contacted [Nasdaq] and instructed it to not approve any initial public offerings where Boustead was an underwriter" and that FINRA "interfered with the Companies' limited membership applications submitted to Nasdaq and the New York Stock Exchange." *Id.* ¶ 54.

## IV.   LEGAL STANDARD

"For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought."  28 U.S.C. § 1404(a).  To determine whether a transfer is proper, this Court first determines "whether the action could have been brought in the proposed transferee forum" and, second, whether the convenience of parties and witnesses and the interest of justice favor a transfer.  *Inst. of Env't Health Inc. v. Nat'l Beef Packing Co.*, 2024 WL 2208948, at *3 (D. Del. May 16, 2024).  For the second step, "[a]lthough there is no definitive formula or list of the factors to consider," this Court considers twelve specific interests articulated in *Jumara*, 55 F.3d at 879.  *See Pritchett v. BP Expl. & Prod. Inc.*, 2024 WL 3742304, at *2 (D. Del. Aug. 9, 2024) (Connolly, C.J.).  These factors are:

> [1] plaintiff's forum preference as manifested in the original choice; [2] the defendant's preference; [3] whether the claim arose elsewhere; [4] the convenience of the parties as indicated by their relative physical and financial condition; [5] the convenience of the witnesses—but only to the extent that the witnesses may actually be unavailable for trial in one of the fora; and [6] the location of books and records . . . .  [7] the enforceability of the judgment; [8] practical considerations that could make the trial easy, expeditious, or inexpensive; [9] the relative administrative difficulty in the two fora resulting from court congestion; [10] the local interest in deciding local controversies at home; [11] the public policies of the fora; and [12] the familiarity of the trial judge with the applicable state law in diversity cases.

*Id.* (brackets in original; quotation marks omitted) (quoting *Jumara*, 55 F.3d at 879-80).

Although the moving party bears the burden of establishing the propriety of transfer, this Court has "broad discretion to determine, on an individualized, case-by-case basis, whether convenience and fairness considerations weigh in favor of transfer." *Jumara*, 55 F.3d at 879, 883.

## V.   ARGUMENT

Plaintiffs could have brought this case in the Northern District of Illinois, and the convenience of the parties and the interest of justice favor transfer. "Here, the most important factor is the avoidance of duplicative litigation." *In re Amendt*, 169 F. App'x 93, 96 (3d Cir. 2006). The Companies intentionally have split their claims between two separate cases challenging the *same* FINRA investigatory conduct. Litigating those two related cases in separate venues would waste the parties' and courts' resources and could lead to conflicting judicial rulings and needless litigation over claim and issue preclusion. Those considerations, standing alone, are sufficient to justify a transfer here, and the balance of the remaining *Jumara* factors further strongly counsels in favor of transfer.

### A.   This Case Could Have Been Brought In The Northern District Of Illinois.

The first step of the Section 1404(a) analysis supports transfer because this case could have been brought in the Northern District of Illinois for the same reason that the Companies were able to file their related initial lawsuit there. By the Companies' own account, FINRA's allegedly unlawful investigatory actions arose

10

out of "communications and decisions directed by FINRA personnel located in Chicago, Illinois."  Ill. Am. Compl. ¶ 18.[1]

"A district court must have both personal jurisdiction over the parties and venue to hear a case."  *Tse v. Ventana Med. Sys., Inc.*, 1997 WL 811566, at *4 (D. Del. Nov. 25, 1997).  Here, that question collapses into a single inquiry because venue is proper in a suit against a corporate defendant "in any judicial district in which such defendant is subject to the court's personal jurisdiction."  28 U.S.C. § 1391(c)(2).

The Northern District of Illinois would have had personal jurisdiction over FINRA in this case as long as Plaintiffs' "claims . . . 'arise out of or relate to the defendant's contacts' with the forum."  *Ford Motor Co. v. Mont. Eighth Judicial Dist. Ct.*, 592 U.S. 351, 359 (2021).[2]  That standard is met here because, as detailed in the Northern District of Illinois Complaint, the Companies allege that a Chicago-based FINRA Enforcement employee played a critical role in FINRA's investigation

---

[1]  Although no federal court currently has subject-matter jurisdiction over several of Plaintiffs' unexhausted claims, *see* Opp. to Prelim. Inj. Mot. at 16-18, this Court may "suspend concerns" about "subject-matter jurisdiction" when considering a § 1404(a) motion, *In re: Howmedica Osteonics Corp.*, 867 F.3d 390, 404 n.8 (3d Cir. 2017).

