**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| BOUSTEAD SECURITIES, LLC, SUTTER SECURITIES, INC., and KEITH MOORE, | ) | |
| Plaintiffs, | ) | Case No. 26-0360-CFC |
| v. | ) | |
| FINANCIAL INDUSTRY REGULATORY AUTHORITY, INC., | ) | |
| Defendant. | ) | |

**PLAINTIFFS' REPLY BRIEF IN SUPPORT OF**
**MOTION FOR PRELIMINARY INJUNCTION**

*Of Counsel:*

MICHAEL BEST & FREDRICH LLP
Richard F. Ensor*
650 S. Main St., Suite 500
Salt Lake City, UT 84101
(385) 695-6450
rfensor@michaelbest.com

Daniel Jozwiak*
675 15th Street, Suite 2000
Denver, CO 80202
(720) 398-0052
daniel.jozwiak@michaelbest.com

*Admitted *pro hac vice*

ASHBY & GEDDES
Randall J. Teti (#6334)
500 Delaware Avenue, 8th Floor
P.O. Box 1150
Wilmington, DE 19899
(302) 654-1888
rteti@ashbygeddes.com

*Counsel for Plaintiffs*

Dated: May 14, 2026

**TABLE OF CONTENTS**

**Page(s)**

TABLE OF AUTHORITIES ........................................................................ ii

ARGUMENT ............................................................................................ 1

I. FINRA Violates the Private Nondelegation Doctrine. ......................... 1

II. Alternatively, FINRA is Part and Parcel of the Federal Government. ................................................................................................ 4

III. FINRA is Violating the Constitution. ................................................. 7

IV. *Axon* Provides this Court with Jurisdiction. ........................................ 8

V. Irreparable Harm. ........................................................................ 10

VI. The Equities and Public Interest Favor Plaintiffs. .............................. 12

## TABLE OF AUTHORITIES

Page(s)

Cases

*Alpine Sec. Corp. v. FINRA,*
121 F.4th 1314, 1343-44 (D.C. Cir. 2024) ("*Alpine II*") ........................... *passim*

*Black v. SEC,*
2026 WL 812273 (W.D.N.C. Mar. 24, 2026)............................................. 11-12

*Blankenship v. FINRA,*
2026 WL 64096 (3d Cir. Jan. 8, 2026) .............................................................. 8

*Blum v. Yaretsky,*
457 U.S. 991 (1982), 457 U.S. at 1005 .......................................................... 4, 5

*Consumers' Rsch. v. FCC*,
88 F.4th 917 (11th Cir. 2023) ........................................................................ 1, 2, 3

*Defense Distribution v. AG N.J.,*
972 F.3d 193 (3d. Cir. 2020)............................................................................ 11

*DOT v. Ass'n of Am. R.R*,
575 U.S. 43 (2015).............................................................................................. 4

*Epstein v. SEC*,
App'x 142 (3d Cir. 2010)...................................................................................... 7

*FCC v. Consumers' Rsch.,*
606 U.S. 656 (2025)............................................................................................ 1

*First Jersey Sec. Inc. v. Bergen,*
605 F.2d 690 (3d Cir. 1979)................................................................................. 4

*In re Series 7 Broker Qualifications Exam Scoring Litigation,*
548 F.3d 110 (D.C. Cir. 2008) ............................................................................ 6

*Lebron v. Nat'l R.R. Passenger Corp.,*
513 U.S. 374 (1985) ........................................................................................ 4, 5

*Nat'l Horsemen's Benevolent & Protective Ass'n v. Black,*
53 F.4th 869 (5th Cir. 2022) .......... 1

*Space Exploration Techs. v. NLRB,*
151 F.4th 761 (5th Cir. 2025) .......... 10

*Sunshine Anthracite Coal Co. v. Adkins*,
301 U.S. 381 (1940) .......... 2

*Thunder Basin Coal Co. v. Reich.*,
510 U.S. 200 (1994) .......... 8

*Tourmaline Mgmt. v. Tourmaline Cap. Partners,*
2025 WL 2338069 (D. Del. Aug. 13, 2025) .......... 10, 11

**Statutes**

15 U.S.C. § 78o-3 .......... 5

**Secondary Sources**

Hester Pierce, *The Financial Industry Regulatory Authority: Not Regulation After All,* Mercatus Working Paper (Jan. 2015) .......... 6

## ARGUMENT

### I. FINRA Violates the Private Nondelegation Doctrine.

"Our constitution permits only the federal government to exercise federal power." *Nat'l Horsemen's Benevolent & Protective Ass'n v. Black*, 53 F.4th 869, 880 (5th Cir. 2022). "If it were otherwise – if people outside government could wield the government's power—then the government's promised accountability to the people would be an illusion." *Id.* Therefore, private entities with delegated power must be "subject to [the government's] pervasive surveillance and authority." *Consumers' Rsch. v. Fed. Comm'ns Comm.*, 88 F.4th 917, 925 (11th Cir. 2023) (citations omitted).

