## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| Boustead Securities, LLC, Sutter Securities, Inc., and Keith C. Moore, <br> Plaintiffs, <br> v. <br><br> Financial Industry Regulatory Authority, Inc., <br> Defendant. | ) <br> ) <br> ) <br> ) C.A. No. 26-0360-CFC <br> ) <br> ) <br> ) <br> ) <br> ) |

## OPENING BRIEF IN SUPPORT OF
## DEFENDANT'S MOTION TO DISMISS

OF COUNSEL:

Amir C. Tayrani
Alex Gesch
GIBSON, DUNN & CRUTCHER LLP
1700 M Street, N.W.
Washington, D.C.  20036
T: (202) 887-3692
atayrani@gibsondunn.com
agesch@gibsondunn.com

James R. Figliulo
Michael K. Desmond
SMITH, GAMBRELL & RUSSELL, LLP
155 N. Wacker Drive, Suite 3000
Chicago, Illinois  60606
T: (312) 360-6000
jfigliulo@sgrlaw.com
mdesmond@sgrlaw.com

Dated:  May 14, 2026

Raymond J. DiCamillo (#3188)
Chad M. Shandler (#3796)
Christine D. Haynes (#4697)
RICHARDS, LAYTON & FINGER, P.A.
920 North King Street
Wilmington, Delaware  19801
T: (302) 651-7700
dicamillo@rlf.com
shandler@rlf.com
haynes@rlf.com

*Attorneys for Defendant Financial
Industry Regulatory Authority, Inc.*

**TABLE OF CONTENTS**

**Page**

I.    NATURE AND STAGE OF THE PROCEEDINGS....................................1

II.   SUMMARY OF THE ARGUMENT.................................................2

III.  STATEMENT OF FACTS.......................................................3

    A.    FINRA's Self-Regulatory Activities.....................................3

    B.    FINRA's Disciplinary Proceeding Against Plaintiffs.....................6

IV.   LEGAL STANDARD...........................................................7

V.    ARGUMENT.................................................................8

    A.    FINRA's Self-Regulatory Activities Do Not Violate The Private
Nondelegation Doctrine (Count 1)........................................8

    B.    Plaintiffs' Other Constitutional Claims Fail Because FINRA Is
Neither A State Actor Nor Engaged In State Action (Counts 2-5)......12

    C.    The Court Lacks Subject Matter Jurisdiction Over Plaintiffs'
Seventh Amendment And Due Process Claims (Counts 2 & 4)........16

    D.    Plaintiffs' Other Constitutional Claims Also Fail On The Merits
(Counts 2-5)..........................................................18

        1.    FINRA Is A Private Entity Not Subject To The
Constitution's Appointment Or Removal Requirements
(Counts 3 & 5).................................................19

        2.    FINRA Disciplinary Proceedings Do Not Implicate The
Seventh Amendment (Count 2).................................20

        3.    FINRA Disciplinary Proceedings Afford Sufficient Due
Process (Count 4).............................................21

VI.   CONCLUSION...............................................................22

CERTIFICATE OF COMPLIANCE.................................................24

i

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Alpine Sec. Corp. v. FINRA*,
121 F.4th 1314 (D.C. Cir. 2024)........................................................4, 5, 11, 13

*Alpine Sec. Corp. v. FINRA*,
2021 WL 4060943 (D. Utah Sept. 7, 2021).......................................................18

*Alpine Sec. Corp. v. Nat'l Sec. Clearing Corp.*,
2025 WL 901847 (D. Utah Mar. 25, 2025)........................................................18

*Am. Mfrs. Mut. Ins. Co. v. Sullivan*,
526 U.S. 40 (1999)..............................................................................................13

*Aslin v. FINRA*,
704 F.3d 475 (7th Cir. 2013) .............................................................................15

*Atlas Roofing Co. v. OSHRC*,
430 U.S. 442 (1977)............................................................................................21

*Axalta Coating Sys. LLC v. Fed. Aviation Admin.*,
144 F.4th 467 (3d Cir. 2025) .............................................................................21

*Axon Enter., Inc. v. FTC*,
598 U.S. 175 (2023)..............................................................................2, 3, 16, 17

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007)..............................................................................................8

*Blankenship v. FINRA*,
2024 WL 4043442 (E.D. Pa. Sept. 4, 2024)......................................................17

*Blum v. Yaretsky*,
457 U.S. 991 (1982).................................................................................13, 14, 15

*Boustead Sec., LLC v. FINRA*,
No. 1:26-cv-00490 (N.D. Ill. Jan. 15, 2026) ......................................................7

*Brentwood Acad. v. Tenn. Secondary Sch. Athletic Ass'n*,
531 U.S. 288 (2001)............................................................................................14

*Cody v. SEC*,
  693 F.3d 251 (1st Cir. 2012)..................................................................22

*Crissman v. Dover Downs Ent. Inc.*,
  289 F.3d 231 (3d Cir. 2002) ..................................................................15

*Edmonson v. Leesville Concrete Co.*,
  500 U.S. 614 (1991)..........................................................................3, 12

*Elgin v. Dep't of Treasury*,
  567 U.S. 1 (2012)...................................................................................16

*Epstein v. SEC*,
  416 F. App'x 142 (3d Cir. 2010) .......................................................3, 12

*FCC v. Consumers' Rsch.*,
  606 U.S. 656 (2025)...........................................................................9, 10

*First Jersey Sec., Inc. v. Bergen*,
  605 F.2d 690 (3d Cir. 1979) ...................................................2, 3, 10, 12

*Free Enter. Fund v. PCAOB*,
  561 U.S. 477 (2010)...............................................................................20

*Kerpen v. MWAA*,
  907 F.3d 152 (4th Cir. 2018) .................................................................19

*Kim v. FINRA*,
  698 F. Supp. 3d 147 (D.D.C. 2023).............................................9, 10, 14

*Lebron v. Nat'l R.R. Passenger Corp.*,
  513 U.S. 374 (1995).........................................................................13, 19

*Lutz v. Portfolio Recovery Assocs., LLC*,
  49 F.4th 323 (3d Cir. 2022) ...............................................................8, 22

