## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| BOUSTEAD SECURITIES, LLC, | ) | |
| SUTTER SECURITIES, INC., and | ) | |
| KEITH MOORE, | ) | Case No. 26-0360-CFC |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| FINANCIAL INDUSTRY | ) | |
| REGULATORY AUTHORITY, INC., | ) | |
| | ) | |
| Defendant. | ) | |

## PLAINTIFFS' ANSWERING BRIEF IN OPPOSITION TO DEFENDANT'S MOTION TO TRANSFER VENUE

*Of Counsel:*

MICHAEL BEST & FREDRICH LLP

Richard F. Ensor*
650 S. Main St., Suite 500
Salt Lake City, UT 84101
(385) 695-6450
rfensor@michaelbest.com

Daniel Jozwiak*
675 15th Street, Suite 2000
Denver, CO 80202
(720) 398-0052
daniel.jozwiak@michaelbest.com

*Admitted *pro hac vice*

Dated: May 21, 2026

ASHBY & GEDDES

Randall J. Teti (#6334)
500 Delaware Avenue, 8th Floor
P.O. Box 1150
Wilmington, DE 19899
(302) 654-1888
rteti@ashbygeddes.com

*Counsel for Plaintiffs*

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ............................................................................... ii

BACKGROUND ............................................................................................... 2

LEGAL STANDARD ........................................................................................ 5

ARUGMENT ..................................................................................................... 6

    I.     Plaintiffs' Delaware Complaint Could Not Have Been Brought in the Northern District of Illinois ............................................................. 6

           a.  The Constitutional Claims Do Not Arise from FINRA's Illinois Employee ................................................................................... 7

           b.  A Real Question Exists Whether the Northern District of Illinois Has Personal Jurisdiction over Plaintiffs' Constitutional Claims .... 8

    II.    The *Jumara* Factors Do Not Support Transfer ...................................... 11

    III.   The Preliminary Injunction Anchors This Case in Delaware .................. 20

    IV.   FINRA's Remaining Arguments Lack Merit .......................................... 21

           a.  The Two Cases Do Not Challenge the "Same Self-Regulatory Conduct." .................................................................................. 21

           b.  The Stay Motion Does Not Support Transfer .............................. 22

           c.  FINRA's Footnotes Reveal its True Motive ............................... 22

CONCLUSION ................................................................................................. 23

# TABLE OF AUTHORITIES

Page(s)

Cases

*Axon Enterprise, Inc. v. Fed. Trade Comm'n*,
  598 U.S. 175 (2023) .................................................................... 4, 21

*Blackbird Tech LLC v. E.L.F. Beauty, Inc.*,
  2020 WL 2113528 (D. Del. May 4, 2020)........................................ 12

*Chavez v. Dole Food Co.*,
  836 F.3d 205 (3d Cir. 2016)........................................................... 12

*CTS Corp. v. Dynamics Corp. of Am.*,
  481 U.S. 69 (1987) ....................................................................... 20

*Daimler AG v. Bauman*,
  571 U.S. 117 (2014) ....................................................................... 9

*EEOC v. Univ. of Penn.*,
  850 F.2d 969 (3d Cir. 1988)........................................................... 23

*Fink v. Wilmington Tr., N.A.*,
  473 F. Supp. 3d 366 (D. Del. 2020)................................................. 9

*Firmani v. Clarke*,
  325 F. Supp. 689 (D. Del. 1971)..................................................... 17

*Hoffman v. Blaski*,
  363 U.S. 335 (1960) ....................................................................... 11

*In re Amendt*,
  169 F. App'x 93 (3d Cir. 2006) ...................................................... 17

*Jumara v. State Farm Insurance Company*,
  55 F.3d 873 (3d Cir. 1995)....................................................... passim.

*McKenna v. City of Phila.*,
  304 F. App'x 89 (3d Cir. 2008) ...................................................... 16

*Miley v. Hatteras Funds, L.P.*,
  2025 WL 3719680 (D. Del. Dec. 23, 2025)........................................................ 12

*O'Connor v. Sandy Lane Hotel Co.*,
  496 F.3d 312 (3d Cir. 2007)............................................................................. 9

*Round Rock Research, LLC v. Dell, Inc.*,
  904 F. Supp. 2d 374 (D. Del. 2012).................................................................. 19

*Salzberg v. Sciabacucchi*,
  227 A.3d 102 (Del. 2020) ................................................................................ 19

*Semcon Tech, LLC v. Intel Corp.*,
  2013 WL 126421 (D. Del. Jan. 8, 2013)........................................................... 19

*Shutte v. Armco Steel Corp.*,
  431 F.2d 22 (3d Cir. 1970).................................................................... 5, 6, 10

*Sunbelt Corp. v. Noble, Denton & Assoc.*,
  5 F.3d 28 (3d Cir. 1993)................................................................................... 8

