**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| BOUSTEAD SECURITIES, LLC, | ) | |
| SUTTER SECURITIES, INC., and | ) | |
| KEITH MOORE, | ) | Case No. 26-0360-CFC |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| FINANCIAL INDUSTRY | ) | |
| REGULATORY AUTHORITY, INC., | ) | |
| | ) | |
| Defendant. | ) | |

## <u>PLAINTIFFS' ANSWERING BRIEF IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS</u>

<table>
<tr><td><i>Of Counsel:</i></td><td><b>ASHBY & GEDDES</b></td></tr>
<tr><td><b>MICHAEL BEST & FREDRICH LLP</b></td><td>Randall J. Teti (#6334)<br>Samuel M. Gross (#6811)<br>500 Delaware Avenue, 8th Floor</td></tr>
<tr><td>Richard F. Ensor*<br>650 S. Main St., Suite 500<br>Salt Lake City, UT 84101<br>(385) 695-6450<br>rfensor@michaelbest.com</td><td>P.O. Box 1150<br>Wilmington, DE 19899<br>(302) 654-1888<br>rteti@ashbygeddes.com<br>sgross@ashbygeddes.com</td></tr>
<tr><td>Daniel Jozwiak*<br>675 15th Street, Suite 2000<br>Denver, CO 80202<br>(720) 398-0052<br>daniel.jozwiak@michaelbest.com</td><td><i>Counsel for Plaintiffs</i></td></tr>
</table>

*Admitted *pro hac vice*

Dated: June 11, 2026

# **TABLE OF CONTENTS**

TABLE OF AUTHORITIES .................................................................................. ii

BACKGROUND ................................................................................................1

LEGAL STANDARD...........................................................................................3

ARGUMENT ....................................................................................................3

I.     FINRA's Enforcement Regime Violates the Private Nondelegation Doctrine (Count 1)...................................................................................3

        a.  FINRA Is Not Subordinate to the SEC ............................................4

        b.  The SEC Cannot Delegate to FINRA What the Constitution Prohibits the SEC from Doing Itself.................................................7

        c.  *Alpine Securities* Confirms FINRA Violates the Non-Delegation Doctrine ......................................................................................11

        d.  FINRA's Authorities Do Not Require Dismissal ...........................13

II.    Alternatively, FINRA Is Part of the Federal Government and Subject to Constitutional Constraints (Counts 2-5)...................................................14

        a.  Plaintiffs' Constitutional Claims State Plausible Claims on the Merits ......................................................................................16

            i.     Appointments Clause & Separation of Powers (Counts 3 & 5) ..............................................................................17

            ii.    Seventh Amendment (Count 2) ...........................................18

            iii.   Due Process (Count 4) .......................................................19

III.   This Court Has Subject Matter Jurisdiction Over All Five Counts ........20

CONCLUSION.................................................................................................23

i

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Alpine Secs. Corp. v. FINRA*,
121 F.4th 1314, 1343-46 (D.C. Cir. 2024) ................................................................ 5

*Axalta Coating Systems LLC v. FAA*,
 144 F.4th 467 (3d Cir. 2025) ................................................................................. 19

*Axon Enterprise, Inc. v. FTC*,
598 U.S. 175 (2023) ................................................................................................. 2

*Birkelbach v. SEC*,
 751 F.3d 472, 475 (7th Cir. 2014) ........................................................................ 15

*Blum v. Yaretsky*,
 457 U.S. 991, 1004-05 (1982) ............................................................................... 15

*Barry v. Barchi*,
 443 U.S. 55 (1979) ................................................................................................. 20

*Carter v. Carter Coal Co.*,
298 U.S. 238, 311-13 (1936) ................................................................................. 10

*Cf. Consumers' Rsch.*,
606 U.S. at 667-70 .................................................................................................. 6

*Cf. Sunshine Anthracite Coal Co. v. Adkins*,
310 U.S. 381, 388 (1940) ........................................................................................ 5

*Concrete Pipe & Prods of Cal., Inc. v. Constr. Laborers Pension Tr.*,
 508 U.S. 602 (1993) ............................................................................................... 20

*Dep't of Transp. v. Ass'n of Am. R.R.*,
575 U.S. 43, 87-88 (2015) .................................................................................... 4,8

*Epstein v. SEC*,
 416 F. App'x 142 (3d Cir. 2010) ........................................................................... 16

*FCC v. Consumers' Rsch.*,
 606 U.S. 656, 692 (2025) ........................................................................ 4

*Hartig Drug Co. v. Senju Pharmaceutical Co.*,
836 F.3d 261, 268 (3d Cir. 2016) ........................................................... 3

*Kerpen v. MWAA*,
 907 F.3d 152 (4th Cir. 2018) ................................................................ 17

*Kim v. FINRA*,
698 F. Supp. 3d 147 (D.D.C. 2023) ...................................................... 13

