**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| Boustead Securities, LLC, Sutter Securities, Inc., and Keith C. Moore,<br>Plaintiffs,<br>v.<br><br>Financial Industry Regulatory Authority, Inc.,<br>Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | C.A. No. 26-0360-CFC |

**REPLY BRIEF IN SUPPORT OF**
**DEFENDANT'S MOTION TO DISMISS**

OF COUNSEL:

Amir C. Tayrani
Alex Gesch
GIBSON, DUNN & CRUTCHER LLP
1700 M Street, N.W.
Washington, D.C. 20036
T: (202) 887-3692
atayrani@gibsondunn.com
agesch@gibsondunn.com

James R. Figliulo
Michael K. Desmond
SMITH, GAMBRELL & RUSSELL, LLP
155 N. Wacker Drive, Suite 3000
Chicago, Illinois 60606
T: (312) 360-6000
jfigliulo@sgrlaw.com
mdesmond@sgrlaw.com

Raymond J. DiCamillo (#3188)
Chad M. Shandler (#3796)
Christine D. Haynes (#4697)
RICHARDS, LAYTON & FINGER, P.A.
920 North King Street
Wilmington, Delaware 19801
T: (302) 651-7700
dicamillo@rlf.com
shandler@rlf.com
haynes@rlf.com

*Attorneys for Defendant Financial Industry Regulatory Authority, Inc.*

Dated: June 25, 2026

# TABLE OF CONTENTS


| | Page |
|---|---|
| I. INTRODUCTION | 1 |
| II. ARGUMENT | 1 |
| A. FINRA's Self-Regulatory Enforcement Activities Do Not Violate The Private Nondelegation Doctrine (Count 1) | 1 |
| B. Plaintiffs' Other Constitutional Claims Fail | 5 |
| 1. Plaintiffs Cannot Satisfy The State-Action Requirement (Counts 2-5) | 5 |
| 2. The Court Lacks Subject Matter Jurisdiction Over Plaintiffs' Seventh Amendment And Due Process Claims (Counts 2 & 4) | 8 |
| 3. Plaintiffs' Other Constitutional Claims Also Fail On The Merits (Counts 2-5) | 10 |
| III. CONCLUSION | 12 |
| CERTIFICATE OF COMPLIANCE | 14 |

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Alpine Sec. Corp. v. FINRA*,
121 F.4th 1314 (D.C. Cir. 2024)....................4, 5, 6

*Axon Enter., Inc. v. FTC*,
598 U.S. 175 (2023)....................8, 9

*Blum v. Yaretsky*,
457 U.S. 991 (1982)....................6

*Edmonson v. Leesville Concrete Co.*,
500 U.S. 614 (1991)....................5

*Epstein v. SEC*,
416 F. App'x 142 (3d Cir. 2010)....................7

*FCC v. AT&T*,
146 S. Ct. 1418 (2026)....................4

*FCC v. Consumers' Rsch.*,
606 U.S. 656 (2025)....................2, 4

*Fiero v. FINRA*,
660 F.3d 569 (2d Cir. 2011)....................6

*First Jersey Sec.*, *Inc. v. Bergen*,
605 F.2d 690 (3d Cir. 1979)....................1, 2, 7

*Freytag v. Comm'r*,
501 U.S. 868 (1991)....................10

*Genovese v. SEC*,
2026 WL 446219 (S.D.N.Y. Feb. 17, 2026)....................8

*Lebron v. Nat'l R.R. Passenger Corp.*,
513 U.S. 374 (1995)....................6

*Lucia v. SEC*,
585 U.S. 237 (2018)....................10

*Manhattan Cmty. Access Corp. v. Halleck*,
587 U.S. 802 (2019)........................................................................................6

*Nat'l Horsemen's Benevolent & Protective Ass'n v. Black*,
___ F.4th ___, 2026 WL 1689717 (5th Cir. June 11, 2026) ......................3, 6, 10

*In re NYSE Specialists Sec. Litig.*,
503 F.3d 89 (2d Cir. 2007) ...............................................................................3

*Oklahoma v. United States*,
163 F.4th 294 (6th Cir. 2025) ...........................................................................3