[2]  The Northern District of Illinois' authority to exercise personal jurisdiction in this lawsuit would be the same as an Illinois state court's jurisdiction.  *See* Fed. R. Civ. Pro. 4(k)(1)(A).  An Illinois court could likely exercise personal jurisdiction in any case where jurisdiction is consistent with the federal Constitution.  *See Schoeps v. Sompo Holdings, Inc.*, 160 F.4th 815, 826 & n.13 (7th Cir. 2025).

11

that culminated in the FINRA disciplinary complaint against the Companies. That employee allegedly "directed" investigatory "communications and decisions" and was purportedly among the FINRA personnel who represented to Nasdaq and NYSE that the Companies were subject to a FINRA "regulatory matter," resulting in lost business opportunities and the denial of the Companies' Nasdaq and NYSE limited underwriting applications. *See, e.g.*, Ill. Am. Compl. ¶¶ 18, 41, 79, 91; *see also* Del. Compl. ¶ 54 (alleging similar conduct by FINRA).

Because Plaintiffs are expressly challenging the constitutionality of FINRA's Chicago-directed "investigat[ion]" of them, as well as the disciplinary proceeding that arose from that investigation, Del. Compl. ¶ 63, their claims "arise out of or relate to" FINRA's "contacts with" Illinois. *Ford Motor Co.*, 592 U.S. at 359. That means that FINRA would be subject to specific personal jurisdiction in Illinois in this case and that venue would be proper in the Northern District of Illinois for the same reasons as the first-filed case. *See Costa v. Ramaiah*, 689 F. Supp. 3d 553, 571 (N.D. Ill. 2023) (finding prima facie case of specific personal jurisdiction in Section 1983 case where Indiana-based investigators took investigatory steps in Illinois).

The threshold requirements for a Section 1404(a) transfer are therefore met.

12

**B.  The Convenience Of The Parties And The Interest Of Justice Strongly Support A Transfer To The Northern District Of Illinois.**

The *Jumara* factors that this Court applies in assessing the convenience of the parties, witnesses, and the interest of justice point decisively in favor of transfer.[3]

**1.  The Factual Overlap Between This Litigation And The Northern District Of Illinois Action Overwhelmingly Counsels In Favor Of Transfer.**

The factors that the Third Circuit articulated in *Jumara* for determining whether convenience and justice support a transfer are not a "definitive formula" or entitled to equal weight in any given case. 55 F.3d at 879. Courts must instead consider on "an individualized, case-by-case basis, whether convenience and fairness considerations weigh in favor of transfer." *Id.* at 883. Here, the eighth *Jumara* factor—"practical considerations that could make the trial easy, expeditious, or inexpensive"—carries particular force. *Id.* at 879. Litigating this case here while the Companies' related suit proceeds in the Northern District of Illinois would generate "duplicative litigation" and "waste judicial resources," *In re Amendt*, 169 F. App'x at 96—which is a compelling reason to transfer this case. *See also*, *e.g.*, *Ross v. Institutional Longevity Assets LLC*, 2013 WL 5299171, at *13-14 (D. Del. Sept. 20, 2013) (considering the existence of two "closely related" actions under the eighth *Jumara* factor).

---

[3]  FINRA does not anticipate that either case will reach trial and therefore focuses on the convenience of the parties, rather than witnesses.

13

"Where related lawsuits exist, 'it is in the interests of justice to permit suits involving the same parties and issues to proceed before one court.'" *Weisler v. Barrows*, 2006 WL 3201882, at *3 (D. Del. Nov. 6, 2006). "If possible, duplicative litigation of similar issues in separate fora should be avoided." *Firmani v. Clarke*, 325 F. Supp. 689, 693 (D. Del. 1971). Indeed, "prevent[ing] the waste 'of time, energy and money'" and "'protect[ing] litigants, witnesses and the public against unnecessary inconvenience and expense'" is the primary purpose of Section 1404(a). *Van Dusen v. Barrack*, 376 U.S. 612, 616 (1964). Accordingly, when considering the "practical considerations" *Jumara* factor, courts place substantial weight on the importance of trying related actions "within the same district, in front of the same judge, minimizing the potential for repetitive litigation and inconsistent judgments." *Nottenkamper v. Modany*, 2015 WL 1951571, at *4 (D. Del. Apr. 29, 2015).