FINRA's reliance (Opp., 9-10) (D.I. 23) on *FCC v. Consumers' Rsch.* is misplaced. 606 U.S. 656, 691-693 (2025). That case reiterates the importance of the private nondelegation doctrine and, if *Consumers' Rsch.'s* words are given plain meaning, then FINRA impermissibly and undoubtably wields executive branch power.

*Consumers' Rsch.* recognizes that "[g]overnmental agencies may rely on advice and assistance from private actors." *Id.* "Advice" is defined as a "recommendation regarding a decision or course of conduct."[1] FINRA's coercive prosecutorial powers, including investigations that last years and demand millions

[1] www.merriam-webster.com/dictionary/advice.

of documents and days of testimony, are not "advice." *Alpine Sec. Corp. v. FINRA*, 121 F.4th 1314, 1343-44 (D.C. Cir. 2024) ("*Alpine II*").

*Consumer's Rsch.* states delegation to private entities is permissible when they "function subordinately to the agency" and are "subject to its authority and surveillance." 606 U.S. at 692. Eighty years ago, the Supreme Court similarly stated that the government must provide "pervasive surveillance." *Sunshine Anthracite Coal Co. v. Adkins*, 301 U.S. 381, 388 (1940). Subordination frequently means "submissive or controlled by authority."[2] Neither is true here. FINRA makes decisions to "exercise prosecutorial discretion to choose formal disciplinary actions or to choose no action at all." *Alpine II* at 1343-1344 (Walker, J., dissenting).

Nor does the SEC provide surveillance. "Surveillance" is a "close watch kept over someone or something."[3] FINRA never explains how the SEC keeps "close watch" over FINRA's enforcement regime because the SEC's input is *not* required for FINRA to start an investigation, file a complaint, or settle a matter. Nor does the SEC's review 3-5 years later constitute constitutional surveillance. The timeline here proves the point: (a) 2022, FINRA opens the investigation, (b) 2026, FINRA files a disciplinary action, (c) 2027, the hearing will occur, and (d) if Plaintiffs appeal, the SEC will review in 2028 or 2029 issuing an order years later.

---

[2] www.merriam-webster.com/dictionary/subordinate.
[3] www.merriam-webster.com/dictionary/surveillance.

FINRA's assertion that the SEC provides adequate supervision (Opp., 2, 5-6, 10, 14) rings hollow. Just as a senior lawyer is not supervising a merger by reviewing the subordinate lawyer's work after the deal closes, the SEC is not supervising FINRA's enforcement efforts. As in this case, when the SEC finally becomes involved, irreparable harm has already occurred.

*Consumers' Rsch.* also illustrates how government authority can be delegated. 606 U.S. at 667-68. The FCC "devised a formula known as the contribution factor" for payments to a fund and appointed the USAC – a private corporation—as the administrator. *Id*. at 669-70. The USAC managed "day-to-day operations of the Fund" such as billing, collecting, and distributing funds. *Id*. No constitutional problem existed because the USAC is "broadly subordinate" given the FCC's supervision, surveillance, and authority, including appointing USAC's board, *de novo* review of aggrieved parties, and the USAC's advisory role. *Id*. at 660, 669-70.

FINRA is vastly different. The SEC does not appoint FINRA's board or approve FINRA's budget, and FINRA maintains broad "decision-making authority" that the USAC does not have. Judge Walker highlighted FINRA's prosecutorial authority: "FINRA operates as the principal decision maker in the use of federal power. That's because it enforces federal law and rules that carry the force of the law. And it does so without any initial approval from its supposed supervisor, the SEC." *Alpine II* at 1344-45. Judge Walker cited a FINRA press release: "FINRA

Orders Record Financial Penalties Against Robinhood LLC (June 30, 2021) totaling "$57 million." *Id*. at 1344, n. 58. The USAC would never issue such a release.