*Manhattan Cmty. Access Corp. v. Halleck*,
  587 U.S. 802 (2019)...................................................................12, 14, 15

*Mathews v. Eldridge*,
  424 U.S. 319 (1976)...............................................................................22

*Matrix Distribs., Inc. v. Nat'l Ass'n of Bds. of Pharmacy*,
    34 F.4th 190 (3d Cir. 2022) ..................................................................14

*McGinn, Smith & Co. v. FINRA*,
    786 F. Supp. 2d 139 (D.D.C. 2011) ......................................................14

*Mohlman v. FINRA*,
    2020 WL 905269 (S.D. Ohio Feb. 25, 2020) ........................................12

*In re NYSE Specialists Sec. Litig.*,
    503 F.3d 89 (2d Cir. 2007) .....................................................................9

*Oklahoma v. United States*,
    163 F.4th 294 (6th Cir. 2025) ...........................................................8, 10

*Perpetual Sec., Inc. v. Tang*,
    290 F.3d 132 (2d Cir. 2002) ......................................4, 5, 10, 12, 13

*Phillips v. Cnty. of Allegheny*,
    515 F.3d 224 (3d Cir. 2008) ...................................................................8

*R.H. Johnson & Co. v. SEC*,
    198 F.2d 690 (2d Cir. 1952) .................................................................10

*S.F. Arts & Athletics, Inc. v. U.S. Olympic Comm.*,
    483 U.S. 522 (1987)...............................................................................14

*Schweiker v. McClure*,
    456 U.S. 188 (1982)...............................................................................22

*Scottsdale Cap. Advisors Corp. v. FINRA*,
    844 F.3d 414 (4th Cir. 2016) ...........................................................5, 16

*Scottsdale Cap. Advisors Corp. v. FINRA*,
    No. 1:23-cv-01506 (D.D.C. Apr. 23, 2026) .........................11, 12, 20

*SEC v. Jarkesy*,
    603 U.S. 109 (2024).........................................................................17, 21

*In re Series 7 Broker Qualification Exam Scoring Litig.*,
    548 F.3d 110 (D.C. Cir. 2008)...............................................................15

*Shaw v. New Castle Cnty.*,
  2021 WL 4125648 (D. Del. Sept. 9, 2021)..............................................................7

*Sorrell v. SEC*,
  679 F.2d 1323 (9th Cir. 1982) ..............................................................................10

*Sunshine Anthracite Coal Co. v. Adkins*,
  310 U.S. 381 (1940)................................................................................................9

*Thunder Basin Coal Co. v. Reich*,
  510 U.S. 200 (1994)..............................................................................................17

*Todd & Co. v. SEC*,
  557 F.2d 1008 (3d Cir. 1977) ..........................................................................10, 11

*Trump v. United States*,
  603 U.S. 593 (2024)..............................................................................................20

*United States v. NASD, Inc.*,
  422 U.S. 694 (1975)..............................................................................................10

*Vape Cent. Grp. v. FDA*,
  2025 WL 637416 (D.D.C. Feb. 27, 2025)........................................................17, 18

*Withrow v. Larkin*,
  421 U.S. 35 (1975)................................................................................................22

*Yates v. United States*,
  574 U.S. 528 (2015)..............................................................................................19

**Constitutional Provisions**

U.S. Const. art. II, § 2, cl. 2 ............................................................................19, 20

**Statutes**

15 U.S.C. § 78o(a)(1)..............................................................................................4

15 U.S.C. § 78o(b)(1)..............................................................................................4

15 U.S.C. § 78o(b)(8)..............................................................................................4

15 U.S.C. § 78o(b)(9)..............................................................................................4

15 U.S.C. § 78o-3(b)(2) ..................................................................................5

15 U.S.C. § 78o-3(b)(4). .................................................................................4

15 U.S.C. § 78o-3(b)(7) ..................................................................................5

15 U.S.C. § 78o-3(b)(8) ............................................................................5, 22

15 U.S.C. § 78s(b)(1) .................................................................................5, 9

15 U.S.C. § 78s(c).....................................................................................5, 9

15 U.S.C. § 78s(d)(1) ......................................................................................9

15 U.S.C. § 78s(d)(2) ......................................................................5, 6, 9, 16

15 U.S.C. § 78s(e) ...........................................................................................9

15 U.S.C. § 78s(e)(1) ....................................................................................16

15 U.S.C. § 78s(h).........................................................................................5

15 U.S.C. § 78y(a)(1).........................................................................3, 6, 16

28 U.S.C. § 1331 ..........................................................................................16

## Rules

Fed. R. Civ. P. 8(a)(2)....................................................................................8

Fed. R. Civ. P. 12(b)(1).........................................................................7, 8, 22

Fed. R. Civ. P. 12(b)(6)...........................................................................8, 22

FINRA Rule 9231 ..........................................................................................6

FINRA Rule 9232 ..........................................................................................6

FINRA Rule 9233 ..........................................................................................6

FINRA Rule 9234 ..........................................................................................6

FINRA Rule 9235 ........................................................................................20

FINRA Rule 9261 ..........................................................................................6

FINRA Rule 9311 ...............................................................................................6

**Other Authorities**

GAO, *SEC Inspections of FINRA's Governance Were Consistent
with Internal Guidance* (2018)......................................................................5

*In re John Thomas Cap. Mgmt. Grp.*,
2020 WL 5291417 (SEC Sept. 4, 2020).......................................................18

*In re Newport Coast*,
2020 WL 1659292 (SEC Apr. 3, 2020).........................................................20

OLC, *The Test for Determining "Officer" Status Under the
Appointments Clause* (Jan. 16, 2025) .........................................................19

S. Rep. No. 75-1455.............................................................................................4

SEC, Order Approving Proposed Rule Change,
Release No. 34-38908, 62 Fed. Reg. 43,385 (Aug. 13, 1997) ....................20

Marianne K. Smythe, *Government Supervised Self-Regulation
in the Securities Industry and the Antitrust Laws*,
62 N.C. L. Rev. 475 (1984) ............................................................................3

## I.    NATURE AND STAGE OF THE PROCEEDINGS

Defendant Financial Industry Regulatory Authority, Inc. ("FINRA") is a private self-regulatory organization authorized by the Securities Exchange Act of 1934 ("Exchange Act") to regulate its broker-dealer members subject to comprehensive oversight by the Securities and Exchange Commission ("SEC").