*Tamburo v. Dworkin*,
  601 F.3d 693 (7th Cir. 2010)............................................................................ 9

*Ultravision Techs., LLC v. RMG Networks Holding Corp.*,
  2019 WL 1985110 (D. Del. May 6, 2019).......................................................... 14

*Upjohn Co. v. Riahom Corp.*,
  1986 WL 7515 (D. Del. 1986) .......................................................................... 20

*Van Dusen v. Barrack*,
  376 U.S. 612 (1964) .............................................................................. 1, 4-5

*Weisler v. Barrows*,
  2006 WL 3201882 (D. Del. Nov. 6, 2006) ......................................................... 17

*Williams v. Netflix, Inc.*,
  2023 WL 3478568 (D. Del. May 16, 2023)............................................... 6, 10-11

Statutes

28 U.S.C. § 1404(a) ................................................................................... passim.

iii

FINRA is a Delaware corporation that exercises governmental authority by prosecuting alleged violations of federal securities laws and administrative rules through its own in-house hearing officers. Plaintiffs chose to file this case in Delaware—FINRA's state of incorporation—to challenge the constitutionality of that conduct. Plaintiffs also filed a motion for preliminary injunction (D.I. 5), which is now fully briefed and pending for decision. In a different case in the Northern District of Illinois, two of three Plaintiffs asserted state-law tort claims arising from different conduct, including FINRA's misrepresentations to securities exchanges, which predated the disciplinary proceeding Plaintiffs dispute here.

FINRA now asks this Court to transfer the constitutional case to Illinois so that both matters can proceed in the same venue. But contrary to the arguments in its Opening Brief (D.I. 26) ("**Br.**"), FINRA does not seek a transfer to promote judicial efficiency. Plaintiffs offered to consolidate the Illinois case with this Delaware matter to address any purported efficiency concerns. FINRA was initially receptive to Plaintiffs' proposal, but only if Plaintiffs agreed to accomplish the consolidation on its timeline and by dismissing the Illinois case instead of transferring it—a procedural mechanism that would provide FINRA with a tactical advantage by stripping the Illinois plaintiffs of the protections provided in *Van*

1

*Dusen v. Barrack*, 376 U.S. 612 (1964).[1] FINRA ultimately rejected Plaintiffs' proposal and stood on its Motion to Transfer (the "**Motion**") (D.I. 25).

FINRA's Motion independently fails. FINRA has not established that Plaintiffs had an unqualified right to bring this action in Illinois because the constitutional claims here challenge FINRA's adjudicatory structure, and not any conduct by a FINRA employee in Chicago. But even if FINRA met Section 1404's threshold, the *Jumara* factors weigh decisively against transfer: the two cases present different facts, claims, evidence, and legal questions, and seek dramatically different remedies.

## BACKGROUND

On January 15, 2026, Plaintiffs Boustead and Sutter (the "**Companies**"), but not Keith C. Moore ("**Moore**"), filed suit in the Northern District of Illinois asserting state-law tort claims arising from FINRA's interference with their limited underwriting membership applications submitted to the Nasdaq and NYSE exchanges.[2] The Illinois Amended Complaint alleges that certain FINRA personnel misrepresented to Nasdaq and NYSE that Plaintiffs were subject to a FINRA

---

[1] *Van Dusen* provides that a transferee court must apply the choice-of-law rules of the transferor court, ensuring a transfer does not result in a change of the substantive law governing the case, preventing parties from gaining a "change of law as a bonus for a change of venue." 376 U.S. at 635-36.

[2] The Companies filed an Amended Complaint on April 22, 2026 (hereinafter "**the Illinois Amended Complaint**" or "**Ill. Compl.**").

2

"regulatory matter," induced those exchanges to deny or condition membership and listing approvals, and coerced Plaintiffs to withdraw membership applications under the threat of reportable denials. *See, e.g.*, Ex. B to Jozwiak Decl., ¶¶ 33-39, 41-43, 50-60, 85-91. The claims sound in tortious interference, fraud, and related state-law theories, and the Companies seek damages caused by FINRA's conduct.

The Illinois Amended Complaint focuses on conduct that occurred prior to FINRA's initiating an enforcement proceeding against Plaintiffs and specifically states that "this Complaint is limited to challenging FINRA's unlawful and ultra vires commercial interference with the Companies' exchange participation, membership applications, and underwriting opportunities, and not the constitutionality of FINRA's authority to bring that separate enforcement proceeding." *Id.* at ¶ 96. FINRA's Motion ignores this express limitation in the Illinois Amended Complaint.