*Lebron v. Nat'l R.R. Passenger Corp.*,
513 U.S. 374, 392 (1995) ........................................................................ 7

*Phillips v. Cnty. of Allegheny*,
515 F.3d 224, 234 (3d Cir. 2008) ........................................................... 3

*Scottsdale Capital Advisors Corp. v. FINRA*,
2026 WL 1464320, at *20 (D.D.C. Apr. 23, 2026) .............................. 14

*SEC v. Jarkesy*,
 603 U.S. 109, 122-25 (2024) .................................................................. 8

*Vape Central Grp. v. FDA*,
 2025 WL 637416 (D.D.C. Feb. 27, 2025) ............................................ 22

*Warren Gen. Hosp. v. Amgen Inc.*,
643 F.3d 77, 84 (3d Cir. 2011) ............................................................... 3

*Withrow v. Larkin*,
 421 U.S. 35 (1975) ................................................................................ 19

**Statutes**

15 U.S.C. § 78 ............................................................................. 11, 15, 18

FINRA holds the keys for broker-dealers' access to the securities industry. Federal law requires every broker-dealer in the country to register with FINRA as a condition of doing business. There is no alternative. When FINRA turns its enforcement apparatus against a member, the consequences are immediate and devastating—clearing firms sever ties, exchanges refuse to do business, counterparties walk away—all before any government official has reviewed, approved, or even been informed of FINRA's decision to act. That is exactly what happened to Plaintiffs. FINRA filed a public enforcement complaint, and the market predictably reacted as though Plaintiffs had already been convicted. No government actor intervened. None will for years. The Constitution does not permit FINRA, a private corporation, to wield this kind of coercive power over an entire industry without constitutional guardrails. FINRA's Motion to Dismiss should be denied.

## BACKGROUND

This case challenges the constitutional defects in FINRA's enforcement regime. On January 15, 2026, FINRA's Department of Enforcement ("**Enforcement**") filed a seven-count disciplinary complaint ("**Enforcement Complaint**") against Plaintiffs in FINRA's Office of Hearing Officers, alleging violations of anti-money laundering ("**AML**"), supervisory, recordkeeping, and other SEC and FINRA rules. Compl., ¶¶ 1-2; D.I. 6-1. The Enforcement Complaint seeks monetary sanctions, civil penalties, and a finding that Boustead Securities LLC

1

("**Boustead**", and collectively with Sutter Securities, Inc. ("**Sutter**") and Keith C. Moore ("**Moore**"), "**Plaintiffs**"), willfully violated the Exchange Act. *See* D.I. 6-1. Plaintiffs filed this action on April 1, raising five constitutional claims: violation of the private nondelegation doctrine (Count 1); violation of the Seventh Amendment (Count 2); violation of the Appointments Clause (Count 3); violation of the Fifth Amendment's Due Process Clause (Count 4); and violation of the separation of powers (Count 5). Compl., ¶¶ 62-93. Plaintiffs simultaneously moved for a preliminary injunction. D.I.5.

FINRA opposed the preliminary injunction on April 30, D.I. 23, and Plaintiffs replied on May 14. D.I. 27. That motion remains pending. On May 14, FINRA also filed its Motion to Dismiss, D.I.28 (the "**Motion**"), and its Opening Brief in Support thereof, D.I. 29 ("**Br.**").

Plaintiffs bring a constitutional challenge to the structure and exercise of FINRA's enforcement power—exactly the type of claim the Supreme Court held in *Axon Enterprise, Inc. v. FTC*, 598 U.S. 175 (2023), belongs in federal district court. Accordingly, this Court should determine whether the Constitution permits a private corporation to prosecute and adjudicate alleged violations of federal law, impose monetary sanctions, civil penalties, and career-ending consequences, all without meaningful governmental supervision and without the procedural protections the Constitution requires.

2

## LEGAL STANDARD

In considering a motion to dismiss pursuant to Rule 12(b)(6), the Court accepts all well-pleaded factual allegations as true and draws all reasonable inferences in plaintiff's favor. *Warren Gen. Hosp. v. Amgen Inc.*, 643 F.3d 77, 84 (3d Cir. 2011). A complaint need only plead "enough factual matter (taken as true) to suggest the required element." *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 234 (3d Cir. 2008) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007)) (internal quotations omitted). The complaint need only raise "a reasonable expectation that discovery will reveal evidence of the necessary element." *Id.* (internal quotations omitted).

A motion to dismiss under Rule 12(b)(1) applies the same standard: the Court treats the well-pleaded allegations as true. *Hartig Drug Co. v. Senju Pharmaceutical Co.*, 836 F.3d 261, 268 (3d Cir. 2016).