*Schweiker v. McClure*,
456 U.S. 188 (1982).........................................................................................12

*Scottsdale Cap. Advisors Corp. v. FINRA*,
2026 WL 1464320 (D.D.C. Apr. 23, 2026).........................................................7

*SEC v. Jarkesy*,
603 U.S. 109 (2024)......................................................................................8, 11

*Todd & Co. v. SEC*,
557 F.2d 1008 (3d Cir. 1977) ......................................................................1, 2, 3

*Trump v. United States*,
603 U.S. 593 (2024).........................................................................................11

*United States v. NASD, Inc.*,
422 U.S. 694 (1975)...........................................................................................1

*Withrow v. Larkin*,
421 U.S. 35 (1975)...........................................................................................11

**Statutes**

15 U.S.C. § 78*o*(a)(2)...........................................................................................7

15 U.S.C. § 78*o*(b)(1)...........................................................................................7

15 U.S.C. § 78*o*(b)(8)...........................................................................................7

15 U.S.C. § 78*o*(b)(9)...........................................................................................7

15 U.S.C. § 78*o*-3(a) .............................................................................................7

15 U.S.C. § 78*o*-3(b)(8) ........................................................................12

15 U.S.C. § 78s(b)(1) ........................................................................2

15 U.S.C. § 78s(c) ........................................................................2

15 U.S.C. § 78y(a)(1) ........................................................................8

15 U.S.C. § 78y(a)(3) ........................................................................8

**Regulations**

17 C.F.R. § 201.420 ........................................................................2

# I. INTRODUCTION

Controlling precedent bars Plaintiffs' claims. Plaintiffs' private nondelegation claim fails because, as the Third Circuit and numerous other courts have held, the SEC exercises "pervasive supervisory authority" over FINRA, including over its enforcement proceedings. *United States v. NASD, Inc.*, 422 U.S. 694, 733 (1975). Courts have also uniformly held that FINRA is a private entity and that its enforcement proceedings are not state action, which forecloses Plaintiffs' other constitutional claims. In addition, this Court lacks jurisdiction over Plaintiffs' Seventh Amendment and due process claims, which are subject to the Exchange Act's exclusive review scheme. And even if Plaintiffs could overcome each of these obstacles, their constitutional claims would fail on the merits.

Nothing in Plaintiffs' Opposition Brief cures these fundamental deficiencies.

# II. ARGUMENT

## A. FINRA's Self-Regulatory Enforcement Activities Do Not Violate The Private Nondelegation Doctrine (Count 1)

Plaintiffs' private nondelegation challenge to FINRA's enforcement authority fails because FINRA functions subordinately to the SEC. *See* Opening Brief (D.I. 29) ("Br.") 8-12. Binding Third Circuit precedent rejected private nondelegation challenges to FINRA's predecessor organization, the NASD. *See Todd & Co. v. SEC*, 557 F.2d 1008, 1012-13 (3d Cir. 1977); *First Jersey Sec., Inc. v. Bergen*, 605 F.2d 690, 697 (3d Cir. 1979). The same result is compelled by the Supreme Court's

private nondelegation cases, including most recently *FCC v. Consumers' Research*, 606 U.S. 656 (2025).

Plaintiffs dismiss the Third Circuit's decisions as supposedly addressing only "legislative delegation." Opposition Brief (D.I. 39) ("Opp.") 13. But the Third Circuit in *Todd* held that there was no unconstitutional delegation because the NASD's "rules *and its disciplinary actions* were subject to full review by the S.E.C." 557 F.2d at 1012-13 (emphasis added); *see also First Jersey Sec.*, 605 F.2d at 697 (reaffirming *Todd*). That remains true of FINRA today. *See* Br. 8-12.

Plaintiffs' three further responses also fail. *First*, Plaintiffs claim that—because the SEC has not (yet) reviewed or taken other action regarding FINRA's enforcement proceeding—FINRA is operating without SEC supervision. But the "relevant legal question" is whether the SEC *can* intervene, not whether it has actually done so in any particular FINRA proceeding. *Consumers' Research*, 606 U.S. at 695.