These principles strongly favor transfer. The complaints in both cases challenge the same FINRA investigation into whether Plaintiffs violated anti-money laundering, supervision, and recordkeeping requirements. In the Northern District of Illinois, the Companies claim that FINRA violated state tort law by providing information about the investigation to Nasdaq and NYSE, which led the exchanges to deny the Companies' listing and membership applications. Ill. Am. Compl. ¶¶ 33, 90. Here, Plaintiffs are alleging the same FINRA "investigat[ion] . . . constitut[es] an unconstitutional delegation of federal power to a private entity," Del. Compl.

14

¶ 63, and that the resulting disciplinary proceeding violates multiple other constitutional provisions, *see id.* ¶¶ 69-93.  Both cases involve allegations that FINRA Enforcement personnel "communicated to exchanges, issuers, and others" that Plaintiffs were facing an "open [FINRA] regulatory matter."  *Id.* ¶ 53; *see* Ill. Am. Compl. ¶¶ 106, 113.  And both cases likewise involve allegations that those alleged communications "disqualified [Plaintiffs] from participating in the securities industry," Del. Compl. ¶ 53, and caused Nasdaq and NYSE to "deny [the Companies] access to underwriting and listing opportunities, *id.* ¶ 55; *see also*, *e.g.*, Ill. Am. Compl. ¶ 7 ("The Companies lost opportunities to serve as the sole and exclusive lead underwriter in their IPO engagements and other offerings.").

Litigating these factually related challenges to the same FINRA investigation in two separate venues would inevitably introduce inefficiencies for the parties and judicial system.  *See In re Amendt*, 169 F. App'x at 96 ("Adjudicating almost identical issues in separate fora would waste judicial resources.").  Plaintiffs recognized that litigating on multiple fronts is unfair and inefficient in their recently filed motion asking FINRA's hearing officer to stay the FINRA disciplinary proceeding pending the outcome of this case because forcing a party to "litigate on two fronts simultaneously imposes an asymmetrical burden that undermines the fairness of *both* proceedings by splitting [the party's] time and efforts between the two." *See* Fauci Decl. in Supp. of Prelim. Inj. Opp. Ex. A, at 5.  But those are exactly

15

the circumstances Plaintiffs seek to impose upon FINRA and two federal district courts as a result of the Companies' duplicative filings in the Northern District of Illinois and this Court.[4]

Moreover, parallel federal cases could produce inconsistent rulings on overlapping issues. *See Nottenkamper*, 2015 WL 1951571, at *4 (transfer to district with pending related lawsuits "minimiz[es] the potential for repetitive litigation and inconsistent judgments"). Proceeding in separate venues could also generate complicated questions of claim and issue preclusion. The doctrine of claim preclusion prevents "a party from initiating a second suit against the same adversary based on the same 'cause of action' as the first suit." *Duhaney v. Att'y Gen.*, 621 F.3d 340, 347 (3d Cir. 2010). The doctrine applies not only to "'claims that were brought'" but also to "'claims that could have been brought.'" *Id.* Determining whether two claims involve the same "cause of action" turns on the "essential similarity of the underlying events giving rise to the various legal claims"—the focus is on "whether the acts complained of were the same, whether the material facts alleged in each suit were the same, and whether the witnesses and documentation

---

[4] Plaintiff Moore's presence here—but not in the Northern District of Illinois case—does not change the analysis given "judicial economy considerations, which support 'having the two actions in the same district (through transfer)' when the two cases are in different courts but involve 'the same *or similar* issues and parties.'" *In re Howmedica*, 867 F.3d at 402 & n.7 (emphasis added; citation omitted) (recognizing "judicial economy considerations" as a "distinct, cognizable public interest" for Section 1404(a) purposes).

16

required to prove such allegations were the same," not on the similarity of the legal theories. *Id.* at 348 (quotation marks omitted). This ensures that plaintiffs "'present in one suit all the claims for relief that [they] may have arising out of the same transaction or occurrence.'" *Id.*

Here, once either case reaches final judgment, there will be a strong argument that the claims in the other case are barred by claim preclusion. The two cases arise from the same operative facts about FINRA's investigation of Plaintiffs and could have been brought together in a single complaint. Even if claim preclusion does not apply, the common factual and legal questions between the two cases may raise questions of issue preclusion. *See Montana v. United States*, 440 U.S. 147, 153 (1979) ("[O]nce an issue is actually and necessarily determined by a court of competent jurisdiction, that determination is conclusive in subsequent suits based on a different cause of action involving a party to the prior litigation.").