Nor does *First Jersey Sec. Inc. v. Bergen*, 605 F.2d 690, 699 (3d Cir. 1979) help FINRA. (Opp., 2-3, 11-12.) *First Jersey* is 47 years old and found "no unconstitutional delegation of legislative authority." 605 F.2d at 697. Here, FINRA has usurped executive power, not legislative authority, and more recent Supreme Court precedent exists.[4] Justice Thomas articulated Plaintiffs' concern in his concurrence in *DOT v. Ass'n of Am. R.R.,* "Congress improperly 'delegates' – or, more precisely, authorizes the exercise of executive power when it authorizes individuals or groups outside of the President's control to perform a function that requires the exercise of that power." 575 U.S. 43, 68-69 (2015). Because FINRA is granted executive power to investigate and prosecute without government surveillance, FINRA violates the private nondelegation doctrine.

## II. Alternatively, FINRA is Part and Parcel of the Federal Government.

FINRA misapplies *Lebron v. Nat'l R.R. Passenger Corp.*, 513 U.S. 374 (1985) and *Blum v. Yaretsky*, 457 U.S. 991 (1982). FINRA argues that *Lebron* only recognized "a narrow, exceptional" category of corporations (Opp., 13) subject to

[4] *Todd & Co. v. SEC.*, 557 F.2d 1008 (3d Cir. 1977), upon which FINRA relies (Opp., 11) is similarly not binding.

constitutional constraints. But nowhere does *Lebron* use those terms. Justice Scalia concisely summarizes the holding:

> …. where, as here, the Government creates a corporation by special law, for the furtherance of governmental objectives, and retains for itself permanent authority to appoint a majority of the directors of that corporation, the corporation is part of the Government for purposes of the first amendment.

*Id*. at 400. *Lebron* does not state that all three factors must be present or that other factors are irrelevant.

While the government did not create FINRA, federal law requires anyone wanting to sell securities to join it. (Opp at 5.) FINRA acts in "furtherance of governmental objectives" given the Exchange Act's direction that FINRA promulgate rules to prevent fraud, create a free market for securities, protect the investing public, and discipline individuals violating FINRA rules and federal law. 15 U.S.C. § 78o-3(b)(6) – (7). Congress also authorizes FINRA to collect fees.

In *Blum*, Justice Rehnquist held that a private corporation engages in state action when "the private entity has exercised powers that are traditionally the exclusive prerogative of the State." 457 U.S. at 1005. Prosecuting federal law to million-dollar settlements, verdicts, suspensions, and bars is the exercise of state power.

To this, FINRA responds "not so," claiming to only exercise "self-regulatory responsibilities…." (Opp., 13-14.) SEC Commissioner Pierce disagrees and wrote:

> FINRA is independent from industry because a board of governors, the majority of whom are not representatives of industry, runs FINRA. …. The board structure, which is intentionally weighted away from the industry, is not consistent with self-regulation. ***An organization run by a board that is dominated by people who are not in the industry is not an SRO; it is a regulator with industry representation.***

Hester Pierce, *The Financial Industry Regulatory Authority: Not Self-Regulation After All*, Mercatus Working Paper (Jan. 2015) [https://www.mercatus.org/research/working-papers/financial-industry-regulatory-authority-not-self-regulation-after-all] (footnotes omitted; emphasis added).

Lastly, FINRA constantly argues for ***governmental immunity***. In *In re Series 7 Broker Qualifications Exam Scoring Litigation*, the Court held that "[w]hen an SRO acts under the aegis of the Exchange Act's delegated authority, it is absolutely immune from suit for the improper performance of regulatory, adjudicatory, or prosecutorial duties delegated by the SEC." 548 F.3d 110, 114 (D.C. Cir. 2008). This was because:

> Courts have consistently barred suits which seek monetary relief for actions taken by agency regulators -- ***or those acting in their place*** -- in performance of their regulatory, adjudicatory, or prosecutorial duties.

*Id.* (internal citations and quotations omitted; emphasis added).

Lastly, *Epstein v. SEC*, 416 F. App'x 142 (3d Cir. 2010) does not change the analysis. (Opp. 3, 12.) That case contains one sentence without analysis and is 16 years old with citation to one Second Circuit case from 26 years ago.