After a multi-year investigation, FINRA brought an enforcement proceeding in its Office of Hearing Officers alleging that Plaintiffs "violated anti-money laundering (AML), supervisory, recordkeeping, and other SEC or FINRA rules in connection with their jointly conducted investment banking businesses."  Ex. A to Mot. for Prelim. Inj., D.I. 6-1 ¶¶ 1, 6-11 ("Disciplinary Complaint").  Nearly three months later, Plaintiffs filed this suit, raising multiple constitutional claims challenging their ongoing FINRA disciplinary proceeding.  Because all of Plaintiffs' claims fail as a matter of law—and several of them are also beyond this Court's jurisdiction—the Court should dismiss the Complaint.

Plaintiffs' Complaint is framed in the alternative:  Either FINRA is a private actor performing delegated governmental responsibilities in violation of the private nondelegation doctrine (Count 1), or FINRA is a state actor and thus required to adhere to the structural requirements and individual-rights provisions of the U.S. Constitution (Counts 2-5).  Courts have repeatedly rejected both types of constitutional challenges to FINRA.  Plaintiffs' private nondelegation claim fails

1

because, as the Third Circuit has already held with respect to FINRA's predecessor, FINRA permissibly exercises delegated authority in light of the SEC's "supervisory role" over FINRA's rules and their enforcement. *First Jersey Sec., Inc. v. Bergen*, 605 F.2d 690, 697, 699 (3d Cir. 1979). Plaintiffs' remaining claims in Counts 2-5 fail because FINRA is a private corporation, not a state actor subject to constitutional requirements. Additionally, the Court lacks jurisdiction over Plaintiffs' Seventh Amendment and due process claims (Counts 2 and 4), which must be brought in a court of appeals under the Exchange Act's exclusive review scheme. *See Axon Enter., Inc. v. FTC*, 598 U.S. 175, 185, 189 (2023). And even assuming that this Court had jurisdiction to entertain those claims and that FINRA were a state actor, Counts 2-5 would each still fail on the merits.

The Court therefore should dismiss the Complaint in its entirety.

## II.    SUMMARY OF THE ARGUMENT

Plaintiffs' alternatively framed constitutional challenges—that FINRA must either violate the private nondelegation doctrine or that it is a state actor subject to constitutional constraints when performing its self-regulatory activities—are fundamentally flawed. This Court should dismiss all of Plaintiffs' claims.

1.    FINRA's self-regulatory activities do not violate the private nondelegation doctrine because FINRA is subject to the SEC's comprehensive oversight. The Third Circuit and other courts have repeatedly upheld this

2

arrangement as constitutional, which defeats Count 1 of the Complaint.  *See, e.g., First Jersey Sec.*, 605 F.2d at 697.

2.      The Third Circuit and other courts have also held that FINRA "is a private actor, not a state actor."  *Epstein v. SEC*, 416 F. App'x 142, 148 (3d Cir. 2010).  This conclusion forecloses Plaintiffs' alternative claims under the Seventh Amendment, Appointments Clause, Due Process Clause, and separation of powers because the conduct of private entities "lies beyond the Constitution's scope."  *Edmonson v. Leesville Concrete Co.*, 500 U.S. 614, 620 (1991).

3.      In addition, this Court lacks subject matter jurisdiction over Plaintiffs' Seventh Amendment and due process claims.  The Exchange Act provides U.S. Courts of Appeals with exclusive jurisdiction to review SEC orders upholding FINRA disciplinary sanctions.  15 U.S.C. § 78y(a)(1).  While *Axon Enterprise v. FTC* recognizes a narrow exception for challenges to a body's structure or existence, that exception does not apply to these two claims.  598 U.S. at 189.

4.      Regardless, Plaintiffs' Seventh Amendment, Appointments Clause, due process, and separation-of-powers claims each fail on the merits.

### III.   STATEMENT OF FACTS

#### A.   FINRA's Self-Regulatory Activities

"Self-regulation in the securities industry is nearly as old as the federal government."  Marianne K. Smythe, *Government Supervised Self-Regulation in the*

*Securities Industry and the Antitrust Laws*, 62 N.C. L. Rev. 475, 480 (1984); *see Alpine Sec. Corp. v. FINRA*, 121 F.4th 1314, 1319 (D.C. Cir. 2024), *cert. denied*, 145 S. Ct. 2741 (2025) (describing "extensive self-regulation" of U.S. securities markets "for more than two centuries"). When Congress adopted the modern securities laws in the 1930s, it preserved and built upon that self-regulatory framework. Under the Exchange Act, private self-regulatory organizations continue to exercise frontline regulation over their members, with the SEC playing "a supervisory role by 'exercising appropriate supervision in the public interest.'" *Id.* at 1320 (quoting S. Rep. No. 75-1455, at 4).

With certain exceptions, the Exchange Act requires anyone seeking to sell securities to join an association of broker-dealers registered as a national securities association—one type of self-regulatory organization—or to associate themselves with a member. *See* 15 U.S.C. § 78o(a)(1), (b)(1), (b)(8)-(9). FINRA is currently the only registered national securities association and exercises self-regulatory authority over its member broker-dealer firms and their associated persons. *Id.* § 78o-3(b)(4).

FINRA is not part of the government. It is a private, not-for-profit Delaware corporation. *Alpine*, 121 F.4th at 1321. FINRA was formed in 2007, when the National Association of Securities Dealers ("NASD") consolidated its regulation and enforcement functions with the similar functions of the New York Stock

4

Exchange. *Id.* The government did not create FINRA or the NASD, *id.*, and the government does not appoint any FINRA board members, officers, or employees, *see* FINRA Board of Governors, bit.ly/3FmyxTr. Nor does FINRA receive any government funding. *Alpine*, 121 F.4th at 1321.