On April 1, 2026, Plaintiffs—including Moore—filed this suit asserting constitutional claims challenging FINRA's authority to prosecute and adjudicate disciplinary proceedings against them. The claims arise from the filing of FINRA's disciplinary complaint against Plaintiffs, which produced a unique set of constitutional injuries. (D.I. 1). Those injuries include requiring Plaintiffs to participate in an in-house adjudication without the protection of Article III, without a jury, and conducted by a party exercising federal enforcement authority without

3

adequate supervision or pervasive federal surveillance. Accordingly, Plaintiffs claim that FINRA's adjudicatory scheme is unconstitutional under the Appointments Clause, the private nondelegation doctrine, the Seventh Amendment, the Due Process Clause, and under separation of powers principles. (D.I. 1, ¶¶ 63-93).

Plaintiffs simultaneously filed a motion for preliminary injunction, which is fully briefed and pending before this Court. (D.I. 5). That motion seeks emergency relief from the ongoing injury caused by the disciplinary proceeding that the Supreme Court in *Axon Enterprise, Inc. v. Fed. Trade Comm'n*, 598 U.S. 175 (2023) recognized as a "here-and-now" injury—relief that is distinctly different from the remedies sought in the Illinois Amended Complaint.

The parties conferred regarding the Motion in accordance with DLR 7.1.1, and Plaintiffs offered to consolidate the two matters in Delaware. Ex. A at 7-8. FINRA was receptive to consolidation in Delaware, but only if the Companies voluntarily dismissed the Illinois action and amended their complaint here to reassert their tort claims. *Id.* at 7. That approach, however, would strip the Companies of the protections afforded by *Van Dusen*, including Illinois' five-year limitations period for the operative tort claims. Plaintiffs offered to consolidate the cases by filing an unopposed Section 1404 motion and relating the two cases in this Court. FINRA rejected that proposal. *Id.* at 5. Plaintiffs then offered to accept FINRA's dismiss-and-amend framework provided that FINRA agree to a joint stipulation providing

Plaintiffs with the *Van Dusen* safeguards. *Id.* at 2-3. FINRA rejected that proposal, too. *Id.* at 1. In short, the parties initially agreed that both matters could proceed in Delaware, but reached an impasse based on FINRA's insistence that consolidation occur only under a procedure that favored FINRA and was detrimental to Plaintiffs' substantive rights.

Plaintiffs submit that this impasse is revealing. A party rejecting consolidation in its own state of incorporation—while simultaneously arguing to this Court that judicial efficiency warrants transfer, *see* Br. at 3, 15, 18—is not genuinely pursuing efficiency.

## LEGAL STANDARD

A district court may transfer an action pursuant to 28 U.S.C. § 1404(a) to any other judicial district where a plaintiff had an "unqualified right" to bring the action at the time of the action's commencement. *Shutte v. Armco Steel Corp.*, 431 F.2d 22, 24 (3d Cir. 1970), *cert denied*, 401 U.S. 910 (1971). Assuming this threshold is satisfied, courts evaluate whether the convenience of the parties and the interest of justice favor a transfer under the twelve factors in *Jumara v. State Farm Insurance Company*, 55 F.3d 873 (3d Cir. 1995). Although the court has "broad discretion to determine, on an individualized, case-by-case basis, whether convenience and fairness considerations weigh in favor of transfer," *id.* at 883, the moving party bears the burden of establishing that transfer is warranted, *id.* at 879, and a plaintiff's

choice of forum is the most important consideration. *Shutte*, 431 F.2d at 25 ("It is black letter law that a plaintiff's choice of a proper forum is a paramount consideration in any determination of a transfer request, and that choice should not be lightly disturbed.").

## ARGUMENT

### I.    Plaintiffs' Delaware Complaint Could Not Have Been Brought in the Northern District of Illinois.

FINRA's Motion fails to satisfy the threshold standard under Section 1404, that Plaintiffs had an "unqualified right to bring the action in the transferee district at the time when suit was filed." *Shutte*, 431 F.2d at 24. As this Court recognized, "[i]f there is a 'real question' whether a plaintiff could have commenced the action originally in the transferee forum, it is evidence that [the plaintiff] would not have an unqualified right to bring [its] cause in the transferee forum." *Williams v. Netflix, Inc.*, 2023 WL 3478568, at *1-2 (D. Del. May 16, 2023) (quoting *Shutte*, 431 F.2d at 24). In *Williams*, this Court denied transfer where the movant could not demonstrate that personal jurisdiction in the transferee forum was free from doubt, holding that the existence of a "real question" about the reach of the transferee forum's long-arm statute was insufficient to satisfy *Shutte's* threshold. *Id.* at *2.

FINRA has not established that Plaintiffs had an unqualified right to bring this action in the Northern District of Illinois. At a minimum, there is a real question as

6

to whether specific personal jurisdiction exists for the constitutional claims Plaintiffs assert here.