## ARGUMENT

### I.    FINRA's Enforcement Regime Violates the Private Nondelegation Doctrine (Count 1).

The private nondelegation doctrine prohibits Congress from delegating power to private entities without adequate federal supervision and accountability. Private entities to whom power is delegated must "function[] subordinately to" the federal agency and remain subject to its surveillance and authority. *FCC v. Consumers' Rsch.*, 606 U.S. 656, 692 (2025) (citation omitted). A private entity is "categorically

3

preclude[d] []from exercising the legislative, executive, or judicial powers of the federal government." *Dep't of Transp. v. Ass'n of Am. R.R.*, 575 U.S. 43, 87-88 (2015) (Thomas, J., concurring). When a private entity exercises power as the principal decisionmaker rather than as a subordinate aid to an accountable agency, the delegation is unconstitutional. *Consumers' Rsch.*, 606 U.S. at 692-93.

The nondelegation inquiry examines whether the private entity is in practice subordinate to the federal government, which retains "decision-making authority" and considers whether the private entity's role is limited to providing advice and assistance within a sphere of regulation that the government agency controls. *Id.* at 692-93. FINRA's enforcement regime fails this test for three reasons: *first*, FINRA is not operationally subordinate to the SEC; *second*, the SEC cannot delegate to FINRA adjudicatory and enforcement powers that the Constitution itself prohibits the SEC from exercising; and *third*, FINRA's enforcement power produces market-excluding consequences without any governmental review and violates the logic described in *Alpine Securities*.

### a.  FINRA Is Not Subordinate to the SEC.

FINRA is not subordinate to the SEC in any practical sense. *See* D.I. 27 at 1-4. FINRA opens investigations, exercises prosecutorial discretion, files complaints, negotiates settlements, conducts hearings, imposes fines, and levies other sanctions without prior SEC approval. *Alpine Secs. Corp. v. FINRA*, 121 F.4th 1314, 1343-46

4

(D.C. Cir. 2024) (Walker, J., concurring and dissenting in part); Compl., ¶¶ 1-2, 5, 7-9, 32, 41, 51. The SEC's input is not required for FINRA to start an investigation, file a complaint, or settle an enforcement matter that it unilaterally initiates. *Id.*[1] Nor does the SEC provide any "pervasive" or contemporaneous surveillance over any of these same exercises of power. *Cf. Sunshine Anthracite Coal Co. v. Adkins*, 310 U.S. 381, 388 (1940).

The timeline of FINRA's actions here demonstrates the SEC's absence. FINRA opened its investigation against Plaintiffs in 2022. D.I. 6 at 6, n.4. Four years later, FINRA finally filed the Enforcement Complaint. *See* D.I. 6-1. The hearing is scheduled for February 2027, and if Plaintiffs appeal through FINRA's internal process to its National Adjudicatory Council, the earliest the SEC will have *any involvement whatsoever* is in late 2027, and more likely in 2028 or 2029. D.I. 27 at 2. That is not surveillance, let alone "pervasive" surveillance. *Cf. Sunshine Anthracite*, 310 U.S. at 38. The SEC is not "supervising" FINRA's enforcement efforts when its first involvement will only arrive years after Plaintiffs are harmed.

---

[1] *See also Scottsdale Capital Advisors Corp. v. FINRA*, 2026 WL 1464320, at *3 (D.D.C. Apr. 23, 2026), *appeal docketed*, No. 26-5161 (D.C. Cir. May 13, 2026) ("Enforcement proceedings result from FINRA's investigation into alleged misconduct by its members, *with discretion vested solely in FINRA to initiate investigations and the SEC having 'no authority to review FINRA's decision to initiate an enforcement action.'*") (emphasis added).

FINRA's Motion relies on *Consumers' Research* for the proposition that all that is required is FINRA's "subordination" to the SEC, Br. at 9, but the case supports Plaintiffs. Br. at 9-11. The Supreme Court upheld the delegee's authority (the USAC) because the USAC performed ministerial billing and collections functions and could not make policy, and the FCC appointed its board, approved its budget, and critically, conducted *de novo* review of *any action* taken by the USAC. 606 U.S. at 667-70, 692-93.[2] The USAC's actions do not require evidentiary hearings, multi-year investigations, or internal adversarial proceedings. More pointedly, the USAC's actions are not assured to produce irreversible consequences before the FCC's involvement. A carrier that disputes a USAC assessment, for example, is not effectively expelled from the telecommunications industry while it awaits the agency's decision. *Cf. Consumers' Rsch.*, 606 U.S. at 667-70 (describing USAC's limited role).