From beginning to end, the SEC has broad supervisory authority over FINRA's enforcement responsibilities. For example, the Commission could "abrogate, add to, and delete from" FINRA's rules to limit FINRA's discretion to begin certain types of investigations or initiate disciplinary proceedings regarding specified conduct. 15 U.S.C. § 78s(b)(1), (c). And—once a FINRA enforcement proceeding has concluded—it is subject to *de novo* review by the SEC. 17 C.F.R.

§ 201.420. Because "the SEC oversees . . . the enforcement" of FINRA's rules, "in case after case" courts have held that the SEC's authority "over the rules and their enforcement makes the [self-regulatory organizations] permissible aids and advisors." *Oklahoma v. United States*, 163 F.4th 294, 307 (6th Cir. 2025), *petition for cert. docketed*, No. 25-1325 (May 29, 2026).

In addition, the "SEC 'retains formidable oversight power to supervise, investigate, and discipline FINRA for any possible wrongdoing or regulatory missteps.'" *Nat'l Horsemen's Benevolent & Protective Ass'n v. Black*, ___ F.4th ___, 2026 WL 1689717, at *13 (5th Cir. June 11, 2026) ("*Horsemen's III*") (quoting *In re NYSE Specialists Sec. Litig.*, 503 F.3d 89, 101 (2d Cir. 2007)) (alteration adopted). "This 'formidable' power is manifest in the SEC's ability to derecognize FINRA's regulatory role entirely, [15 U.S.C.] § 78s(a)(3), (h)(1); remove FINRA board members for cause, § 78s(h)(4); remove any individual FINRA member, § 78s(h)(2); and bar any person from associating with FINRA, § 78*o*-3(g)(2)." *Id.*

According to Plaintiffs, *Consumers' Research* nevertheless supports them because the FCC "conducted *de novo* review of any action[s] taken by the USAC," which do not generate "irreversible consequences before the FCC's involvement." Opp. 6 (emphasis omitted). But FINRA's disciplinary proceedings are likewise subject to *de novo* review by the SEC. *See Todd*, 557 F.2d at 1012. And, following internal appeals, FINRA's rules provide an *automatic* stay of any sanction against a

FINRA member firm upon timely appeal to the SEC. *See* FINRA Rule 9370. When FINRA's factual findings are reviewed "*de novo*," it is as if FINRA "never found any facts at all." *FCC v. AT&T*, 146 S. Ct. 1418, 1428-29 (2026).

*Second*, Plaintiffs argue, based on *public* nondelegation cases, that the SEC cannot delegate to FINRA authority that the SEC itself cannot constitutionally wield. *See* Opp. 7-8. But the public and private nondelegation doctrines are analytically distinct, *see Consumers' Research*, 606 U.S. at 672, and Plaintiffs do not plead a public nondelegation claim.

Plaintiffs also argue that because the Supreme Court has held that certain Seventh Amendment and Appointments Clause requirements apply to the *SEC*, FINRA is subject to the same constitutional requirements. Opp. 8-10. But that just re-casts Plaintiffs' *other* constitutional claims, which fail for numerous reasons, *see* Br. 12-21, and gain no force when repackaged with a "private nondelegation" label. *See Alpine Sec. Corp. v. FINRA*, 121 F.4th 1314, 1329 (D.C. Cir. 2024) (rejecting similar attempt to "meld[] the private nondelegation doctrine" with "Appointments Clause arguments"). Adopting Plaintiffs' argument would mean that whenever a private entity carries out delegated federal powers, it would need to comply with the Constitution's structural and individual rights requirements—including presidential appointment and removal of a private company's board members. There is no support for that doctrinally flawed theory.