Accordingly, either this Court or the Northern District of Illinois may lose the chance to adjudicate the pending claims if the other court rules first. "[S]uch a situation is conducive to a race of diligence among litigants for a trial in the District Court each prefers," "lead[ing] to the wastefulness of time, energy and money that § 1404(a) was designed to prevent." *Cont'l Grain Co. v. Barge FBL-585*, 364 U.S.

17

19, 26 (1960).  Transfer would ameliorate these practical inefficiencies and legal complications.[5]

### 2. The Remaining *Jumara* Factors Also Collectively Favor Transfer.

In addition to the practical considerations strongly supporting transfer, at least three other *Jumara* factors also favor transfer.  Taken together, the remaining factors weigh decisively in favor of proceeding in the Northern District of Illinois.

Factor 2, the defendant's choice of forum (the Northern District of Illinois), points toward transfer.  Factor 3 also favors transfer because Plaintiffs' claims "arose elsewhere."  *Jumara*, 55 F.3d at 879.  Because Plaintiffs are challenging "communications and decisions directed by FINRA personnel in Chicago," Ill. Am. Compl. ¶ 18, Plaintiffs' claims arose, at least in part, in the Northern District of

---

[5] Transferring this case to the Northern District of Illinois would not automatically consolidate the two cases—and thus would not necessarily extinguish all claim- and issue-preclusion questions—but transfer would enable a single district judge familiar with both cases to determine whether consolidation is appropriate and, if it is not, to draw upon a comprehensive understanding of the related cases when addressing any preclusion questions that arise.  Although these specific concerns could also be addressed if the Northern District of Illinois action were transferred to the District of Delaware, the Northern District of Illinois is the preferred forum under the "first-filed rule," which "encourages sound judicial administration and promotes comity among federal courts of equal ranks" by creating a presumption that, ordinarily, "'the court which first has possession of the subject must decide it.'"  *EEOC v. Univ. of Penn.*, 850 F.2d 969, 971-72 (3d Cir. 1988), *aff'd*, 493 U.S. 182 (1990).  Additionally, as explained below, the other *Jumara* factors on balance favor litigation of this case in the Northern District of Illinois.

Illinois. *See supra* 10-12. By contrast, none of the parties' alleged activities occurred in Delaware.

For the same reason, factor 10—the local interest in deciding local controversies at home—favors transfer. Illinois' interest in this case is materially stronger than Delaware's interest because FINRA's investigation of Plaintiffs was directed from Illinois, Ill. Am. Compl. ¶ 18, whereas "Delaware . . . has no connection to the events giving rise to this action." *Jackson v. BP Expl. & Prod. Inc.*, 2025 WL 2337995, at *5 (D. Del. Aug. 13, 2025) (Connolly, C.J.).

Most of the other *Jumara* factors are neutral. Factor 4—the convenience of the parties as indicated by their relative physical and financial condition—does not clearly favor or oppose transfer. When assessing this factor, courts consider "(1) the parties' physical location; (2) the associated logistical and operational costs to the plaintiffs in traveling to Delaware—as opposed to the proposed transferee district— for litigation purposes; and (3) the relative ability of each party to bear these costs in light of its size and financial wherewithal." *Jackson*, 2025 WL 2337995, at *3 (quotation marks omitted). The California-based Plaintiffs—two of whom are already voluntarily litigating in the Northern District of Illinois and thus cannot contend that it is inconvenient—and the Chicago-based FINRA employees are closer to Chicago than Wilmington. But FINRA's D.C. headquarters and Maryland office are closer to Wilmington than to Chicago, and, as its place of incorporation,

19

Delaware is a presumptively convenient forum for FINRA. *See*, *e.g.*, *id*. Neither consideration clearly outweighs the other.

For factors 5 and 6, there is no suggestion that the witnesses or books or records would be unavailable in either forum. For factor 7, a judgment from either forum would be enforceable. For factor 11, Illinois and Delaware both have minimal state-specific public-policy interests in this case, which involves federal constitutional claims brought by California-based Plaintiffs. And for factor 12, no familiarity with state law is necessary, as this case involves only federal constitutional claims.