## III. FINRA is Violating the Constitution.

FINRA's cursory arguments on the merits of Plaintiffs' constitutional claims fail. (Opp., 17-18.) First, as Judge Walker stated: "FINRA's hearing officers are indistinguishable from the administrative law judges in *Lucia* … [and] must be (1) properly appointed and (2) removable by the President – two conditions hearing officers cannot satisfy." *Alpine II* at 1346-47. Nor is FINRA's citation to a case regarding the appointment of a special counsel to investigate the President persuasive. FINRA's Seventh Amendment rebuttal fares no better. *Jarkesy* is clear that "common law" suits are broadly defined and that, while the claim is relevant, the nature of the remedy "more important." 603 U.S. at 122-123. This dooms FINRA's argument. Civil fines, which FINRA seeks, are a type of common law remedy enforced in a court of law. *Id*.

Finally, FINRA asserts that Plaintiffs have not alleged that FINRA's prosecution and in-house courts create an "unconstitutional risk of bias." (Opp., 20.) But that is exactly what Plaintiffs allege. FINRA's hearing officers are employed by FINRA, frequently recruited from Enforcement, and impose fines that flow back to FINRA's coffers. FINRA hearing officers do not apply the rules of evidence and

Plaintiffs' ability to obtain discovery is limited whereas FINRA has years and an array of powers to prepare its case. A level playing field and meaningful opportunity to be heard are not provided. The case cited by FINRA – relating to disputed Medicare payments – is not analogous.

## IV. *Axon* Provides this Court with Jurisdiction.

FINRA's argument that the Court lacks subject matter jurisdiction to resolve constitutional questions lacks merit, mischaracterizes Plaintiffs' claims, and misapplies *Thunder Basin*. (Opp., 16-18.)

FINRA invokes *Thunder Basin Coal Co. v. Reich*, 510 U.S. 200 (1994) to argue the Court is divested from exercising jurisdiction over Plaintiffs' claims. But in reciting the *Thunder Basin* factors, FINRA heavily depends on a district court opinion that the Third Circuit declined to adopt. *Blankenship v. FINRA*, 2026 WL 64096, at *2 (3d Cir. Jan. 8, 2026). (Opp., 17-18.)

With respect to the *Thunder Basin* factors, precluding district court review meaningfully forecloses judicial review of Plaintiffs' claims. The Seventh Amendment guarantees a right to a jury trial; forcing Plaintiffs through a non-jury proceeding and only allowing a challenge later destroys the protection from the "here-and-now" injury that *Axon* cautions is "impossible to remedy once the proceeding is over." 598 U.S. at 191. *Jarkesy* proves the point: Jarkesy was forced through an unconstitutional proceeding before the Supreme Court vindicated his

right to a jury. The same principles apply to Plaintiffs' due process claims, as enduring a structurally biased proceeding and only being afforded the opportunity to challenge it later does not undo the deprivation of the Constitution's protections.

*Second*, FINRA attempts to recast Plaintiffs' claims as a challenge to "case-specific 'actions'" describing Plaintiffs' claims as "not wholly collateral" to the statutory review scheme. (Opp., 17.) Plaintiffs' Seventh Amendment claim is that FINRA cannot constitutionally adjudicate legal claims seeking monetary penalties without a jury—full stop. (Compl., ¶¶ 70-74.) Plaintiffs' Due Process claim is that FINRA's hearing officers are structurally biased, its discovery rules one-sided, and its adjudications lack evidentiary safeguards. *Id.*, ¶¶ 9, 83-87.

FINRA fails to grapple with *Axon*, as Plaintiffs object to FINRA's "power generally, not to anything particular about how that power [is] wielded," as opposed to "the sorts of procedural or evidentiary matters an agency often resolves on its way to a merits decision." *Axon*, 598 U.S. at 193. *Axon* foreshadowed the precise constitutional questions posed to this Court: that the Exchange Act's review model "may run afoul of the Seventh Amendment by allowing an administrative agency to adjudicate what may be core private rights without a jury" and "violate due process by empowering entities that are not courts of competent jurisdiction to deprive citizens of core private rights." *Id.* at 202 (Thomas, J., concurring).

*Third*, constitutional questions are outside of the SEC's expertise, as *Jarkesy* shows. Whether the Seventh Amendment and due process protections apply are questions of constitutional law, not securities regulation or agency procedure. *Axon*, 598 U.S. at 194-95.