FINRA exercises its self-regulatory authority subject to the Exchange Act and the SEC's supervision. The SEC regularly examines FINRA to ensure its compliance with federal laws and FINRA rules, *see*, *e.g.*, GAO, SEC Inspections of FINRA's Governance Were Consistent with Internal Guidance (2018), https://www.gao.gov/products/gao-18-522, and can limit FINRA's activities or revoke FINRA's registration if FINRA mishandles its regulatory responsibilities, 15 U.S.C. § 78s(h). The SEC must approve FINRA rules and "may abrogate, add to, and delete from" FINRA rules as it deems necessary or appropriate. *Id.* § 78s(b)(1), (c). And the SEC ensures that FINRA "enforce[s] compliance" with the Exchange Act and FINRA's rules and that FINRA "appropriately discipline[s]" its members and associated persons for violations, pursuant to rules that "provide a fair procedure." *Id.* § 78o-3(b)(2), (7), (8).

FINRA's SEC-approved rules provide for multi-layered administrative and judicial review of FINRA disciplinary actions, as set forth in the Exchange Act. *Scottsdale Cap. Advisors Corp. v. FINRA*, 844 F.3d 414, 418 (4th Cir. 2016); *see* 15 U.S.C. §§ 78s(d)(2), 78y(a)(1). Those procedures generally include: (1) an

5

evidentiary hearing before a three-person panel at which respondents can introduce evidence and call and cross-examine witnesses, FINRA Rules 9231-34, 9261; (2) an appeal to FINRA's National Adjudicatory Council, FINRA Rule 9311; (3) a subsequent *de novo* appeal to the SEC, 15 U.S.C. § 78s(d)(2); and (4) a petition for review to a designated U.S. Court of Appeals, *id.* § 78y(a)(1).[1]

## B.    FINRA's Disciplinary Proceeding Against Plaintiffs

Plaintiffs Boustead Securities, LLC ("Boustead") and Sutter Securities, Inc. ("Sutter") are broker-dealers and FINRA member firms.  Compl. ¶¶ 12-13.  Plaintiff Keith Moore is the former CEO and AML compliance officer of both firms.  *Id.* ¶ 14. On January 15, 2026, after a thorough investigation, FINRA's Department of Enforcement brought a seven-count disciplinary complaint, alleging that Plaintiffs violated AML, supervisory, recordkeeping, and other SEC and FINRA rules. Disciplinary Complaint ¶¶ 1, 6-11, 212-73.  The proceeding is in its beginning stages; FINRA's hearing officer has scheduled the final hearing for late February 2027.  Fauci Decl., D.I. 24 ¶¶ 6-8.[2]

---

[1] FINRA's rules are publicly available on FINRA's website.  *See* https://www.finra.org/rules-guidance/rulebooks/finra-rules.

[2] On January 20, 2026, FINRA filed another disciplinary complaint against Sutter and Moore alleging violations of FINRA rules regarding excessive trading and supervisory requirements.  Complaint, *Dep't of Enf't v. Sutter Sec. Inc.*, No. 2021071987902 (Jan. 20, 2026), available at https://tinyurl.com/bd4krxeb. Plaintiffs have not raised any challenge to that proceeding in this or any other court, and that proceeding remains pending.

The same day FINRA filed its Disciplinary Complaint, Boustead and Sutter sued FINRA in the Northern District of Illinois, alleging state-law tort claims and seeking damages arising out of FINRA's investigation of the same misconduct underlying the Disciplinary Complaint. Compl. ¶¶ 106-36, D.I. 1, *Boustead Sec., LLC v. FINRA*, No. 1:26-cv-00490 (N.D. Ill. Jan. 15, 2026). After FINRA moved to dismiss, Boustead and Sutter filed an amended complaint, reasserting the same claims. Am. Compl. ¶¶ 97-128, D.I. 31, *Boustead Sec., LLC v. FINRA*, No. 1:26-cv-00490 (N.D. Ill. Apr. 22, 2026).

Nearly three months after the Northern District of Illinois lawsuit was filed, Plaintiffs filed their Complaint in this Court. Plaintiffs' Complaint asserts that FINRA's structure and disciplinary proceeding violate the federal constitution, raising claims under the private nondelegation doctrine "[i]f FINRA is treated as a private actor," or, "in the alternative," under the Seventh Amendment, the Appointments Clause, the Due Process Clause, and Article II's separation-of-powers requirements "[i]f FINRA is treated as a state actor." Compl. ¶¶ 10, 62-93. Plaintiffs moved for a preliminary injunction, D.I. 5, and FINRA moved to transfer the case to the Northern District of Illinois, D.I. 25. Both motions remain pending.

## IV.   LEGAL STANDARD

This Court must dismiss claims under Rule 12(b)(1) if it lacks subject matter jurisdiction. *Shaw v. New Castle Cnty.*, 2021 WL 4125648, at *1 n.1 (D. Del. Sept.

9, 2021) (Connolly, C.J.).  When a Rule 12(b)(1) motion contests the sufficiency of the pleadings, the Court accepts the well-pleaded factual allegations as true.  *Id.*  The Court must dismiss claims under Rule 12(b)(6) if the complaint does not include "'a short and plain statement of the claim showing that the pleader is entitled to relief.'"  *Id.* (quoting Fed. R. Civ. P. 8(a)(2)).  "'[S]tating a claim requires a complaint with enough factual matter (taken as true) to suggest' the required element."  *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 234 (3d Cir. 2008) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007)) (alteration adopted).  When a complaint's legal defects could not be cured by repleading, dismissal with prejudice is appropriate. *Lutz v. Portfolio Recovery Assocs., LLC*, 49 F.4th 323, 335 (3d Cir. 2022).