    **a. The Constitutional Claims Do Not Arise from FINRA's Illinois Employee.**

FINRA's jurisdictional argument heavily relies on its unsupported assertion that a Chicago-based FINRA employee "played a critical role in FINRA's investigation that culminated in the FINRA disciplinary complaint against the Companies." Br. at 11-12. On that basis, FINRA contends that "Plaintiffs are expressly challenging the constitutionality of FINRA's Chicago-directed 'investigat[ion]' of them, as well as the disciplinary proceeding that arose from that investigation, and that their claims therefore 'arise out of or relate to' FINRA's 'contacts with' Illinois." *Id.* at 12.

FINRA's argument conflates Plaintiffs' Illinois claims with the complaint here. In Illinois, the Companies allege *inter alia* that FINRA personnel in Chicago, *while investigating* Plaintiffs, directed tortious communications to exchanges and other market participants, misrepresented the existence and scope of a "regulatory matter," and coerced Plaintiffs into withdraw their exchange membership applications, giving rise to specific personal jurisdiction for state-law tort claims,. Ex. B, ¶¶ 96-128. This case, however, challenges the constitutionality of FINRA's *prosecutorial and adjudicative authority* in its disciplinary proceeding, specifically, whether FINRA's Hearing Officers are properly appointed under Article II, whether

the nondelegation doctrine prohibits FINRA from exercising executive branch power without sufficient SEC oversight, whether the Seventh Amendment entitles Plaintiffs to a jury trial, and whether FINRA's adjudicatory processes satisfy the Due Process Clause. (D.I. 1), ¶¶ 62-93. The latter presents a structural challenge to FINRA's adjudicatory authority, administered through FINRA's Office of Hearing Officers, not FINRA's Chicago office.[3] The claims here do not arise from anything any FINRA employee did in Chicago; they arise from FINRA's filing of its disciplinary complaint months after the conduct implicated in Illinois occurred. *Id.*, ¶¶ 1-2, 8-9, 39, 41, 52, 56, 58.

### b. A Real Question Exists Whether the Northern District of Illinois Has Personal Jurisdiction over Plaintiffs' Constitutional Claims.

In weighing whether an action could have been brought in the transferee forum, the Third Circuit recognizes that the transferee court must have personal jurisdiction over a defendant. *Sunbelt Corp. v. Noble, Denton & Assoc.*, 5 F.3d 28, 33 (3d Cir. 1993). FINRA never analyzes whether personal jurisdiction would exist in Illinois for Plaintiffs' constitutional claims standing alone. Instead, it treats the Illinois Complaint's jurisdictional allegations as if they establish jurisdiction for both

---

[3] *See* https://www.finra.org/rules-guidance/adjudication-decisions/office-hearing-officers-oho/about (last accessed May 20, 2026) ("OHO is an independent office within FINRA that employs professional Hearing Officers who preside over disciplinary and expedited actions commenced by FINRA's Enforcement Department. **OHO is located in FINRA's Washington, D.C. office and is physically separated from other FINRA departments.**") (emphasis added).

cases. Br. at 10-12 (relying on the Illinois Amended Complaint's allegations that FINRA is subject to jurisdiction "because the causes of action arise from FINRA's commission of tortious acts within the State of Illinois"). But those allegations merely establish jurisdiction for the state-law tort claims—which *do* arise from Chicago-directed conduct—not for the constitutional claims, which arise from FINRA's adjudicatory structure's constitutional deficiencies.

To exercise personal jurisdiction, a court must possess either general or specific jurisdiction. *Fink v. Wilmington Tr., N.A.*, 473 F. Supp. 3d 366, 372 (D. Del. 2020). For a corporation, the place of incorporation and principal place of business are "paradigm bases for general jurisdiction." *Daimler AG v. Bauman*, 571 U.S. 117, 137 (2014). Specific jurisdiction exists where a defendant purposefully directs its activities at the forum state or conducts business in that state, and a plaintiff's injuries "arise out of or relate to the defendant's contacts" with the forum. *Tamburo v. Dworkin*, 601 F.3d 693, 702 (7th Cir. 2010); *O'Connor v. Sandy Lane Hotel Co.*, 496 F.3d 312, 318 (3d Cir. 2007).

FINRA does not argue that it is subject to general jurisdiction in Illinois, and FINRA identifies no allegations in the Complaint here evincing specific contacts with Illinois supporting specific jurisdiction over Plaintiffs' constitutional claims. FINRA's contacts with Illinois, as alleged in the Illinois Amended Complaint, consist of maintaining an office in Chicago from which personnel participated in the

9

*investigation* of Plaintiffs. But this case does not challenge that investigation specifically. It challenges FINRA's improper exercise of executive power through prosecutorial and adjudicatory functions without the constitutionally required government supervision and surveillance as well as other constitutional defects. Moreover, if FINRA's prosecution and adjudication efforts involve Illinois contacts, FINRA failed to identify those contacts or otherwise inform Plaintiffs what those contacts might be.