The USAC's framework ensures that the FCC reviews the private entity's decision before that decision produces irreversible harm. FINRA's framework ensures the opposite: by the time the SEC reviews anything, commercial relationships are destroyed, clearing agreements terminated, and market access

---

[2] *See id.* Under 47 C.F.R. § 54.719, a party aggrieved by an action taken by the USAC may seek review directly from the FCC by filing a request within 60 days of the USAC's decision, first with the USAC itself, and then the FCC. *See* 47 C.F.R. §§ 54.417(a-b); 54.7209(a-b).

virtually eliminated. Compl., ¶¶ 3, 52-58. The SEC's *de novo* review cannot undo that damage. *But cf. Sunshine Anthracite*, 310 U.S. at 388 (delegees should "operate as an aid" to the delegating entity); *accord Consumers' Rsch.*, 606 U.S. at 692 (approving delegation because "the [FCC] alone has decision-making authority.").

### b. The SEC Cannot Delegate to FINRA What the Constitution Prohibits the SEC from Doing Itself.

FINRA's Motion relies on a framework that does not survive scrutiny, arguing that if it is a private actor, as courts have recognized in the past, Count 1 is the only claim that survives, and Plaintiffs' remaining counts must be dismissed. Br. at 2-3, 8-12. The Constitution, however, "constrains governmental action 'by whatever instruments or in whatever modes that action may be taken.'" *Lebron v. Nat'l R.R. Passenger Corp.*, 513 U.S. 374, 392 (1995). Even accepting FINRA's premise that it is a private actor subject only to the nondelegation doctrine, that doctrine still requires the delegating agency to possess the constitutional authority it purports to delegate in the first place. Here, however, the SEC does not have unlimited power to outsource whatever it wants, and instead only has the power to delegate what the Constitution gives the agency itself.

The Supreme Court confirmed that permissible delegation to lesser entities depends on the nature and scope of the power that is actually delegated. In *Whitman v. American Trucking Associations*, for example, the court held that "the degree of agency discretion that is acceptable varies according to the scope of the power

7

congressionally conferred." 531 U.S. 457, 475 (2001). Both the majority and dissent in *Consumers' Research* endorsed this principle. *See* 606 U.S. at 673; *id.* at 721 (Gorsuch, J., dissenting). The dissent went further, explaining that the nondelegation inquiry depends on "the nature of the particular constitutional powers" at issue. *Id.* at 723 (citation omitted). Where the Constitution limits the power of the delegating agency, the Vesting Clauses of the Constitution have nothing to allocate.[3] Accordingly, if the scope of power determines the permissible degree of discretion, and the Constitution withdraws that power entirely, then no degree of discretion is permissible, and no amount of subordination saves the delegation.

The Supreme Court has twice instructed that the SEC lacks the power to do precisely what FINRA does every day. First, the Supreme Court held that the Seventh Amendment guarantees a jury trial when the SEC seeks civil penalties for securities fraud because the claims replicate common-law fraud, and civil penalties are a prototypical legal remedy. *SEC v. Jarkesy*, 603 U.S. 109, 122-25 (2024). The Court held that the SEC cannot adjudicate these claims in its own administrative tribunal and without permitting entities the right to a jury trial. *Id.* at 127. The Constitution

---

[3] The Vesting Clauses are the constitutional source of the private nondelegation doctrine. *Dep't of Transp. v. Ass'n of Am. R.R.*, 575 U.S. 43, 87-88 (2015) (Thomas, J., concurring) (stating that the Vesting Clauses "categorically preclude" private entities from "exercising the legislative, executive, or judicial powers of the Federal Government.").

accordingly forbids the SEC from concentrating the roles of prosecutor, judge, and jury in the hands of the executive. *Id.* at 140.

But FINRA's Enforcement Complaint does exactly this. FINRA is pursuing monetary sanctions, a finding that Boustead willfully violated the Exchange Act, and other penalties, all adjudicated by FINRA's in-house employee-hearing officers and without a jury. Compl., ¶¶ 1, 8, 48-51, 66; D.I. 6-1 at 64. If the SEC cannot constitutionally adjudicate common-law claims in-house after *Jarkesy*, it cannot hand that same adjudicatory power down to FINRA.

Similarly, the Supreme Court held in *Lucia v. Securities & Exchange Commission* that the SEC ALJ's are Officers of the United States subject to the Appointments Clause because they occupied continuing positions established by law and exercise significant federal authority, including conducting trials, ruling on evidence, and issuing decisions with legal consequences. 585 U.S. 237, 243-49 (2018). FINRA's Hearing Officers perform materially identical functions, presiding over adversarial proceedings that Enforcement initiates, manages discovery, rules on procedural and evidentiary issues, and issues written decisions imposing sanctions for alleged violations of federal securities laws. Compl., ¶¶ 7, 34-36, 41-42, 75-81. As Judge Walker recognized in *Alpine*, FINRA's hearing officers are "indistinguishable from the [ALJs]" that the Supreme Court found unconstitutional in *Lucia*. *Alpine*, 121 F.4th at 1346 (Walker, J.). If the SEC cannot use improperly

9

appointed adjudicators to preside over its own enforcement proceedings, it cannot cure that defect by routing the same proceedings through a private corporation whose adjudicators are even further removed from constitutional accountability.