*Third*, Plaintiffs argue that *Alpine Securities Corp.* "reinforces the inadequacy of the SEC's oversight" because SEC review "cannot undo" all of the "consequences" of a FINRA disciplinary proceeding. 121 F.4th at 1330; Opp. 11. As Plaintiffs elsewhere acknowledge, however, *Alpine* was a "'narrow and limited'" opinion addressing "only whether FINRA could summarily expel a member in an expedited proceeding without SEC review." Opp. 14 (quoting *Alpine*, 121 F.4th at 1330). *Alpine* rejected objections to "any sanctions short of expulsion"—such as "[c]ensures," which "can be rescinded," and "cease-and-desist orders," which "can be lifted"—and allowed FINRA's disciplinary proceeding to continue, 121 F.4th at 1330-31. Because the "consequences" that Plaintiffs identify—such as the termination of "commercial relationships," Opp. 11—likewise "can be undone later," they raise no private nondelegation issues. *Alpine*, 121 F.4th at 1330.

### B. Plaintiffs' Other Constitutional Claims Fail

#### 1. Plaintiffs Cannot Satisfy The State-Action Requirement (Counts 2-5)

Plaintiffs pleaded in the alternative. If FINRA is private (which it is), then its relationship with the SEC must comply with the private nondelegation doctrine but is not otherwise subject to the Constitution. *See Edmonson v. Leesville Concrete Co.*, 500 U.S. 614, 620 (1991). Plaintiffs' other constitutional challenges (Counts 2-5) only apply if FINRA is a state actor or if it engages in state action. Compl. ¶

10. Because FINRA meets neither of those standards, those challenges fail. *See* Br. 12-15.

Plaintiffs do not contend that FINRA is part of the government (*i.e.*, a state actor) under *Lebron v. National Railroad Passenger Corp.*, 513 U.S. 374 (1995). *See* Opp. 14-16; Br. 13, 19-20. They instead assert that FINRA engages in state action when carrying out its self-regulatory functions because it is performing a traditional, exclusive public function. Opp. 14-15 (citing *Blum v. Yaretsky*, 457 U.S. 991, 1004-05 (1982)).

Plaintiffs' state-action arguments are legally and factually baseless. The private "[s]elf-regulation in the securities industry [that] has existed for centuries," *Alpine*, 121 F.4th at 1337, did not transform into a "traditional, exclusive public function" merely because FINRA now exercises its self-regulatory responsibilities pursuant to the Exchange Act's authorization and the SEC's oversight, *Manhattan Cmty. Access Corp. v. Halleck*, 587 U.S. 802, 809 (2019) ("to qualify as a traditional, exclusive public function within the meaning of our state-action precedents, the government must have traditionally *and* exclusively performed the function").

Nor do FINRA's enforcement proceedings "function as prosecutions." Opp. 15. "The SEC alone has the power to bring civil suits," *Horsemen's III*, 2026 WL 1689717, at *13, and FINRA "lacks the authority to bring court actions to collect disciplinary fines it has imposed," *Fiero v. FINRA*, 660 F.3d 569, 571 (2d Cir. 2011).

Moreover, federal law does *not* "mandat[e] FINRA membership." Opp. 15. Plaintiffs and other broker-dealers are free to apply to form a new securities association, 15 U.S.C. § 78*o*-3(a), transact securities solely on a securities exchange of which they are members, *id.* § 78*o*(b)(1), or apply for an SEC exemption, *id.* § 78*o*(a)(2), (b)(8)-(9).

Accordingly, courts—including the Third Circuit—have unanimously held that the self-regulatory conduct of FINRA and its predecessor the NASD is not state action. *See* Br. 12 (citing *Epstein v. SEC*, 416 F. App'x 142, 148 (3d Cir. 2010); *First Jersey Sec.*, 605 F.2d at 698). Plaintiffs can cite no case to the contrary but suggest that recent Supreme Court administrative law opinions, such as *Consumers' Research*, undermine these holdings. Opp. 16. Opinions about constitutional limits on the *government*, however, shed no light on whether the conduct of FINRA, a *private* company, constitutes state action subject to constitutional requirements. Courts analyzing that question continue to hold that it is not. *See*, *e.g.*, *Scottsdale Cap. Advisors Corp. v. FINRA*, 2026 WL 1464320, at *17-19 (D.D.C. Apr. 23, 2026), *appeal docketed*, No. 26-5161 (D.C. Cir. May 13, 2026). That unbroken line of authority forecloses Counts 2-5 of Plaintiffs' Complaint.