Only two factors even arguably weigh against transfer. For factor 9, although the latest data show that the Northern District of Illinois has a slightly higher per-judge workload, the District of Delaware's workload is also high, particularly when considering this district's disproportionate patent caseload.[6] Thus, at most, this factor marginally weighs against transfer.

---

[6] The Administrative Office of U.S. Courts uses "weighted filings" to capture the relative workload of different courts. As of December 31, 2025, the District of Delaware had 657 weighted filings per authorized judgeship, and the Northern District of Illinois had 792. *See* Admin. Office of U.S. Courts, *Table N/A—U.S. District Courts—Combined Civil and Criminal Federal Court Management Statistics* (Dec. 31, 2025), https://www.uscourts.gov/data-news/data-tables/2025/12/31/federal-court-management-statistics/n-a-1. This Court has also previously suggested that weighted filings do not adequately capture the burden imposed by patent cases. *See Allen Med. Sys., Inc. v. Mizuho Orthopedic Sys., Inc.*, 2022 WL 1046258, at *3 (D. Del. Apr. 7, 2022) (Connolly, C.J.). The District of Delaware has 697 open patent cases (174.25 per authorized judgeship) while the

Finally, Plaintiffs' choice of forum weighs against transfer (which is true whenever a defendant files an opposed motion to transfer). To be sure, Plaintiffs' choice of forum is of "paramount" importance. *Blackbird Tech LLC v. E.L.F. Beauty, Inc.*, 2020 WL 2113528, at *2-3 (D. Del. May 4, 2020) (Connolly, J.). But it can be overridden when the other factors strongly weigh in favor of transfer. *See, e.g.*, *Jackson*, 2025 WL 2337995, at *6 (finding that the factors overall "weigh strongly in favor of transfer"). And that is particularly true here, where the Companies voluntarily filed their related case against FINRA in the Northern District of Illinois—and thus cannot credibly object to litigating claims arising from FINRA's investigation in that district—and where "[t]he only connection to Delaware is the fact that Defendant is incorporated in the State of Delaware." *Joseph v. Buffalo News, Inc.*, 2017 WL 3314006, at *1 (D. Del. Aug. 3, 2017).

In sum, of the twelve *Jumara* factors, four strongly favor transfer, six are neutral, and two factors arguably do not favor transfer. On balance, the factors overwhelmingly favor transfer.

## VI. CONCLUSION

The Court should transfer the case to the Northern District of Illinois.

---

Northern District of Illinois has 226 open patent cases (10.27 per authorized judgeship). *Courts & Judges Comparator, Comparison Between District of Delaware (D.Del) and Northern District of Illinois (N.D.Ill)*, LexisNexis (last visited Apr. 30, 2026).

21

OF COUNSEL:

Amir C. Tayrani
Alex Gesch
GIBSON, DUNN & CRUTCHER LLP
1700 M Street, N.W.
Washington, D.C.  20036
T: (202) 887-3692
atayrani@gibsondunn.com
agesch@gibsondunn.com

James R. Figliulo
Michael K. Desmond
SMITH, GAMBRELL & RUSSELL, LLP
155 N. Wacker Drive, Suite 3000
Chicago, Illinois  60606
T: (312) 360-6000
jfigliulo@sgrlaw.com
mdesmond@sgrlaw.com

  /s/ *Raymond J. DiCamillo*
Raymond J. DiCamillo (#3188)
Chad M. Shandler (#3796)
Christine Dealy Haynes (#4697)
RICHARDS, LAYTON & FINGER, P.A.
920 North King Street
Wilmington, Delaware  19801
T: (302) 651-7700
dicamillo@rlf.com
shandler@rlf.com
haynes@rlf.com

*Attorneys for Defendant Financial*
*Industry Regulatory Authority, Inc.*

22

## CERTIFICATE OF COMPLIANCE

This brief complies with this Court's Standing Order Regarding Briefing In All Cases because the brief contains 4,990 words, as determined by the word-count function of Microsoft Word, and it uses 14-point Times New Roman Font.


Dated:        April 30, 2026                          */s/ Raymond J. DiCamillo*
                                                      Raymond J. DiCamillo (#3188)