FINRA's argument fails for other reasons. FINRA does not address the Fifth Circuit's holding in *Space Exploration Techs. v. NLRB* that raised similar structural constitutional claims. 151 F.4th 761, 779-80 (5th Cir. 2025). The case for jurisdiction is stronger here than in *Axon*, as Plaintiffs would need to wait for three layers of non-jury proceedings (FINRA's OHO proceeding, appeal to the National Adjudicatory Council, and SEC review) before any court would address their constitutional claims.

## V. Irreparable Harm

Plaintiffs did not delay. FINRA initiated the Enforcement Proceeding in mid-January. Since that time, as reflected in Keith Moore's initial declaration (D.I. 7), irreparable harm continues to be forced upon Plaintiffs. Just this past week, another client asked to remove Sutter as lead underwriter due to the enforcement action. (Exhibit A, Parrington Decl., ¶¶ 2–4.) The factual and legal issues here are complex and the harm intensifying; Plaintiffs sought timely relief.

Nor are the cases cited by FINRA instructive. In *Tourmaline Mgmt. v. Tourmaline Cap. Partners*, the plaintiff waited "nearly a year" to file

notwithstanding the Third Circuit's holding that "a delay of this length is fatal to the irreparable harm showing in trademark infringement actions." 2025 WL 2338069, at *2 (D. Del. Aug. 13, 2025). Nor is *Defense Distribution v. AG N.J.* on point. In that case, plaintiff filed lawsuits in Texas and New Jersey. 972 F.3d 193, 196 (3d. Cir. 2020). The New Jersey Court stayed its lawsuit and the Court was therefore determining "whether the stay is a practical denial of an injunction." *Id*. at 198.

Plaintiffs do not argue that they will be forced out of business "by the *outcome* of the disciplinary proceeding," (Opp., 21); rather, Plaintiffs argue that "the Enforcement Proceeding *itself* is operating to exclude Plaintiffs from participating in the marketplace," (Opening Brief at 15-16), and provide numerous examples of the on-going, irreparable harm. FINRA ignores Plaintiffs' arguments.

Lastly, while a circuit split exists regarding the "here and now" constitutional injury in *Axon* constituting irreparable harm, the Fifth Circuit's decision in *Space Exploration* is compelling given FINRA's extreme use of state power. And recently, another district court (in dismissing due to lack of jurisdiction given that the SEC issued an order on the underlying FINRA matter and the Court of Appeals had jurisdiction) stated:

> Further, just because this Court cannot remedy Plaintiffs' claims under *Axon* does not mean Plaintiffs have not suffered irreparable harm. This Court finds the entirety of Judge Walker's concurrence in part and dissent in part in [*Alpine II*] persuasive.

*Black v. SEC*, 2026 WL 812273 (W.D.N.C. Mar. 24, 2026).

**VI. The Equities and Public Interest Favor Plaintiffs.**

FINRA's argument on these factors is unavailing. While the requested injunction prevents FINRA from prosecuting Plaintiffs, it has no impact on FINRA's other efforts. Nor would public interest and the equities favor violating the Constitution because that is how FINRA conducts business. FINRA started its investigation in 2022 and filed the enforcement proceeding four years later. Further in-house adjudication can be enjoined while these constitutional issues are resolved.

*Of Counsel:*

MICHAEL BEST & FREDRICH LLP

Richard F. Ensor*
650 S. Main St., Suite 500
Salt Lake City, UT 84101
(385) 695-6450
rfensor@michaelbest.com

Daniel Jozwiak*
675 15th Street, Suite 2000
Denver, CO 80202
(720) 398-0052
daniel.jozwiak@michaelbest.com

*Admitted *pro hac vice*

ASHBY & GEDDES

*/s/ Randall J. Teti*
Randall J. Teti (#6334)
500 Delaware Avenue, 8th Floor
P.O. Box 1150
Wilmington, DE 19899
(302) 654-1888
rteti@ashbygeddes.com

*Counsel for Plaintiffs*

May 14, 2026

**CERTIFICATION**

The undersigned hereby certifies that the foregoing Reply Brief in Support of Motion for Preliminary Injunction contains 2,499 words, excluding the cover page, tables, and signature blocks, and that it complies with the Court's type, font, and word limitation requirements.

*/s/ Randall J. Teti*
Randall J. Teti