## V.   ARGUMENT

### A.   FINRA's Self-Regulatory Activities Do Not Violate The Private Nondelegation Doctrine (Count 1)

Plaintiffs' constitutional claims are pleaded "in the alternative."  Compl. ¶ 10. Plaintiffs argue in Count 1 that, if FINRA is "treated as a private actor," its disciplinary proceedings violate the private nondelegation doctrine.  *Id.* ¶¶ 10, 62-68. Plaintiffs are correct that FINRA is a "private corporation," *e.g.*, *id.* ¶¶ 4, 5, 25, 40, 63, 65, but their private nondelegation doctrine claim is legally baseless.

The private nondelegation doctrine only forbids "unchecked reassignments of power" from federal entities "to private entities."  *Oklahoma v. United States*, 163 F.4th 294, 305 (6th Cir. 2025).  But, as the Supreme Court recently reaffirmed,

private entities can permissibly play a role in regulatory programs if they "'function[ ] subordinately to,'" and under the "'authority and surveillance'" of, a governmental body. *FCC v. Consumers' Rsch.*, 606 U.S. 656, 692 (2025) (quoting *Sunshine Anthracite Coal Co. v. Adkins*, 310 U.S. 381, 399 (1940)). *Consumers' Research* rejected a similar private nondelegation challenge to the Universal Service Administrative Company ("USAC")—a private company assisting the Federal Communications Commission ("FCC")—because USAC is "broadly subordinate" to the FCC, which, upon request, reviews USAC actions "de novo." *Id.* at 692-93.

Like USAC, FINRA "'function[s] subordinately to'" a federal agency—the SEC—that "has 'authority and surveillance over [FINRA's] activities.'" *Kim v. FINRA*, 698 F. Supp. 3d 147, 154 (D.D.C. 2023); *see also In re NYSE Specialists Sec. Litig.*, 503 F.3d 89, 101 (2d Cir. 2007) (the SEC "retains formidable oversight power to supervise, investigate, and discipline" self-regulatory organizations); *supra* at 3-6. Following any disciplinary proceeding, FINRA must notify the SEC of its decision, which is then subject to *de novo* review by the SEC either acting *sua sponte* or upon request from the aggrieved party. 15 U.S.C. § 78s(d)(1)-(2), (e).

The SEC can exercise its oversight powers even before it is asked to review a final FINRA disciplinary decision. For example, the SEC could "abrogate, add to, and delete from" FINRA's rules to limit FINRA's discretion to begin investigations or initiate disciplinary proceedings. 15 U.S.C. § 78s(b)(1), (c). Such SEC-imposed

9

restrictions could include pre-clearance requirements before launching an investigation or filing an enforcement proceeding, or even prohibitions on targeting particular classes of conduct. *See Oklahoma*, 163 F.4th at 310 (explaining that similar agency authority over a private entity's enforcement activities defeated a private nondelegation challenge). That the SEC has not utilized this power over FINRA is not a sign of absenteeism; it is a tacit approval of FINRA's self-regulatory decisions across the whole lifecycle of a disciplinary matter. *See Consumers' Rsch.*, 606 U.S. at 695 ("the relevant legal question" for nondelegation purposes "is not how often the FCC revises [USAC]'s projections").

The SEC's "pervasive supervisory authority" cabins FINRA's regulatory authority to a constitutionally permissible subordinate role. *United States v. NASD, Inc.*, 422 U.S. 694, 733 (1975). Accordingly, "'in case after case,'" courts—including the Third Circuit—"'have upheld this arrangement' against private nondelegation challenges." *Kim*, 698 F. Supp. 3d at 166 (alteration adopted); *see, e.g.*, *Sorrell v. SEC*, 679 F.2d 1323, 1325-26 (9th Cir. 1982); *R.H. Johnson & Co. v. SEC*, 198 F.2d 690, 695 (2d Cir. 1952). In *Todd & Co. v. SEC*, 557 F.2d 1008 (3d Cir. 1977), the Third Circuit rejected a private nondelegation challenge to a disciplinary sanction imposed by FINRA's predecessor, the NASD, because the NASD's "rules and its disciplinary actions were subject to full review by the S.E.C." *Id.* at 1012-13; *see also First Jersey Sec.*, 605 F.2d at 697 (reaffirming *Todd*).

10

Because the FINRA-SEC relationship follows the same structure, *Todd* and *First Jersey Securities* control.

The D.C. Circuit's decision in *Alpine Securities Corp. v. FINRA*, 121 F.4th 1314 (D.C. Cir. 2024), is not to the contrary.  In Plaintiffs' preliminary-injunction briefing, they invoked the *dissenting* portion of Judge Walker's separate opinion in that case, *see* D.I. 6 at 9-10 ("Prelim. Inj. Br."), which predates *Consumers' Research* and does not bind the D.C. Circuit, much less this Court.  By contrast, the majority opinion was "narrow and limited."  121 F.4th at 1330.  It preliminarily enjoined any "expedited" expulsion from FINRA membership before the opportunity for SEC review but otherwise rejected private nondelegation objections to "any sanctions short of expulsion" and allowed FINRA's disciplinary proceeding to continue.  *Id.* at 1330-31.  The court also rejected Judge Walker's "'significant executive authority'" analysis because that inquiry—which Plaintiffs have embraced, Prelim. Inj. Br. 9—improperly "melds the private nondelegation doctrine with [the] Appointments Clause."  *Alpine*, 121 F.4th at 1328-29.  On remand, the district court explained that FINRA had modified its rules "to delay implementation of expulsion orders until after SEC review," which "remedies any issue that previously existed."  Slip Op. 43, *Scottsdale Cap. Advisors Corp. v. FINRA*, No. 1:23-cv-01506 (D.D.C. Apr. 23, 2026) ("*Scottsdale* Slip Op.," attached as Ex. A).

11

The district court thus dismissed the private nondelegation claim because, "[a]t every turn, FINRA is subordinate to the SEC." *Id.* at 45.

Here, where Plaintiffs do not face an "expedited" proceeding or potential immediate expulsion without SEC review, the SEC's comprehensive authority over FINRA satisfies the private nondelegation doctrine.