In support of its argument for specific jurisdiction, FINRA cites to one word in paragraph 63 of the Delaware complaint: "investigation." Br. at 12 (brackets omitted). That word describes the scope of FINRA's unconstitutional authority in general terms and is not an allegation that the claims arise from any particular geographic contact or any specific investigation. And, even if paragraph 63 introduces some ambiguity about the geographic nexus between the claims and Illinois, ambiguity is precisely what triggers the "real question" under *Shutte* and *Williams*. The constitutional injury is FINRA's process itself, not any particular investigatory act taken in a particular city that may have led to FINRA exercising the challenged prosecutorial and adjudicatory powers.

In any case, the adjudication is a separate process, venued in California, and staffed by different FINRA personnel—hearing officers, panelists, and other support staff—whose identities and locations were not known to Plaintiffs at the time of

10

filing.[4] The only conceivable connection FINRA can point to is that one prosecutor, Jena Levin, appeared at FINRA's Initial Prehearing Conference on April 16, after Plaintiffs filed their complaint here. What role Levin may have in initiating and prosecuting the adjudication was and is not known to Plaintiffs.

FINRA offers that it "did not contest personal jurisdiction or venue" in Illinois. Br. at 7 (citing Apr. 1 filing). But "the Supreme Court expressly rejected the argument that a defendant's *post hac* consent to personal jurisdiction in a transferee district satisfies the requirements of Section 1404(a)." *Williams*, 2023 WL 3478568 at *1 (quoting *Hoffman v. Blaski*, 363 U.S. 335 (1960)) ("We do not think the § 1404(a) phrase 'where it might have been brought' can be interpreted to mean, as petitioners' theory would require, "where it may now be rebrought, with defendants' consent.") (brackets omitted)).

Accordingly, because there is a real question regarding whether Plaintiffs had an unqualified right to bring this action in Illinois, FINRA fails to meet the threshold requirement under Section 1404.

## II. The *Jumara* Factors Do Not Support Transfer.

The *Jumara* factors weigh decisively against transfer.

**Factor 1 (Plaintiff's Choice of Forum).** Plaintiffs chose to bring this action in Delaware—the state where FINRA is incorporated—to challenge FINRA's

---

[4] *See supra*, n.3.

constitutional authority to prosecute and adjudicate disciplinary complaints. This Court has found this factor is of paramount importance and entitled to substantial deference. *See, e.g.*, *Miley v. Hatteras Funds, L.P.*, 2025 WL 3719680, at \*6 (D. Del. Dec. 23, 2025) ("Plaintiffs' choice of this forum [i]s a paramount consideration"); *Blackbird Tech LLC v. E.L.F. Beauty, Inc.*, 2020 WL 2113528, at \*2 (D. Del. May 4, 2020) (finding it "difficult to understand why the plaintiff's choice in and of itself merits less weight when the plaintiff has no ties to the selected forum or even when the facts underlying the controversy occurred elsewhere.").

FINRA attempts to diminish this deference by arguing that the Companies "voluntarily filed" another lawsuit against FINRA in the Northern District of Illinois and thus "cannot credibly object to litigating claims arising from FINRA's investigation in that district." Br. at 21. But that argument assumes a premise that FINRA failed to establish, namely, that this case and the Illinois case present overlapping legal issues. As explained *supra* pp. 7-8, they do not. A plaintiff's right to choose a forum for a particular set of claims is not forfeited merely because it has chosen a different forum for a different set of claims. *Chavez v. Dole Food Co.*, 836 F.3d 205, 220 (3d Cir. 2016) (noting that where a second-filed suit is not duplicative, a court "has an obligation … to take jurisdiction over the plaintiffs' claims.") (internal citation omitted).

12

**Factor 2 (Defendant's Preference).** FINRA is a Delaware corporation asking a Delaware court to transfer this case out of Delaware. Its stated preference for the Northern District of Illinois carries minimal weight under these circumstances, particularly considering FINRA's rejection of Plaintiffs' offer to consolidate both cases here. By refusing consolidation in its home state while simultaneously seeking transfer elsewhere, FINRA cannot plausibly claim that its preference reflects genuine concerns about efficiency rather than a strategic calculation.

**Factor 3 (Where Claims Arose).** FINRA argues this factor favors transfer because the Illinois complaint alleges "communications and decisions [were] directed by FINRA personnel located in Chicago, Illinois." Br. at 11 (citing Ill. Compl.'s jurisdictional paragraph). Here, again, FINRA describes only the conduct underlying the Illinois tort claims, not the constitutional claims in this case. Unlike a tort claim arising from a specific communication made by specific persons in a particular city, constitutional claims, as alleged here, do not "arise" in a particular geographic location. The Appointments Clause does not turn on where an investigator sits, the nondelegation doctrine does not vary by district, and the Seventh Amendment's right to a jury trial does not attach or disappear based on geographic location.