FINRA states that *Consumers' Research* requires only an analysis of whether FINRA functions subordinately to the SEC. Br. at 9. But *Consumers' Research* presumes that the agency has the constitutional power to delegate that authority in the first place. A private entity functioning subordinately to an agency that lacks constitutional power is still exercising power unconstitutionally; it is just doing so one step further removed from public accountability. If subordination were alone sufficient to satisfy the nondelegation doctrine and a court not required to consider the scope and practical import of the delegated authority, then the government could circumvent any constitutional limitation on its enforcement powers by outsourcing the offensive conduct to any nominally private entity. The Constitution does not permit this. *See Carter v. Carter Coal Co.*, 298 U.S. 238, 311-13 (1936).[4]

---

[4] Nor does the promise of eventual, belated SEC review solve anything. FINRA argues that *de novo* review satisfies the nondelegation doctrine. Br. at 9-10. But SEC review of a FINRA decision does not supply a jury trial and simply supplies another layer of administrative bureaucracy. Eventual review by a Court of Appeals similarly does not satisfy the Seventh Amendment's right to a jury trial.

The SEC cannot delegate power it does not constitutionally possess, and no amount of subordination can cure a delegation of authority that the Constitution has withdrawn from the delegator itself.

### c. *Alpine Securities* Confirms FINRA Violates the Non-Delegation Doctrine.

The D.C. Circuit's decision in *Alpine* reinforces the inadequacy of the SEC's oversight. The *Alpine* court held that FINRA cannot "effectively decide who can trade securities under federal law" without the SEC's review, because in a compulsory-membership regime, an exercise of FINRA's power that excludes a member from the industry is effectively State power. 121 F.4th at 1322-24, 1328. That principle applies whenever FINRA's unilateral exercise of power produces consequences that the SEC's eventual review cannot undo. Here, FINRA's Disciplinary Complaint produced exactly that result, because Sutter's clearing firm terminated its clearing arrangement within days, Compl. ¶ 56, Moore's personal brokerage accounts were closed, Compl. ¶ 57, and Plaintiffs were cut off from other commercial relationships essential to their operations. Compl. ¶ 3. No government actor approved, reviewed, or even knew about FINRA's decision to file before these consequences materialized. Compl., ¶¶ 4, 58; *see* 15 U.S.C. § 78s(d) (providing for SEC review of final FINRA disciplinary actions).[5]

---

[5] *See also supra*, n.1.

FINRA will point to *Alpine* and say that, for sanctions other than expulsion, review may be constitutionally adequate because those sanctions "can be undone later." 121 F.4th at 1330. But the consequences Plaintiffs allege are not just FINRA-imposed sanctions; they are the third-party market reactions to FINRA's accusation in a regime where FINRA is the only real supervisory authority. The SEC cannot compel a clearing firm to reinstate a clearing relationship or require a broker-dealer to reopen a brokerage account. *Alpine*'s assumption that consequences that are short of expulsion are reversible does not apply where a broker-dealer is irreparably harmed from the accusation itself.

The *Alpine* majority also signaled that this case would present a stronger nondelegation claim than Alpine itself. The *Alpine* court repeatedly emphasized that FINRA was enforcing only its "own internal rules" and did not find that Alpine violated "federal securities laws or regulations," demonstrating that enforcement of the latter without adequate governmental oversight could present a more compelling case. 121 F.4th at 1323. Here, however, FINRA is charging Plaintiffs with willful violations of the Exchange Act—a federal securities law—in addition to internal FINRA rules. Compl., ¶ 1, 66; D.I. 6-1 at 64; *see generally, id.*

This Court need not resolve whether FINRA is a state or private actor to reach the conclusion that its activities, as alleged in the Complaint, violates the nondelegation doctrine. The doctrine requires not only that the delegee function

12

subordinately to the agency, but that the agency possesses the constitutional authority to delegate in the first instance. After *Jarkesy* and *Lucia*, the SEC does not possess that authority with respect to the adjudicatory and enforcement powers FINRA exercises here.

### d. FINRA's Authorities Do Not Require Dismissal.

While FINRA argues that in "case after case," Br. at 10, courts have rejected nondelegation challenges to its authority, it proceeds to rely on cases from 1952, 1977, and 1982, all of which predate FINRA's existence and the Supreme Court's recent legal opinions on the nondelegation doctrine. *Id.* at 10-11.