**2. The Court Lacks Subject Matter Jurisdiction Over Plaintiffs' Seventh Amendment And Due Process Claims (Counts 2 & 4)**

Because the Exchange Act grants courts of appeals "exclusive" "jurisdiction" to review SEC orders, including those arising from FINRA disciplinary proceedings, 15 U.S.C. § 78y(a)(1), (3), this Court lacks jurisdiction over Plaintiffs' Seventh Amendment and due process claims. Plaintiffs cannot escape this conclusion by invoking the narrow exception in *Axon Enterprise, Inc. v. FTC*, 598 U.S. 175 (2023).

*First*, Plaintiffs argue that "*Jarkesy* proves the point" that precluding district court jurisdiction forecloses meaningful review of Plaintiffs' claims. Opp. 21. In reality, the opposite is true. The Seventh Amendment claim in *SEC v. Jarkesy*, 603 U.S. 109 (2024), was channeled through the Exchange Act's review scheme and yielded meaningful relief for the petitioner, whose SEC sanction was overturned on post-hearing review by a court of appeals and the Supreme Court. *See* 603 U.S. at 119. For that reason, post-*Jarkesy* cases addressing both the Exchange Act and similar statutory review frameworks have held that the filing of a petition for review in a court of appeals, after the exhaustion of agency process, provides meaningful review of Seventh Amendment and due process claims. *See*, *e.g.*, *Genovese v. SEC*, 2026 WL 446219, at *4-5 (S.D.N.Y. Feb. 17, 2026) (Seventh Amendment and due process claims); Br. 16-18 (collecting cases).

*Second*, Plaintiffs assert that they challenge "FINRA's structural power to adjudicate" and are therefore exempt under *Axon* from the Exchange Act's statutory review scheme. Opp. 21. But Plaintiffs' challenges—which attack the procedures in their FINRA disciplinary proceeding—are not "structural" within the meaning of *Axon* because Plaintiffs are not "challenging [FINRA's] power to proceed at all" or its "very existence," but are instead objecting to the "particular" way FINRA's "power [will be] wielded" in Plaintiffs' specific disciplinary proceeding. 598 U.S. at 189, 192-93.

*Third*, Plaintiffs cite no authority for their conclusory assertion that "constitutional questions are outside the SEC's expertise." Opp. 22. As FINRA has documented, the SEC regularly considers Seventh Amendment and due process questions. Br. 17-18.

*Lastly*, Plaintiffs assert that they must exhaust "four layers of non-jury proceedings" before federal court review. Opp. 22. But that multi-tiered review is indicative of the substantial procedural protections afforded to respondents in FINRA disciplinary proceedings—not a reason to short-circuit the Exchange Act's comprehensive review scheme. In any event, it is well established that the alleged "'expense and disruption' of 'protracted adjudicatory proceedings' on a claim do not alone justify immediate review." *Axon*, 598 U.S. at 192.

**3. Plaintiffs' Other Constitutional Claims Also Fail On The Merits (Counts 2-5)**

Plaintiffs' claims in Counts 2-5 would fail on the merits even if FINRA were subject to the Constitution and this Court had jurisdiction.

***Appointments and Removal Claims (Counts 3 & 5).*** Plaintiffs abandon any argument that FINRA is part of the government under *Lebron*, *see supra* 6, foreclosing their Appointments Clause and removal claims. *See* Br. 4-5, 13, 19-20.

Plaintiffs' arguments that FINRA hearing officers are "indistinguishable" from the SEC administrative law judges held unconstitutional in *Lucia v. SEC*, 585 U.S. 237 (2018), are therefore entirely beside the point. Opp. 17. As the Fifth Circuit recently held, it would "extend . . . *Lucia* well beyond [its] facts to analyze whether persons in a *private* entity are 'Officers.'" *Horsemen's III*, 2026 WL 1689717, at *19. "*Lebron*"—not *Lucia*—"is the governing test to determine whether an entity is private or public and, under that test," FINRA—like the self-regulatory organization in *Horsemen's III*—"is a private entity not subject to Article II's Appointments Clause." *Id.* at *20.