**B.      Plaintiffs' Other Constitutional Claims Fail Because FINRA Is Neither A State Actor Nor Engaged In State Action (Counts 2-5)**

Plaintiffs' other constitutional claims are viable only "[i]f FINRA is treated as a state actor." Compl. ¶ 10. But the conduct of private parties generally "lies beyond the Constitution's scope." *Edmonson*, 500 U.S. at 620. A private entity can "qualify as a state actor" for constitutional purposes only in "a few limited circumstances." *Manhattan Cmty. Access Corp. v. Halleck*, 587 U.S. 802, 809 (2019). Courts have "held without exception" that FINRA, like its predecessor the NASD, "is a private entity and not a state actor." *Mohlman v. FINRA*, 2020 WL 905269, at *6 (S.D. Ohio Feb. 25, 2020) (collecting cases), *aff'd*, 977 F.3d 556 (6th Cir. 2020); *see, e.g., Epstein*, 416 F. App'x at 148 (rejecting due process claim because the "'NASD is a private actor, not a state actor'"); *First Jersey Sec.*, 605 F.2d at 698 (similar). Plaintiffs' alternatively pleaded constitutional claims therefore fail because FINRA is not a "state actor," Compl. ¶¶ 6, 10; *id.* p. 17 (Request for Relief), nor is it engaged in state action when it exercises its self-regulatory responsibilities.

12

In *Lebron v. National Railroad Passenger Corp.*, 513 U.S. 374 (1995), the Supreme Court recognized a narrow, exceptional category of nominally private corporations—there, Amtrak—that are actually "part of the Government," and therefore subject to constitutional constraints, because the corporation was "create[d]" by the government "for the furtherance of governmental objectives" and the government "retains for itself permanent authority to appoint a majority of the directors of that corporation." *Id.* at 397, 400. Here, "the question is not close" because FINRA does not possess any of these unusual characteristics. *Scottsdale* Slip Op. 38; *see also supra* at 4-5. Thus, "*Lebron* is clearly distinguishable" because there "is no commonality between [FINRA] and Amtrak." *Perpetual Sec., Inc. v. Tang*, 290 F.3d 132, 138 (2d Cir. 2002) (NASD). The Complaint does not allege otherwise.

Separately, a private entity's conduct may be considered state action if it "exercis[es] powers that are 'traditionally the exclusive prerogative of the State.'" *Blum v. Yaretsky*, 457 U.S. 991, 1005 (1982). But "[h]istorical practice, as well as the statutory scheme, does not support" the notion that FINRA's self-regulatory responsibilities are a "traditionally exclusive governmental function." *Am. Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 56 (1999). To the contrary, private "[s]elf-regulation in the securities industry has existed for centuries." *Alpine*, 121 F.4th at 1337; *supra* at 3-4. That FINRA now exercises self-regulatory responsibilities

13

pursuant to the Exchange Act's statutory authorization does not nullify that history or convert FINRA's private conduct into state action.  As the Supreme Court has emphasized, "'that a private entity performs a function which serves the public does not make its acts governmental action.'" *S.F. Arts & Athletics, Inc. v. U.S. Olympic Comm.*, 483 U.S. 522, 544 (1987) (alterations omitted); *cf. Matrix Distribs., Inc. v. Nat'l Ass'n of Bds. of Pharmacy*, 34 F.4th 190, 196 n.3 (3d Cir. 2022) (government reliance on private entity to inform state decisions does not transform the private entity into a state actor).

Nor has the government "exercised coercive power" such that FINRA's actions may "be deemed to be that of the State." *Blum*, 457 U.S. at 1004.  The Complaint does not allege that the SEC has "coerc[ed]," *id.*, "act[ed] jointly with," *Halleck*, 587 U.S. at 809, or "'entwined'" itself with FINRA, *Brentwood Acad. v. Tenn. Secondary Sch. Athletic Ass'n*, 531 U.S. 288, 296 (2001)—either in general or with respect to the specific enforcement proceeding against Plaintiffs.  While the SEC *supervises* FINRA, "the government does *not* control FINRA's enforcement proceedings." *Kim*, 698 F. Supp. 3d at 165.  The requisite "nexus between the State and the challenged action of the regulated entity" is therefore missing.  *Blum*, 457 U.S. at 1004; *see, e.g.*, *McGinn, Smith & Co. v. FINRA*, 786 F. Supp. 2d 139, 147 (D.D.C. 2011) (no state action where "Plaintiffs have not alleged specific facts that demonstrate coercion or significant encouragement by the SEC").

14

The counterarguments Plaintiffs raised in their preliminary-injunction briefing do not alter this conclusion. Plaintiffs asserted that "FINRA is a quasi-governmental agency" with enforcement authority "derivative of and ultimately belonging to the SEC." Prelim. Inj. Br. 11. But Plaintiffs' argument relied on cases that simply describe the SEC's supervisory role and do not hold that the SEC's oversight changes FINRA's private activities into state action. *See Aslin v. FINRA*, 704 F.3d 475, 476 (7th Cir. 2013) (FINRA "is subject to significant SEC oversight"); *In re Series 7 Broker Qualification Exam Scoring Litig.*, 548 F.3d 110, 114 (D.C. Cir. 2008) (similar). Similarly, Plaintiffs noted that the SEC can "revoke FINRA's designation" as a national securities association and that the SEC must "approve[ ] all FINRA rules." Prelim. Inj. Br. 8, 11. But these are further examples of federal oversight, and "[m]ere approval" of "the initiatives of a private party is not sufficient to justify holding the State responsible for those initiatives." *Blum*, 457 U.S. at 1004-05. "[R]egulation—even detailed regulation, as we have here—does not equate to state action." *Crissman v. Dover Downs Ent. Inc.*, 289 F.3d 231, 243 (3d Cir. 2002) (en banc); *see also Halleck*, 587 U.S. at 816 (rejecting "the 'being heavily regulated makes you a state actor' theory of state action").

No case holds that FINRA is a state actor or otherwise subject to constitutional requirements—and every case addressing the issue has held to the contrary—which forecloses Plaintiffs' remaining claims.