13

Here, however, FINRA's own By-Laws expressly provide that its Executive Committee (including its CEO and Chair of the Board) exercises authority "to the fullest extent permitted by the General Corporation Law of the State of Delaware," FINRA By-Laws, Art. IX, Sec. 4(a),[5] and FINRA's corporate existence, governance structure, and the powers it exercises as a self-regulatory organization all derive from and are organized under Delaware law. (*See, e.g.*, D.I. 1, ¶¶ 25, 28-30). As Plaintiffs allege here, "FINRA's [OHO] reports directly to FINRA's Chief Executive Officer and that only the CEO may terminate a Hearing Officer," *id.*, ¶ 34, and correspondingly, "FINRA's Hearing Officers exercise broad authority over the course of disciplinary proceedings." *Id.*, ¶ 35. While Plaintiffs did not assert any claims under Delaware law, to the extent Plaintiffs' claims "arose" anywhere, they can be deemed to have arose in the state whose laws give FINRA its corporate existence. This factor weighs against transfer.

**Factors 4 and 5 (Convenience of the Parties and Witnesses).** This Court has recognized that absent "some showing of a unique or unexpected burden, a company should not be successful in arguing that litigation in its state of incorporation is inconvenient." *Ultravision Techs., LLC v. RMG Networks Holding Corp.*, 2019 WL 1985110, at *2 (D. Del. May 6, 2019) (internal citation omitted).

---

[5]    *See*    https://www.finra.org/rules-guidance/rulebooks/corporate-organization/executive-committee (last accessed May 20, 2026).

14

FINRA identified no "unique or unexpected burden" in litigating this case in Delaware.

FINRA concedes that the convenience of the parties does not favor transfer. Br. at 19. FINRA further concedes that it "does not anticipate that either case will reach trial and therefore focuses on the convenience of the parties, rather than the witnesses." *Id.* at 13, n.3. But to the extent Plaintiffs' constitutional claims require factual development—which they will, for example with respect to the nondelegation claim's inquiry into the adequacy of SEC oversight and the due process claim's inquiry into the structure and operation of FINRA's adjudicatory process—the relevant witnesses are not in Chicago. They are in FINRA's headquarters, at the SEC, and at FINRA's Office of Hearing Officers, all presumably located in Washington and/or on the East Coast.

If these factors have any bearing on the transfer analysis, they weigh against transfer.

**Factor 6 (Books and Records); Factor 7 (Enforceability of Judgment).** Plaintiffs agree these factors are neutral.

**Factor 8 (Practical Considerations).** FINRA argues that "the most important factor is the avoidance of duplicative litigation" and that the "factual overlap" between the two cases "overwhelmingly counsels in favor of transfer." Br. at 10, 13.

15

That argument rests on the false premise that the two cases present overlapping legal issues and overlapping evidence. They do not.

The Illinois case will require extensive fact discovery, and the Companies will depose FINRA personnel about what they told Nasdaq and NYSE, when they said it, and whether those communications were in violation of the SEC-approved 17d-2 Plans. The Companies will marshal evidence about the business opportunities they lost as a result of those misrepresentations, and they will likely need expert testimony to quantify damages. The litigation will turn on factual questions—who said what, when, and with what authority and to what impact—resolved through witness credibility determinations and documentary evidence.

Here, however, whether FINRA's Hearing Officers are properly appointed under Article II does not require deposing FINRA investigators; whether FINRA's exercise of enforcement power violates the nondelegation doctrine does not depend on testimony from Illinois-based personnel about what they told securities exchanges; and whether the Seventh Amendment entitles Plaintiffs to a jury trial does not involve a damages analysis or expert testimony. There is minimal, if any, subject matter overlap between the two matters. *Compare*, D.I. 1, ¶¶ 62-93, *with*, Ex. B, ¶¶ 103-128; *but cf. McKenna v. City of Phila.*, 304 F. App'x 89, 92 (3d Cir. 2008) (holding that two actions involve the same subject matter only where both rely on "the same operative facts *and* legal principles") (emphasis added). FINRA's own

16

authorities confirm this: the parallel suits in *In re Amendt* were "mirror images of each other," "based upon the same transactions and alleged misrepresentations" in *Firmani*, and "based upon substantially the same transactions and occurrences" in *Weisler*, none of which applies here. Br. at 10, 13-15; *In re Amendt*, 169 F. App'x 93, 95 (3d Cir. 2006); *Firmani v. Clarke*, 325 F. Supp. 689, 692 (D. Del. 1971); *Weisler v. Barrows*, 2006 WL 3201882, at *3 (D. Del. Nov. 6, 2006).

FINRA's assertion that "parallel federal cases *could* produce inconsistent rulings" illustrates the weakness of its position, Br. at 16 (emphasis added), but FINRA never identifies any ruling that might conflict. For example, FINRA identifies no reason for why a potential ruling in Illinois that FINRA fraudulently coerced the Companies to withdraw their membership applications would be inconsistent with this Court's potential ruling that FINRA violates, for example, the Seventh Amendment's jury trial provisions.