*Todd & Co. v. SEC* and *First Jersey Securities v. Bergen* are decades old decisions addressing legislative delegation—i.e., whether Congress could authorize the NASD to adopt rules subject to SEC approval. 557 F.2d 1008 (3d Cir. 1977); 605 F.2d 690 (3d Cir. 1979); *see* D.I. 27 at 4. Plaintiffs' claim is different, alleging that FINRA exercises unchecked executive authority (which is governed by the Supreme Court's more recent nondelegation precedents) and not the legislative-delegation framework *Todd* and *First Jersey* applied nearly fifty years ago. *Kim v. FINRA*, 698 F. Supp. 3d 147 (D.D.C. 2023) is a non-binding district court opinion from another circuit predating *Consumers' Research* and does not address the scope-of-delegation argument Plaintiffs raise here.

13

The *Alpine* majority was, by its own words, "narrow and limited," 121 F.4th at 1330, and addressed only whether FINRA could summarily expel a member in an expedited proceeding without SEC review. *Id.* at 1330-31. It did not approve FINRA's entire enforcement apparatus, and it expressly declined to adopt or reject Judge Walker's broader analysis of FINRA's nondelegation problem. *Id.* at 1328-29. Similarly, the *Scottsdale* district court's decision is not binding on this Court. The court relied on FINRA's post-*Alpine* rule change delaying implementation of expulsion orders until after SEC review as the primary basis for dismissing the lawsuit. *Scottsdale Capital Advisors Corp. v. FINRA*, 2026 WL 1464320, at *20 (D.D.C. Apr. 23, 2026), *appeal docketed*, No. 26-5161 (D.C. Cir. May 13, 2026). That procedural fix addressed the narrow problem that *Alpine* identified—*formal procedural* expulsion without SEC review—but does nothing to cure the broader constitutional defects Plaintiffs raise here, including the argument raised in Section I(b) *supra*, which the *Scottsdale* court did not consider. *See id.*

For the foregoing reasons, FINRA's Motion to Dismiss Count 1 should be denied.

## II. Alternatively, FINRA Is Part of the Federal Government and Subject to Constitutional Constraints (Counts 2-5).

If FINRA is not a private actor violating the nondelegation doctrine, then it is engaging in state action and subject to the Constitution's limitations. A private entity engages in state action when it exercises powers "traditionally exclusively reserved

14

to the state." *Blum v. Yaretsky*, 457 U.S. 991, 1004-05 (1982). Separately, a corporation may be deemed part of the government where it is created by special law to further governmental objectives and retains authority to appoint a majority of its directors. *Lebron*, 513 U.S. at 399-400. These are independent, alternative tests. *Manhattan Cmty. Access Corp. v. Halleck*, 587 U.S. 802, 809 (2019) ("a private entity can qualify as a state actor" by "perform[ing] a traditional, exclusive public function," "compel[ling] the private entity to take a particular action, *or … *act[ing] jointly with the private entity.") (emphasis added).

FINRA's enforcement proceedings function as prosecutions of federal law to the tune of multi-million-dollar sanctions, suspensions, and industry bars—plainly (and plausibly), an exercise of power traditionally reserved to the government. And federal law mandates FINRA membership: FINRA is the only national securities association, and broker-dealers must register with FINRA as a prerequisite to participating in the industry. Compl., ¶¶ 20-24 (citing 15 U.S.C. § 78o). FINRA's rules, once approved by the SEC, carry the force of federal law. *Birkelbach v. SEC*, 751 F.3d 472, 475 (7th Cir. 2014); 15 U.S.C. §§ 78o-3(b)(6-7).

FINRA argues that self-regulation in the securities industry has existed for "centuries" and therefore cannot be governmental in character. Br. at 4, 13. But that reasoning conflates the voluntary self-governing framework of the past with FINRA's current enforcement of federal statutes in a compulsory-membership

15

regime. Accordingly, the relevant question under *Blum* is whether the specific power that FINRA exercises today—prosecuting violations of federal law—is one traditionally reserved to the government, which it is. *See* D.I. 27 at 5-6.

FINRA relies heavily on *Epstein v. SEC*, 416 F. App'x 142 (3d Cir. 2010), for the proposition that the NASD is a private actor. Br. at 3, 12. *Epstein*, however, cursorily addresses the state actor question in a single sentence: "Epstein cannot bring a constitutional due process claim against the NASD, because '[t]he NASD is a private actor, not a state actor,'" *id.* at 148 (quoting *Desiderio v. NASD*, 191 F.3d 198, 206 (2d Cir. 1999)), and predates *Jarkesy*, *Axon*, *Consumers' Research*, and *Lucia*. An unpublished appellate court decision from sixteen years ago in a legal landscape that no longer exists cannot foreclose a plausible constitutional claim on a Rule 12 motion today.

### a. Plaintiffs' Constitutional Claims State Plausible Claims on the Merits.

FINRA's arguments on Counts 2 through 5 are hasty and fail at the Rule 12 stage. As further explained in the Reply Brief in Support of Plaintiffs' Motion for Preliminary Injunction ("**PI Reply**"), each claim is plausible considering the facts of the Complaint. *See, e.g.*, D.I. 27 at 7-8.