Moreover, unlike the SEC administrative law judges in *Lucia*, neither the "office" nor the "duties, salary, and means of appointment" of FINRA hearing officers are "specified by statute." *Freytag v. Comm'r*, 501 U.S. 868, 881 (1991). It is irrelevant whether FINRA's SEC-approved rules "carry the force of federal law" in some contexts, Opp. 17-18, because the Appointments Clause's "'established by

law'" language "refers to an office that Congress creates 'by statute.'" *Trump v. United States*, 603 U.S. 593, 645 (2024) (Thomas, J., concurring).

***Seventh Amendment (Count 2).*** Plaintiffs argue that FINRA's disciplinary complaint "allege[s] failures to act reasonably and seek[s] monetary penalties," which Plaintiffs describe as "hallmarks of common law actions." Opp. 18. But Plaintiffs have not shown a "close relationship" between the charges in FINRA's disciplinary complaint, which alleges violations of AML, supervisory, recordkeeping, and other SEC and FINRA rules, *see* Br. 21, and any "common law" causes of action. *Jarkesy*, 603 U.S. at 126. Nor have they shown that FINRA's disciplinary allegations "target the same basic conduct as common law [claims]" or "operate pursuant to similar legal principles." *Id.* at 134. FINRA's self-regulatory proceedings alleging violations of specialized securities-industry requirements are not "the stuff of the traditional actions at common law." *Id.* at 128.

***Due Process (Count 4).*** Plaintiffs' Fifth Amendment claim of alleged unconstitutional bias is foreclosed by *Withrow v. Larkin*, 421 U.S. 35 (1975), which rejected a challenge to the "combination of investigative and adjudicative functions" in an administrative decision-maker. *Id.* at 47. Plaintiffs attempt to distinguish *Withrow* by arguing that its holding applies only to a "government agency"—not to a "private corporation" such as FINRA. Opp. 19-20. In so doing, Plaintiffs merely reinforce FINRA's point that, as a private company, it is not subject to the

Constitution's requirements, including the Due Process Clause. In any event, Plaintiffs allege no "conflict of interest," *Schweiker v. McClure*, 456 U.S. 188, 195 (1982), necessary to show that their FINRA hearing officer is unconstitutionally biased. And Plaintiffs do not contest that FINRA's rules provide disciplinary-proceeding respondents with robust procedures, which the SEC has deemed "fair" and which satisfy any applicable due-process requirements. 15 U.S.C. § 78*o*-3(b)(8).

## III. CONCLUSION

This Court should dismiss Plaintiffs' claims under Rules 12(b)(1) and 12(b)(6).

/s/ *Raymond J. DiCamillo*
Raymond J. DiCamillo (#3188)
Chad M. Shandler (#3796)
Christine Dealy Haynes (#4697)
RICHARDS, LAYTON & FINGER, P.A.
920 North King Street
Wilmington, Delaware 19801
T: (302) 651-7700
dicamillo@rlf.com
shandler@rlf.com
haynes@rlf.com

*Attorneys for Defendant Financial Industry Regulatory Authority, Inc.*

OF COUNSEL:

Amir C. Tayrani
Alex Gesch
GIBSON, DUNN & CRUTCHER LLP
1700 M Street, N.W.
Washington, D.C. 20036
T: (202) 887-3692
atayrani@gibsondunn.com
agesch@gibsondunn.com

James R. Figliulo
Michael K. Desmond
SMITH, GAMBRELL & RUSSELL, LLP
155 N. Wacker Drive, Suite 3000
Chicago, Illinois 60606
T: (312) 360-6000
jfigliulo@sgrlaw.com
mdesmond@sgrlaw.com

Dated: June 25, 2026

## CERTIFICATE OF COMPLIANCE

This brief complies with this Court's Standing Order Regarding Briefing In All Cases because the brief contains 2,494 words, as determined by the word-count function of Microsoft Word, and it uses 14-point Times New Roman Font.

Dated: June 25, 2026

*/s/ Raymond J. DiCamillo*
Raymond J. DiCamillo (#3188)