15

**C.    The Court Lacks Subject Matter Jurisdiction Over Plaintiffs' Seventh Amendment And Due Process Claims (Counts 2 & 4)**

Plaintiffs' Seventh Amendment and due process claims suffer from an additional flaw:  The Court lacks subject matter jurisdiction over them.

The Exchange Act grants courts of appeals "exclusive" "jurisdiction" to review SEC orders, including those arising from FINRA disciplinary proceedings. 15 U.S.C. § 78y(a)(1); *see Scottsdale*, 844 F.3d at 419.  This grant of jurisdiction "divests district courts of their ordinary jurisdiction" under 28 U.S.C. § 1331, *Axon*, 598 U.S. at 185, and applies equally to "constitutional claims," *Elgin v. Dep't of Treasury*, 567 U.S. 1, 8 (2012).  Challenges to the constitutionality of FINRA disciplinary proceedings must therefore ordinarily follow that route:  exhaustion of FINRA's internal remedies, followed by an appeal to the SEC and then a petition for review to a U.S. Court of Appeals.  15 U.S.C. §§ 78s(d)(2), (e)(1), 78y(a)(1).

The narrow exception to this rule recognized in *Axon Enterprise v. FTC* is inapplicable to Plaintiffs' Seventh Amendment and due process claims.  *Axon* explained that "statutory schemes for agency review," like the Exchange Act, preclude district-court jurisdiction over all but a limited set of "extraordinary claims":  those alleging "'a here-and-now injury'" of being "subject[ ] to an illegitimate proceeding, led by an illegitimate decisionmaker," such as the challenges to removal restrictions for administrative law judges in *Axon*.  598 U.S.

16

at 180, 185, 191.  That inquiry requires considering the three factors identified in *Thunder Basin Coal Co. v. Reich*, 510 U.S. 200, 212, 215-16 (1994).

Although Plaintiffs invoke this narrow exception, Compl. ¶¶ 60-61, the *Thunder Basin* factors demonstrate *Axon*'s inapplicability to Plaintiffs' Seventh Amendment and due process claims.  *First*, Plaintiffs can receive "meaningful judicial review" because, after appealing any final FINRA decision to the SEC, Plaintiffs can raise those claims in a court of appeals.  *Blankenship v. FINRA*, 2024 WL 4043442, at *2 (E.D. Pa. Sept. 4, 2024), *aff'd on other grounds*, 2026 WL 64096 (3d Cir. Jan. 8, 2026).  This is the approach the challengers took in raising their Seventh Amendment claim in *SEC v. Jarkesy*, 603 U.S. 109, 118-19 (2024).

*Second*, these claims are "not wholly collateral" to the statutory review scheme because they challenge case-specific "actions" that will be "taken" in Plaintiffs' proceeding, *Blankenship*, 2024 WL 4043442, at *3, including FINRA's application of its procedures and evidentiary rules.  Plaintiffs' claims are thus "inextricably intertwined" with the "administrative process," *Vape Cent. Grp. v. FDA*, 2025 WL 637416, at *8 (D.D.C. Feb. 27, 2025), unlike the "far-reaching constitutional claims" in *Axon* that challenged the agency's "structure or very existence," 598 U.S. at 185, 189.

*Third*, these claims are "not outside of the SEC's expertise."  *Blankenship*, 2024 WL 4043442, at *3.  The SEC is an expert in FINRA's procedures and

17

"FINRA's authority to conduct hearings." *Alpine Sec. Corp. v. FINRA*, 2021 WL 4060943, at \*5 (D. Utah Sept. 7, 2021). And the SEC regularly considers and resolves both Seventh Amendment and due process questions. *E.g.*, *In re John Thomas Cap. Mgmt. Grp.*, 2020 WL 5291417, at \*27 (SEC Sept. 4, 2020), *vacated by Jarkesy v. SEC*, 34 F.4th 446 (5th Cir. 2022).

Accordingly, numerous decisions hold that Seventh Amendment and due process claims cannot be raised directly in district court where Congress has enacted an exclusive administrative review framework. *See*, *e.g.*, *Vape Cent. Grp.*, 2025 WL 637416, at \*6 (collecting Seventh Amendment cases); *Alpine Sec. Corp. v. Nat'l Sec. Clearing Corp.*, 2025 WL 901847, at \*5 (D. Utah Mar. 25, 2025) (due process). As in those cases, Plaintiffs' Seventh Amendment and due process claims are jurisdictionally barred.

### D. Plaintiffs' Other Constitutional Claims Also Fail On The Merits (Counts 2-5)

Even if FINRA were a state actor subject to the Constitution, and even if this Court had jurisdiction over all of Plaintiffs' claims, Counts 2-5 would each still fail on the merits.

**1.    FINRA Is A Private Entity Not Subject To The Constitution's Appointment Or Removal Requirements (Counts 3 & 5)**

Plaintiffs' Appointments Clause and removal-based separation-of-powers claims fail because those constitutional requirements only apply to a private entity when it is "part of the government" under *Lebron*, which FINRA is not.

Under the Appointments Clause, the President "shall appoint Ambassadors, other public Ministers and Consuls, Judges of the supreme Court, and all *other* Officers of the United States" who hold principal offices "established by Law." U.S. Const. art. II, § 2, cl. 2 (emphasis added).    Each listed example is a federal government official, confirming that the final catchall phrase also refers to officials employed by the federal government.  *See Yates v. United States*, 574 U.S. 528, 543-46 (2015) (plurality) (explaining *noscitur a sociis* and *ejusdem generis*).  Thus, as the Office of Legal Counsel has explained, the Appointments Clause does not apply to officers of a private entity unless that nominally private entity is actually "part of the government."  OLC, *The Test for Determining "Officer" Status Under the Appointments Clause* 7 (Jan. 16, 2025), https://www.justice.gov/olc/media/1385406/dl; *see also Kerpen v. MWAA*, 907 F.3d 152, 158-60 (4th Cir. 2018) (plaintiffs' "failure to meet the threshold of establishing [the Metropolitan Washington Airports Authority] as a federal entity" under *Lebron* was "fatal to their claims under the Appointments Clause").  FINRA is not part of the government

under *Lebron*. *See supra* at 12-13; *Scottsdale* Slip Op. 38. And the President's removal power—implicit in Article II and the separation of powers—is similarly limited to "executive officers," whom the President is "empower[ed]" to keep "accountable[ ] by removing them." *Free Enter. Fund v. PCAOB*, 561 U.S. 477, 483 (2010).