FINRA's claim preclusion argument is similarly unavailing. FINRA cautions that "once either case reaches final judgment, there will be a strong argument that the claims in the other case are barred by claim preclusion." Br. at 17 (citation omitted). But FINRA nowhere provides what claims might be barred by claim preclusion. In short, success or failure in either case will have no impact on the claims in the other.

17

Plaintiffs' offer to consolidate both cases here does not undermine any of these points. Consolidation under Rule 42 is a tool courts routinely use for cases involving different legal questions but the same parties or overlapping background facts. Offering administrative convenience to FINRA is not an admission that the cases present overlapping factual and legal issues warranting transfer under Section 1404 and the strong preference in favor of Plaintiffs' selected forum.

**Factor 9 (Court's Administrative Difficulty due to Court Congestion).** Although the Northern District of Illinois technically has a higher per-judge workload than the District of Delaware, Plaintiffs acknowledge that weighted filings do not always accurately reflect the burdens imposed by the patent cases regularly adjudicated in this Court. This case, however, does not require anywhere near the burdens imposed by a typical patent proceeding.

**Factor 10 (Local Interests).** FINRA argues that "Illinois' interest in this case is materially stronger than Delaware's interest because FINRA's *investigation* of Plaintiffs was directed from Illinois." Br. at 19 (emphasis added, citing Ill. Compl.'s jurisdictional paragraph). But FINRA points to no claims here premised on conduct that occurred in Illinois..

Here, FINRA is incorporated in Delaware. Unlike the plaintiff in *Jackson* who was subjected "to harmful toxins" in Florida, *cf.* Br. at 19, FINRA's incorporation in Delaware is the source of its corporate existence and authority that Plaintiffs allege

18

FINRA is unconstitutionally exercising, and that distinction gives Delaware an interest in this litigation that no other forum shares.

**Factor 11 (Public Policy of the Fora).** FINRA argues that "Illinois and Delaware have minimal state-specific public policy interests in this case" and ends its reasoning there. Br. at 19-20. This Court previously held that Delaware's public policy of encouraging Delaware corporations to resolve disputes in Delaware courts does not weigh against transfer when the Delaware corporation is the defendant and does not wish to litigate here. *Round Rock Research, LLC v. Dell, Inc.*, 904 F. Supp. 2d 374 (D. Del. 2012); *Semcon Tech, LLC v. Intel Corp.*, 2013 WL 126421 (D. Del. Jan. 8, 2013)). *Dell* and *Semcon* involved patent disputes where the defendant's incorporation in Delaware was substantively incidental to the claims at issue and did not involve the defendant's exercise of authority by virtue of their incorporation in Delaware.

Here, however, Plaintiffs challenge the constitutional authority of a Delaware corporation to prosecute and adjudicate alleged violations of federal securities laws. Delaware's interest is not the general policy of providing a convenient forum for its domestic corporations; it is the more specific interest of an incorporating state ensuring that entities organized under its laws operate lawfully. *E.g. Salzberg v. Sciabacucchi*, 227 A.3d 102, 127 (Del. 2020) ("A State has an interest in promoting stable relationships among parties involved in the corporations it charters.") (citing

*CTS Corp. v. Dynamics Corp. of Am.*, 481 U.S. 69, 81 (1987)). That interest belongs to Delaware, not FINRA, and is not extinguished just because FINRA prefers to litigate elsewhere. This factor does not favor transfer.

**Factor 12 (Familiarity with State Law).** Plaintiffs agree that this factor is neutral, as this case involves only federal constitutional claims.

FINRA has failed to carry its burden. Factor 1 weighs heavily against transfer. Factors 3, 4, 5, 8, 9, 10 and 11 similarly weigh against transfer. The remainder are neutral, and only Factor 2 could weigh in FINRA's favor.

## III.   The Preliminary Injunction Anchors This Case in Delaware.

The parties have a fully briefed motion for preliminary injunction pending before this Court. Transfer would abruptly require another judge to inherit an extensive set of briefing on new constitutional issues and could require re-briefing entirely. FINRA fails to address this issue in its opening brief. Asking this Court to transfer a case with a pending request for preliminary injunctive relief without addressing how or when the request will be addressed after transfer does not serve the interest of justice, especially considering that FINRA's Hearing Officer refused to stipulate to a stay of the underlying enforcement proceedings to even give this Court time to rule on that injunction motion. *See Upjohn Co. v. Riahom Corp.*, 1986 WL 7515, at *2 (D. Del. 1986) (denying transfer motion based in part on pending motion for preliminary injunction); Ex. C.