### i. Appointments Clause & Separation of Powers (Counts 3 & 5).

FINRA's hearing officers exercise "significant authority pursuant to the laws of the United States" by presiding over adversarial enforcement proceedings, managing discovery, ruling on procedural and evidentiary issues, and issuing written decisions that impose sanctions and carry the force of law. Compl., ¶¶ 7, 34-36, 41-47, 75-81, 88-93. They are "indistinguishable from the [ALJs]" held unconstitutional in *Lucia*. *Alpine*, 121 F.4th at 1346 (Walker, J., concurring and dissenting in part). Yet they are appointed by FINRA's CEO and removable only within FINRA's corporate hierarchy. Compl., ¶¶ 44-47.

FINRA raises two arguments. *First*, FINRA relies on an OLC opinion and *Kerpen v. MWAA*, 907 F.3d 152 (4th Cir. 2018). Br. at 19. Neither are binding on this Court. An OLC opinion is an executive branch advisory document, and *Kerpen* involved a compact-created airport authority, a "distinctly un-federal activity." 907 F.3d at 162. Here, Plaintiffs pled extensive factual allegations supporting FINRA's governmental character and plausibly allege that FINRA is part of the government, or at a minimum, exercises federal power (that is, state action) subject to the Constitution's constraints.

*Second*, FINRA argues that hearing officer positions are not "established by law" because they were created by FINRA rules rather than statute. Br. at 20. However, FINRA's rules are approved by the SEC and carry the force of federal law.

17

D.I. 6 at 8 (citing *Birkelbach*). Positions created under rules that carry the force of federal law are functionally "established by law." Compl., ¶ 30 (citing 15 U.S.C. § 78s(b)(1)). Accepting FINRA's argument would allow Congress to insulate any adjudicatory position from constitutional oversight simply by delegating its creation to a private entity, which the Appointments Clause exists to prevent.

FINRA's reliance on *In re Newport Coast* is similarly misplaced, as that is a non-binding administrative decision predating *Jarkesy*. Br. at 20 (citing 2020 WL 1659292 (SEC Apr. 3, 2020)). The SEC's self-interested conclusion that its own delegate's employees are not officers is entitled to no deference on this constitutional question.

### ii.  Seventh Amendment (Count 2).

FINRA seeks civil penalties, which are "the prototypical common law remedy," *Jarkesy*, 603 U.S. at 123, and a finding that Boustead "willfully" violated the Exchange Act—a quintessential legal determination. Compl., ¶¶ 1, 8, 50; D.I. 6-1 at 64. And FINRA's claims sound in negligence: the Enforcement Complaint repeatedly alleges that Plaintiffs failed to act "reasonably," that Plaintiffs failed to establish a "reasonably designed AML program," failed to maintain a supervisory system "reasonably designed" to detect red flags, and failed to "reasonably design" a system for compliance with Regulation M. D.I. 6-1, ¶¶ 3, 7-9, 11. Under *Jarkesy*,

18

these claims and remedies are legal in nature, and Plaintiffs are entitled to a jury. *See* D.I. 6 at 13-14.

FINRA's reliance on *Axalta Coating Systems LLC v. FAA*, 144 F.4th 467 (3d Cir. 2025) is misplaced. Br. at 21. *Axalta* involved hazardous material regulations that brought "no common law soil with them." 144 F.4th at 475. That is different from FINRA's claims, which allege failures to act reasonably and seek monetary penalties, both hallmarks of common law actions. *Jarkesy*, 603 U.S. at 122-23. FINRA's arguments that "the securities industry's self-regulatory procedures … have historically provided for separate adjudication of broker conduct," Br. at 21, conflates voluntary industry self-governance with FINRA's current enforcement of federal statutes supported by mandatory membership. The relevant question under *Jarkesy* is the nature of the claims and remedies, not commercial precedent. *See* 603 U.S. at 122-25.

### iii.   Due Process (Count 4).

FINRA's Hearing Officers are employed by FINRA, are frequently recruited from Enforcement, and impose fines that flow back to FINRA's coffers. Compl., ¶¶ 9, 82-87. This plausibly alleges structural bias.

FINRA cites *Withrow v. Larkin*, 421 U.S. 35 (1975) for the proposition that combining investigative and adjudicative functions does not necessarily create unconstitutional bias. Br. at 21-22. But *Withrow* addresses a governmental agency

presumed to act in the public interest, and not a private corporation that profits from the fines it imposes. 421 U.S. at 47, 55, 58; *id.* at 47 ("[E]xperience teaches that the probability of actual bias" includes cases where "the adjudicator has a pecuniary interest in the outcome" and parties are "the target of … criticism from the party before him."). Plaintiffs' allegations go beyond the mere combination of these functions, alleging that FINRA's adjudicators are structurally dependent on the entity that investigates and prosecutes the case, that fines flow to that same entity, and that the proceeding lacks basic procedural safeguards: no right to discovery without the hearing officer's approval, no application of the Federal Rules of Evidence or Civil Procedure, and no neutral adjudicator. Compl., ¶¶ 83-87.