Moreover, these requirements apply only to "Officers of the United States" holding offices "established by Law." U.S. Const. art. II, § 2, cl. 2. Because the offices of FINRA hearing officers were established by FINRA through private rulemaking—not by statute—they are not "established by law." *Trump v. United States*, 603 U.S. 593, 645 (2024) (Thomas, J., concurring); *see also* FINRA Rule 9235; SEC, Order Approving Proposed Rule Change, Release No. 34-38908, 62 Fed. Reg. 43,385, 43,387 (Aug. 13, 1997) ("NASD Regulation has established an Office of Hearing Officers"). As the SEC has recognized, "FINRA's employees cannot be 'officers *of the United States*'" because the "Appointments Clause applies only when Congress creates an office *of the United States*" but "says nothing about . . . individuals who do *not* occupy a position established by Congress." *In re Newport Coast*, 2020 WL 1659292, at *17-18 (SEC Apr. 3, 2020).

### 2. FINRA Disciplinary Proceedings Do Not Implicate The Seventh Amendment (Count 2)

FINRA disciplinary proceedings do not implicate the Seventh Amendment right to a jury trial in federal court.

Congress may authorize non-Article III bodies to decide "actions that were 'not suits at common law or in the nature of such suits.'" *Jarkesy*, 603 U.S. at 137-38 (alterations omitted); *see, e.g., Atlas Roofing Co. v. OSHRC*, 430 U.S. 442, 449-61 (1977) (workplace-safety laws); *Axalta Coating Sys. LLC v. Fed. Aviation Admin.*, 144 F.4th 467, 475 (3d Cir. 2025) (hazardous material regulations, which brought "'no common law soil with them'"). The securities industry's self-regulatory procedures—which have historically provided for private adjudication of broker conduct—are not "the stuff of the traditional actions at common law." *Jarkesy*, 603 U.S. at 128. Nor do the charges in FINRA's disciplinary complaint against Plaintiffs, which allege violations of AML, supervisory, recordkeeping, and other SEC or FINRA rules, Disciplinary Complaint ¶ 1, 6-11, "borrow [their] cause of action from the common law," *Jarkesy*, 603 U.S. at 136. The mere fact that the rules include the term "reasonable" does not make those securities-industry standards of conduct analogous to common-law negligence claims. Compl. ¶ 71.

### 3. FINRA Disciplinary Proceedings Afford Sufficient Due Process (Count 4)

Plaintiffs' due process claim also fails on the merits.

Plaintiffs' allegation (at Compl. ¶ 85) that their FINRA adjudicator is unconstitutionally biased contravenes Supreme Court precedent rejecting "[t]he contention that the combination of investigative and adjudicative functions necessarily creates an unconstitutional risk of bias in administrative adjudication."

21

*Withrow v. Larkin*, 421 U.S. 35, 47 (1975).  When a body combines these functions, a court "must start . . . from the presumption" that the adjudicator is neutral, which a challenger must rebut "by a showing of conflict of interest."  *Schweiker v. McClure*, 456 U.S. 188, 195 (1982).  Plaintiffs have alleged no such conflict.

Plaintiffs' allegation (at Compl. ¶ 86) that FINRA's procedures deprive Plaintiffs of "core procedural protections" also fails because FINRA provides disciplinary-proceeding respondents with robust rights pursuant to procedures that the SEC itself has deemed "fair."  15 U.S.C. § 78o-3(b)(8); *see supra* at 5-6.  Those procedures fully comply with the due process requirement of an "opportunity to be heard 'at a meaningful time and in a meaningful manner.'"  *Mathews v. Eldridge*, 424 U.S. 319, 333 (1976).  For that reason, the First Circuit rejected a due process challenge to FINRA's procedures—without deciding the "pointless" question of state action—because "[b]y statute, FINRA was required to give [the challenging party] the substance of procedural due process." *Cody v. SEC*, 693 F.3d 251, 257 (1st Cir. 2012).

## VI.   CONCLUSION

Counts 2 and 4 of the Complaint should be dismissed for lack of subject matter jurisdiction under Rule 12(b)(1).  Because no amendment could save Plaintiffs' Complaint, all remaining claims over which this Court has subject matter jurisdiction should be dismissed with prejudice under Rule 12(b)(6).  *See Lutz*, 49 F.4th at 335.

OF COUNSEL:

Amir C. Tayrani
Alex Gesch
GIBSON, DUNN & CRUTCHER LLP
1700 M Street, N.W.
Washington, D.C.  20036
T: (202) 887-3692
atayrani@gibsondunn.com
agesch@gibsondunn.com

James R. Figliulo
Michael K. Desmond
SMITH, GAMBRELL & RUSSELL, LLP
155 N. Wacker Drive, Suite 3000
Chicago, Illinois  60606
T: (312) 360-6000
jfigliulo@sgrlaw.com
mdesmond@sgrlaw.com

Dated:  May 14, 2026

/s/ *Raymond J. DiCamillo*
Raymond J. DiCamillo (#3188)
Chad M. Shandler (#3796)
Christine Dealy Haynes (#4697)
RICHARDS, LAYTON & FINGER, P.A.
920 North King Street
Wilmington, Delaware  19801
T: (302) 651-7700
dicamillo@rlf.com
shandler@rlf.com
haynes@rlf.com

*Attorneys for Defendant Financial Industry Regulatory Authority, Inc.*

23

## CERTIFICATE OF COMPLIANCE

This brief complies with this Court's Standing Order Regarding Briefing In All Cases because the brief contains 4,995 words, as determined by the word-count function of Microsoft Word, and it uses 14-point Times New Roman Font.

Dated:        May 14, 2026                    */s/ Raymond J. DiCamillo*
Raymond J. DiCamillo (#3188)

24