20

Moreover, further delay in resolving this dispute compounds the "here-and-now" injury *Axon* identifies. Resetting the clock on a motion for preliminary injunction that is already pending here only further prejudices Plaintiffs.

## IV.   FINRA's Remaining Arguments Lack Merit.

### a. The Two Cases Do Not Challenge the "Same Self-Regulatory Conduct."

FINRA's own motion draws the distinction that Plaintiffs press throughout this brief. FINRA describes the Illinois case as asserting "state-law tort claims based on actions FINRA allegedly took" and this case as asserting "federal constitutional claims." Br. at 2-3, 8. Those are different claims, different legal theories, with different categories of evidence and different remedies. The Illinois Amended Complaint reinforces the point, expressly disclaiming any constitutional challenge to the enforcement proceeding. Ex. B, ¶ 96. The Illinois case is about whether FINRA personnel lied to exchanges about a "regulatory matter," a factual question of commercial tort law that requires proof of who said what to whom. This case, contrastingly, is about what the Constitution permits and does not permit.

FINRA's Motion fails to identify how the "self-regulatory" conduct alleged in Illinois relates, in any way, to Plaintiffs' claims here. The two cases do not share a common legal question. This distinction is further underscored by FINRA's assertion of qualified immunity in Illinois, a defense with no application to the structural constitutional claims here. *See* Ex. D at 20-25.

21

### b.  The Stay Motion Does Not Support Transfer.

FINRA devotes significant attention to Plaintiffs' motion to stay the FINRA disciplinary proceeding, quoting Plaintiffs' argument that forcing a party to "litigate on two fronts simultaneously imposes an asymmetrical burden that undermines the fairness of both proceedings by splitting [the party's] time and efforts between the two." Br. at 15. That argument, however, was made in a fundamentally different context. The stay motion asked FINRA's Hearing Officer to pause an internal administrative proceeding pending judicial review of a constitutional challenge to the underlying proceeding's legitimacy after FINRA refused to stipulate to such a stay. It addressed the relationship between a federal court and an administrative tribunal whose authority is in question, not the relationship between two federal courts adjudicating different legal claims arising from different facts.

### c.  FINRA's Footnotes Reveal its True Motive.

Two footnotes in FINRA's Motion reveal its intent. Footnote 1 argues that "no federal court currently has subject-matter jurisdiction over several of Plaintiffs' unexhausted claims." Br. at 11, n.1. That is an argument about administrative exhaustion, not judicial efficiency, and referencing it in a transfer motion implies FINRA's preference for the Seventh Circuit. A preference for a particular circuit's law is not a proper basis for transfer under Section 1404. Footnote 5 is equally telling: FINRA concedes that "these specific concerns could also be addressed if the

22

Northern District of Illinois action were transferred to the District of Delaware." *Id.* at 18, n.5.[6]

Yet here, FINRA rejected Plaintiffs' offer to consolidate the two cases in Delaware under a stipulated motion to transfer procedure, embedded an administrative exhaustion argument in a transfer brief, and conceded in its own footnote that Delaware consolidation would address every efficiency concern it raised. But even when Plaintiffs accepted FINRA's preferred dismiss-and-amend procedure, subject to a stipulation that would preserve substantive protections that would attach under a Section 1404(a) transfer, FINRA refused. By admitting that the problem could have been solved in FINRA's home forum but nonetheless asking this Court to transfer the case, FINRA is not requesting the Court to exercise discretion in the interest of justice or judicial efficiency. It is asking the Court to exercise discretion in service of FINRA's litigation strategy.

## CONCLUSION

The Motion should be denied.

---

[6] The "first-filed rule" gives a court power to enjoin multiple proceedings "involving the *same parties* and the *same issues* already before another district court." *EEOC v. Univ. of Penn.*, 850 F.2d 969, 971-72 (3d Cir. 1988) (emphasis added).

23

*Of Counsel:*

MICHAEL BEST & FREDRICH LLP

Richard F. Ensor*
650 S. Main St., Suite 500
Salt Lake City, UT 84101
(385) 695-6450
rfensor@michaelbest.com

Daniel Jozwiak*
675 15th Street, Suite 2000
Denver, CO 80202
(720) 398-0052
daniel.jozwiak@michaelbest.com

*Admitted *pro hac vice*

Dated: May 21, 2026

ASHBY & GEDDES

*/s/ Randall J. Teti*
Randall J. Teti (#6334)
500 Delaware Avenue, 8th Floor
P.O. Box 1150
Wilmington, DE 19899
(302) 654-1888
rteti@ashbygeddes.com

*Counsel for Plaintiffs*

24

## CERTIFICATION

The undersigned hereby certifies that the foregoing Answering Brief in Opposition to Defendant's Motion to Transfer Venue contains 4,995 words, excluding the cover page, tables, and signature blocks, and that it complies with the Court's type, font, and word limitation requirements.

*/s/ Randall J. Teti*
Randall J. Teti