Due process requires, however, a "neutral and detached judge in the first instance," and "the command is no different when a legislature delegates adjudicative functions to a private party." *Concrete Pipe & Prods of Cal., Inc. v. Constr. Laborers Pension Tr.*, 508 U.S. 602, 617-18 (1993). These allegations plausibly state a due process claim. *Cf. Barry v. Barchi*, 443 U.S. 55, 64-66 (1979) (due process requires a prompt post-deprivation hearing where summary suspension of a professional license is justified).

## III.   This Court Has Subject Matter Jurisdiction Over All Five Counts.

FINRA argues that this Court lacks subject matter jurisdiction over Plaintiffs' Seventh Amendment and Due Process claims because those claims must be

channeled through the Exchange Act's administrative review scheme. Br. at 16-18. Plaintiffs addressed this argument in their PI Reply, *see* D.I. 27 at 8-10, and this position fails under the *Axon* framework.

*Axon* holds that district courts retain jurisdiction over "extraordinary" constitutional claims alleging a "here-and-now injury" from being subjected to an illegitimate proceeding led by an illegitimate decisionmaker. *Id.* at 185, 189-92 (2023). All three *Thunder Basin* factors favor jurisdiction here.

*First*, precluding district court review meaningfully forecloses judicial review of Plaintiffs' claims. The Seventh Amendment, for example, guarantees a jury trial. Forcing Plaintiffs through a non-jury proceeding and permitting challenges only years later (to the SEC, and later to a Court of Appeals, all without a jury) destroys the very right at issue. *Jarkesy* proves the point: the respondent was forced through an unconstitutional proceeding before the Supreme Court vindicated his right to a jury. 603 U.S. at 118-19. The same logic applies to Plaintiffs' claims: enduring a structurally biased proceeding and the opportunity to only later challenge it does not mitigate the constitutional deprivation. D.I. 27 at 8-9.

*Second*, Plaintiffs' claims are wholly collateral to the statutory review scheme. Plaintiffs challenge FINRA's structural power to adjudicate—its authority to sit as judge and jury over legal claims seeking monetary penalties without constitutional safeguards. That is a challenge to FINRA's "power generally, not to anything

21

particular about how that power was wielded." *Axon*, 598 U.S. at 193. These are not "the sorts of procedural or evidentiary matters an agency often resolves on its way to a merits decision." *Id.*; D.I. 27 at 9.

*Third*, constitutional questions are outside the SEC's expertise. Whether the Seventh Amendment and Due Process Clause apply are questions of constitutional law, not securities regulation or agency procedure.

The case for jurisdiction is stronger here than in *Axon* itself. Plaintiffs would need to endure four layers of non-jury proceedings: FINRA's hearing, appeal to the National Adjudicatory Council, and SEC review, all before any Court of Appeals could touch their constitutional claims. As Justice Thomas observed in his *Axon* concurrence, the Exchange Act's review model "may run afoul of the Seventh Amendment by allowing an administrative agency to adjudicate what may be core private rights without a jury" and "violate due process by empowering entities that are not courts of competent jurisdiction to deprive citizens of core private rights." 598 U.S. at 202.

FINRA's reliance on *Blankenship v. FINRA* is misplaced. The Third Circuit affirmed "on other grounds" and did not adopt the district court's *Thunder Basin* analysis. 2026 WL 64096, at *2 (3d Cir. Jan. 8, 2026). *Vape Central Grp. v. FDA*, 2025 WL 637416 (D.D.C. Feb. 27, 2025), involved a different statutory scheme with different review provisions and is not analogous. D.I. 27 at 8.

## CONCLUSION

The Court should deny the Motion to Dismiss in its entirety.

*Of Counsel:*

**MICHAEL BEST & FREDRICH LLP**

Richard F. Ensor*
650 S. Main St., Suite 500
Salt Lake City, UT 84101
(385) 695-6450
rfensor@michaelbest.com

Daniel Jozwiak*
675 15th Street, Suite 2000
Denver, CO 80202
(720) 398-0052
daniel.jozwiak@michaelbest.com

*Admitted *pro hac vice*

Dated: June 11, 2026

**ASHBY & GEDDES**

*/s/ Randall J. Teti*
Randall J. Teti (#6334)
Samuel M. Gross (#6811)
500 Delaware Avenue, 8th Floor
P.O. Box 1150
Wilmington, DE 19899
(302) 654-1888
rteti@ashbygeddes.com

*Counsel for Plaintiffs*

23